1  Richard M. Pachulski (CA Bar No. 90073)
   Ira D. Kharasch (CA Bar No. 109084)
2  Robert M. Saunders (CA Bar No. 226172)
   PACHULSKI STANG ZIEHL & JONES LLP
3  10100 Santa Monica Blvd., 13th Floor
   Los Angeles, CA  90067
4  Telephone: 310/277-6910
   Facsimile: 310/201-0760
5  E-mail:  rpachulski@pszjlaw.com
            ikharasch@pszjlaw.com
6            rsaunders@pszjlaw.com

7  Attorneys for Debtor and Debtor in Possession

8              UNITED STATES BANKRUPTCY COURT

9              CENTRAL DISTRICT OF CALIFORNIA

10                  SANTA ANA DIVISION

11  In re:                        Case No.:  8:17-bk-11961-CB

12  EAGAN AVENATTI, LLP          Chapter 11

13                               **DEBTOR'S NOTICE OF MOTION AND
                    Debtor.       MOTION FOR ORDER APPROVING
14                                SETTLEMENT AND DISMISSING CASE;
                                  MEMORANDUM OF POINTS AND
15                                AUTHORITIES; DECLARATION OF
                                  MICHAEL J. AVENATTI IN SUPPORT**
16

17                               **Hearing:**
18                               Date:      February 28, 2018
                                 Time:      10:00 a.m.
19                               Place:     Courtroom 5D
                                            411 West Fourth Street
20                                          Santa Ana, CA  92701-4593
21
                                 Judge:     Hon. Catherine E. Bauer
22

23  **TO THE HONORABLE CATHERINE E. BAUER, UNITED STATES BANKRUPTCY**

24  **JUDGE, THE OFFICE OF THE UNITED STATES TRUSTEE, THE COMMITTEE OF**

25  **UNSECURED CREDITORS, ALL KNOWN CREDITORS, AND ALL PARTIES**

26  **REQUESTING SPECIAL NOTICE:**

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**PLEASE TAKE NOTICE** that Eagan Avenatti, LLP, the above-captioned debtor and debtor in possession (the "Debtor"), through its undersigned counsel, hereby moves (the "Motion") the Court for an order (the "Settlement and Case Dismissal Order"):

(1)    Approving the settlement (the "JFL Settlement") of the most contentious dispute in this case between the Debtor and Jason Frank Law, PLC ("JFL"), Jason Frank ("Frank"), Scott Sims ("Sims"), Andrew Stolper ("Stolper") and Frank Sims & Stolper LLP ("FSS," and, collectively, the "JFL Parties"), including reducing and allowing JFL's claim, disallowing Frank, Sims and Stolper's claims with the exception of certain indemnification, contribution and insurance coverage rights they may have related to their employment at, or rendition of services at, the Debtor, and resolving rights in valuable property of the estate, and which is conditional upon dismissal of the Case;

(2)    Implementing an expected payment stipulation (the "United States Payment Stipulation") with the United States of America ("United States") on behalf of its agency, the Internal Revenue Service, ("IRS"), which is conditional upon dismissal of the Case;

(3)    Implementing payment terms that that the Debtor expects will be approved by the Committee of Unsecured Creditors (the "Committee") on behalf of its constituency by the time of the hearing on the Motion;

(4)    Recognizing the unimpaired ride-through of the claims of California Bank & Trust ("CB&T"), taxing authorities other than the IRS ("Other Taxing Authorities"), Stoll Nussbaum & Polakov APC ("Stoll"), and The X-Law Group, P.C. ("X-Law Group"), subject to the Debtor's rights, privileges, defenses and counterclaims; and

(5)    Dismissing this chapter 11 case, as required by the JFL Settlement and the United States Payment Stipulation, and as agreed to by the Committee.

**PLEASE TAKE FURTHER NOTICE** that this Motion is supported by the attached *Declaration of Michael J. Avenatti* (the "Avenatti Declaration").[1]

**PLEASE TAKE FURTHER NOTICE** that this Motion is based on the attached Memorandum of Points and Authorities, all judicially noticeable facts, all other admissible evidence

---

[1] A copy of the Settlement Agreement and Releases, which sets forth the terms of the JFL Settlement, is attached to the Avenatti Declaration as an exhibit.  The terms of the Settlement Agreement control over the description of the JFL Settlement in the Motion.

2

properly before the Court (including, without limitation, the Avenatti Declaration), and any arguments and/or testimony to be presented at any hearing (if any) on this Motion; concurrently with this Motion, the Debtor has filed its Submission of Unpublished Judicial Dispositions cited in the Motion, as required by local Bankruptcy Rule 9013-2(b)(4).

**PLEASE TAKE FURTHER NOTICE** that, pursuant to local Bankruptcy Rule 9013-1(f), if you wish to oppose the Motion, you must file a written response with the Court and serve a copy of it upon the undersigned counsel no later than fourteen (14) days prior to the hearing on the Motion.  The failure to properly file and serve an opposition may be deemed consent to the relief requested in the Motion or a waiver of any right to oppose the Motion.

**WHEREFORE**, the Debtor respectfully requests that the Court enter an order approving the JFL Settlement, dismissing the case and granting such other and further relief as the Court deems proper.

Dated:    January 30, 2018                    PACHULSKI STANG ZIEHL & JONES LLP

                                        By    */s/ Robert M. Saunders*
                                        _____
                                              Robert M. Saunders
                                              Attorneys for Debtor and Debtor in
                                              Possession

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

# **TABLE OF CONTENTS**

**Page**

I.     JURISDICTION AND VENUE ................................................................................ 1

II.    BACKGROUND ..................................................................................................... 1

    A.    General Background ................................................................................... 1

    B.    Disputes between the Debtor and the JFL Parties ..................................... 2

III.   JFL SETTLEMENT................................................................................................ 3

IV.   DISMISSAL OF CASE ......................................................................................... 4

    A.    Pending and Resolved Matters................................................................... 5

        1.    Resolution of JFL Parties' Claims ................................................ 6

        2.    Resolution of United States Claims ............................................... 6

        3.    Professionals' Fees and Expenses ................................................. 8

        4.    Payments to Administrative Expense Claimants ........................... 8

        5.    Committee's Constituents .............................................................. 8

        6.    Ride-Through Claims..................................................................... 9

    B.    Reservations; No Reserve ........................................................................... 9

    C.    Retention of Jurisdiction ............................................................................ 9

V.    REQUEST FOR RELIEF ....................................................................................... 9

VI.   BASIS FOR RELIEF.............................................................................................. 9

    A.    The JFL Settlement Should be Approved.................................................. 10

        1.    Probability of Success in Litigation............................................. 11

        2.    Difficulties of Collection. ............................................................ 15

        3.    Complexity, Expense, Inconvenience, and Delay. ...................... 15

        4.    Interests of Creditors.................................................................... 15

    B.    The Case Should Be Dismissed As Set Forth in this Motion ................... 16

        1.    Dismissal of the Case Is Warranted Under Section 1112(b) ......... 16

        2.    Dismissal of the Chapter 11 Cases Is Warranted Under Section 305(a) ........ 27

        3.    Effect of Section 349(b) Upon Dismissal .................................... 30

        4.    Retention of Jurisdiction Post-Dismissal .................................... 32

VII.  NOTICE................................................................................................................. 33

VIII. CONCLUSION...................................................................................................... 33

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

DOCS_LA:311840.4 20328/001

# TABLE OF AUTHORITIES

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

**Other Authorities**

*Aheong v. Mellon Mortgage Co. (In re Aheong)*,
　276 B.R. 233 (BAP 9th Cir. 2002) ................................................................ 30, 32

*Beal Bank USA v. Windmill Durango Office, LLC (In re Windmill Durango Office, LLC)*,
　473 B.R. 762 (BAP 9th Cir. 2012) ...................................................................... 19

*Camden Ordnance Mfg. v. U.S. Trustee (In re Camden Ordnance Mfg.)*,
　245 B.R. 794 (E.D. Pa 2000) ............................................................................... 20

*Commer. Elec., Inc. v. JGC Enters. (In re JGC Enters.)*,
　40 F. App'x 561 (9th Cir. 2002) .......................................................................... 31

*Cosoff v. Rodman (In re W.T. Grant Co.)*,
　699 F.2d 599 (2d Cir. 1983) ................................................................................ 10

*Czyezewski v. Jevic Holding Corp.*,
　137 S. Ct. 973 (2017) ................................................................................... passim

*Eastman v. Eastman (In re Eastman)*,
　188 B.R. 621 (BAP 9th Cir. 1995) ...................................................................... 28

*Gardenhire v. IRS (In re Gardenhire)*,
　209 F.3d 1145 (9th Cir. 2000) ............................................................................ 31

*Gelb v. U.S. Trustee (In re Gelb)*,
　2013 Bankr. LEXIS 1415 (BAP 9th Cir. Mar. 22, 2013) ................................... 29

*Gill v. Hall (In re Hall)*,
　15 B.R. 913 (BAP 9th Cir. 1981) ........................................................................ 16

*In re 3 Ram, Inc.*,
　343 B.R. 113 (Bankr. E.D. Pa. 2006) .................................................................. 17

*In re Air Beds, Inc.*,
　92 B.R. 419 (BAP 9th Cir. 1988) ........................................................................ 26

*In re American Capital Equipment, LLC*,
　688 F.3d, 145 (3d Cir. 2012) ............................................................................... 20

*In re Biolitec, Inc.*,
　528 B.R. 261 (Bankr. N.J. 2014) .................................................................. 22, 23

*In re Buffet Partners*,
　2014 Bankr. LEXIS 3204 (Bankr. N.D. Tex. July 28, 2014) ...................... passim

*In re Carraher*,
　971 F.2d 327 (9th Cir. 1992) ......................................................................... 31, 32

*In re Fleurantin*,
　420 F. App'x 194 (3d Cir. 2001) ......................................................................... 17

*In re Fort Knox Mini Warehouse*,
　2002 Bankr. LEXIS 909 (Bankr. N.D. Iowa July 31, 2002) ............................... 17

*In re Franklin*,
　802 F.2d 324 (9th Cir. 1986) ............................................................................... 32

*In re Fryer*,
　2017 Bankr. LEXIS 1123 (Bankr. E.D. Tenn. Apr. 25, 2017) ........................... 21

*In re Iowa Trust*,
　135 B.R. 615 (Bankr. N.D. Iowa 1992) .......................................................... 28, 29

*In re Johnson*,
　565 B.R. 417 (Bankr. C.D. Cal. 2017) ............................................................... 26

*In re Kaiser Aluminum Corp.*,
　456 F.3d 328 (3d Cir. 2011) ................................................................................ 17

*In re Luftek*,
　6 B.R. 539 (Bankr. E.D.N.Y. 1980) .................................................................... 29

*In re Mazzocone*,
　183 B.R. 402 (Bankr. E.D. Pa. 1995) ................................................................. 20

*In re NRG Energy, Inc.*,
  294 B.R. 71 (Bankr. D. Minn. 2003) .................................................................................. 27

*In re Pacific Gas & Elec. Co.*,
  304 B.R. 395 (Bankr. N.D. Cal. 2004) .......................................................................... 10, 11

*In re Pine Lake Village Apartment Co.*,
  16 B.R. 750 (Bankr. S.D.N.Y. 1982) ................................................................................ 28

*In re Planned Protective Servs.*,
  130 B.R. 94 (Bankr. C.D. Cal. 1991) ................................................................................ 10

*In re Richmond Unified School District*,
  133 B.R. 221 (Bankr. N.D. Cal. 1991) .............................................................................. 16

*In re Riverbend Community*,
  2012 Bankr. LEXIS 1275, at *11 (Bankr. D. Del. Mar. 23, 2012) .................................. 17

*In re St. Luke Baptist Church*,
  2016 Bankr. LEXIS 3687 (Bankr. C.D. Cal. Oct. 11, 2016) ............................................ 26

*In re WCI Cable, Inc.*,
  282 B.R. 457 (Bankr. D. Or. 2002) ................................................................................... 11

*Marciano v. Fahs (In re Marciano)*,
  459 B.R. 27 (BAP 9th Cir. 2011) ...................................................................................... 29

*Martin v. Kane (In re A & C Properties)*,
  784 F.2d 1377 (9th Cir. 1986) ........................................................................................... 10

*Newman v. Stein*,
  464 F.2d 689 (2d Cir. 1972) ............................................................................................... 10

*Pioneer Liquidating Corp. v. U.S. Trustee (In re Consolidated Pioneer Mortgage Entities)*,
  248 B.R. 368 (BAP 9th Cir. 2003) .................................................................................... 18

*Port O'Call Invest. Co. v. Blair (In re Blair)*,
  538 F.2d 849 (9th Cir. 1976) ............................................................................................. 10

*Protective Committee v. Anderson*,
  390 U.S. 414 (1968) ........................................................................................................... 11

*Rand v. Porsche Fin. Servs. (In re Rand)*,
  2010 Bankr. LEXIS 5076 (BAP 9th Dec. 7, 2010) .......................................................... 18

*Rollex Corp. V. Associated Metals (In re Superior Siding & Window Inc.)*,
  14 F.3d 240 (4th Cir. 1994) ............................................................................................... 20

*Schroeder v. Int'l Airport Inn P'ship (In re Int'l Airport Inn P'ship)*,
  517 F.2d 510 (9th Cir. 1975) ............................................................................................. 16

*Shulkin Hutton, Inc. v. Treiger (In re Owens)*,
  552 F.3d 958 (9th Cir. 2009) ............................................................................................. 19

*Superior Siding & Window*,
  14 F.3d at 242 .................................................................................................................... 20

*Tsafaroff v. Taylor (in re Taylor)*,
  884 F.2d 479 (9th Cir. 1989) ............................................................................................. 32

*United States v. Alaska Nat'l Bank (In re Walsh Constr.*,
  669 F.2d 1325 (9th Cir. 1992) ........................................................................................... 10

*United States v. Moyer*,
  2011 U.S. Dist. LEXIS 112909 (N.D. Cal. Sept. 30, 2011) ............................................. 30

*Woodson v. Fireman's Fund Ins. Co. (In re Woodson)*,
  839 F.2d 610 (9th Cir. 1988) .................................................................................. 11, 12, 16

**Regulations**

11 U.S.C. § 105(a) ......................................................................................................... 1, 24
11 U.S.C. § 1112(b) ......................................................................................................... passim
11 U.S.C. § 1129(a)(11) ......................................................................................................... 17
11 U.S.C. § 303(i) .................................................................................................................. 12
11 U.S.C. § 303(j) .................................................................................................................. 25
11 U.S.C. § 305(a) ......................................................................................................... passim
11 U.S.C. § 349 ................................................................................................... 1, 19, 27, 28
11 U.S.C. § 363 ....................................................................................................................... 1

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

11 U.S.C. § 506(d) ........................................................................................................... 28
11 U.S.C. § 541(a) ............................................................................................................... 1
28 U.S.C. § 1334 ........................................................................................................... 1, 24
28 U.S.C. § 1408 ................................................................................................................. 1
28 U.S.C. § 1409 ................................................................................................................. 1
28 U.S.C. § 157 ................................................................................................................... 1
28 U.S.C. § 157(b)(2) .......................................................................................................... 1
I.R.C. § 6325(a)(1) .............................................................................................................. 7

**9**
Fed. R. Bankr. P. 1017-2 ....................................................................................... 1, 9, 16, 29
Fed. R. Bankr. P. 9019(a) .......................................................................................... 1, 9, 28
L.B.R. 1017-2(e) ................................................................................................................. 1
L.B.R. 1017-2(f) .................................................................................................................. 1
L.B.R. 9019-1 ...................................................................................................................... 1

**13**
*Collier* ¶ 1112.08 ............................................................................................................. 19
H.R. Rep. No. 595, 95th Cong., 1st Sess. 325 (1977) ...................................................... 25
S. Rep. No. 989, 95th Cong., 2d Sess. 48-49 (1977) ........................................................ 25

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

### MEMORANDUM OF POINTS AND AUTHORITIES

### I.

### JURISDICTION AND VENUE

The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 157 and 1334.  This is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).  Venue for proceedings on this Motion is proper in this district pursuant to 28 U.S.C. §§ 1408 and 1409.  The predicates for the relief requested are sections 105(a), 305(a), 349, 363, 541(a) and 1112(b) of title 11 of the United States Code (the "Bankruptcy Code"), rules 1017-2 and 9019(a) of the Federal Rules of Bankruptcy Procedure and rules 1017-2(e) and (f) and 9019-1 of the Local Bankruptcy Rules of the Court.

### II.

### BACKGROUND

**A.    General Background**

The Debtor is a Newport Beach, California based law firm consisting of nine attorneys that focuses on the litigation of complex, often high-profile class action and contingency fee lawsuits nationally.[1]  By their nature, the Debtor's lawsuit assets do not pay out fees and costs until litigation is concluded or settled, which often takes several years during which the Debtor routinely invests millions of dollars in investigating claims, conducting discovery, hiring experts, and preparing for trial.  Although the Debtor's revenue stream is "chunky," it is very profitable over time.  For example, on April 7, 2017, class counsel Michael J. Avenatti ("Avenatti"), with the assistance of the Debtor, obtained an over $454 million jury verdict against Kimberly-Clark Corporation and Halyard Health, Inc. for damages resulting from defective surgical gowns.

This case began on March 1, 2017, with the filing of an involuntary chapter 11 petition by a single creditor in the United States Bankruptcy Court for the Middle District of Florida (the "Florida Bankruptcy Court").  The Debtor consented to entry of an order for relief, which the Florida Bankruptcy Court entered on March 10, 2017.  On April 13, 2017, the Office of United States Trustee in Orlando filed its motion to transfer this case to this Court or dismiss it.  By its *Order*

---

[1] The Debtor maintains an office in Los Angeles under an arrangement with X-Law Group, where the X-Law Group is the primary tenant.

DOCS_LA:311840.4 20328/001

*Transferring Case to the Central District of California, Santa Ana Division*, entered on April 21, 2017, the Florida Bankruptcy Court transferred this case to this Court.

The case was then in limbo for nearly three weeks, when the Clerk of this Court opened case no. 17-11878 on May 10, 2017; however, the Clerk's office then closed the case the next day (May 11) as a "duplicate case opened in error."  The case then returned to limbo for almost another week, not resurfacing until May 16, 2017, when the Clerk of this Court issued a Notice of Transfer of Case (Inter/Intra District Transfer), and assigned new case number 17-11961 (the "Case").

The Debtor continues to operate its business and manages its affairs as a debtor in possession pursuant to sections 1107(a) and 1108 of the Bankruptcy Code.  The Committee was appointed by the Office of the United States Trustee (the U.S. Trustee") on June 16, 2017.

**B.     Disputes between the Debtor and the JFL Parties**

Because of the risk involved in a contingency practice, it is critical to a law firm such as the Debtor that lawsuits settle or be resolved on a regular basis.  As reported to this Court in the Debtor's status reports, ECF Nos. 18, 168 and 261 (the "Status Reports"), the reason that the Debtor consented to the entry of the Order for Relief in the Florida Bankruptcy Court was that the Debtor's primary dispute is not with the petitioning creditor but with three former attorney employees of the Debtor – Frank, Sims and Stolper – who, from the Debtor's perspective, were terminated from the firm in May 2016 after they were discovered to have been forming their own competing law firm for months.  These former attorneys, all of whom have agreed to settle their claims in accordance with the terms of the JFL Settlement, dispute these allegations.  When they left the firm, the three attorneys took substantial business with them, which the Debtor has repeatedly asserted left the Debtor with significant sunk costs on numerous cases, including hundreds of hours of staff and attorney time across many years, together with substantial out-of-pocket expenses for advanced costs and overhead.  The JFL Parties then sought to diminish (if not eliminate) the Debtor's asserted lien rights in each of these lawsuits.  The Debtor claims that a number of these lawsuits were on the verge of settling, with potentially millions of dollars of contingency attorneys' fees and costs due the Debtor.  The Debtor has repeatedly asserted that the transfer of these assets from the Debtor to FSS caused a significant disruption in and impairment of the Debtor's cash flow.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Prior to the Order for Relief Date, the Debtor was in an active arbitration (the "JFL Arbitration") with Jason Frank Law, PLC ("JFL"), and in a separate arbitration with Sims (the "Sims Arbitration," and, collectively with the JFL Arbitration, the "Arbitrations").  JFL sought but, on March 10, 2017, was denied by the Florida Bankruptcy Court, relief from the automatic stay to liquidate its claim in the Arbitration, Florida ECF No. 21.

In this Court, JFL filed a lengthy negative response, ECF No. 89, to the Debtor's first Status Report.  On June 19, 2017, JFL filed a proof of claim (Claim No. 8-1) in this Case for a general unsecured claim of at least $18,615,886.  The Debtor disputes JFL's claim. On July 10, 2017, the parties began mediation of JFL's claim and the Debtor's counterclaim.

After a settlement was not accomplished through the July 10, 2017 mediation, on July 12, 2017, JFL filed a motion for relief from the automatic stay, requesting from the Court authorization to resume the JFL Arbitration, ECF No. 155 (the "JFL Lift Stay Motion").  The Debtor filed an opposition to such motion, ECF No. 174, which X-Law Group joined, ECF No. 176.  Also, the Committee responded, ECF No. 166, requesting that relief from stay be delayed.  The hearing on the JFL Lift Stay Motion has been continued multiple times, and is now scheduled for hearing on January 31, 2018.

## III.

## JFL SETTLEMENT

The JFL Settlement resolves competing claims and counterclaims (including those currently in stayed Arbitrations) between the Debtor and the JFL Parties to millions of dollars of fees and costs from the lawsuits listed in amended Schedule B.74 in which FSS succeeded the Debtor as plaintiffs' counsel.  It also resolves one of the largest general unsecured claims filed in the Case,[2] as well as disallows other general unsecured claims.[3]  Further, it resolves all of the motions currently pending before this Court (JFL's motion seeking relief from stay and the Debtor's exclusivity motions), other than the Stoll motion for relief from stay scheduled for hearing on January 31, 2018.

[2] As stated above, JFL filed a general unsecured claim in the Case in excess of $18,615,886 (Claim 8-1, filed June 19, 2017).

[3] Sims filed a general unsecured claim of for in excess of $400,000 (Claim 7-1, filed June 19, 2017).  Frank filed a general unsecured employee and indemnity claim in an unknown amount (Claim 6-1, filed June 19, 2017).  Stolper filed a general unsecured indemnity claim in an unknown amount (Claim 9-1, filed June 19, 2017).

DOCS_LA:311840.4 20328/001

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1  Under the JFL Settlement, JFL, which filed a general unsecured claim for over $18,615,886,

2  would receive an allowed general unsecured claim of $10,000,000; however, absent default by the

3  Debtor and Avenatti (as guarantor), JFL would be paid by the Debtor $4,850,000 in full for its

4  allowed claim.  Payment would be made in two installments:  (a) $2,000,000 to be paid within 60

5  days after the Dismissal Date (defined below), and (b) $2,850,000 to be paid within 120 days after

6  the Dismissal Date, subject to the terms of the Settlement Agreement.

7  Also, on the Effective Date, the Debtor would withdraw all attorneys' liens and waive its

8  rights to fees and costs from the lawsuit assets listed in its amended Schedule B.74; however, the

9  Debtor would be entitled to 50% of the attorney's fees payable to FSS, Frank and JFL from the

10  lawsuit styled *Authentic Entertainment Properties v. Royal*, No. A-15-724305-B (Nev. Dist. Ct.,

11  Clark Cnty) (the "AEP Litigation").  Pending arbitrations would be dismissed.  Additionally, as part

12  of the JFL Settlement, the "EA Parties" (the Debtor, Avenatti and A&A Associates, APC) and the

13  JFL Parties would exchange mutual releases, other than for claims arising under the Settlement

14  Agreement (and certain related documents) and for indemnification by the Debtor for malpractice

15  claims and certain other claims against Frank, Sims or Stolper for work performed while at the

16  Debtor, as more specifically set forth in Section 5.1 of the Settlement Agreement.  As stated above,

17  the JFL Settlement is conditioned on dismissal of the Case.[4]

18  **IV.**

19  **DISMISSAL OF CASE**

20  The Debtor has determined that the Debtor and its clients, employees, creditors, vendors, co-

21  counsel, lessors and other constituencies would be best served by dismissal of this initially

22  involuntary Case.  Also, significantly, dismissal of the Case is required by the JFL Settlement and

23  the United States Payment Stipulation, as described more fully below.  Additionally, the Settlement

24  and Case Dismissal Order, requested by this Motion, would implement the United States Payment

25  Stipulation and any terms agreed to by the Committee on behalf of holders of general unsecured

26  claims of its constituency, and recognize that certain other claims ride-through the dismissal of the

27

28  [4] As stated above, the JFL Settlement is subject to the terms of the Settlement Agreement, which control over the summary of the JFL Settlement in this Motion.

4

Case unimpaired.[5]  Further, dismissal would free the Debtor from the time and distraction of addressing the continuing requirements of the Bankruptcy Code, Bankruptcy Rules, Local Bankruptcy Rules, and the U.S. Trustee's guidelines for a debtor in possession, which would permit it to dedicate more time to its profitable business for the benefit of all of its constituencies. Dismissal would also avoid unnecessary professional fees and other administrative claims, including the substantial cost of a disclosure statement and plan process.

Therefore, the Debtor believes that dismissal of the Case would optimize the Debtor's continuing business.  In doing so, it would maximize its going-concern value, which would inure to the benefit of all of its constituencies.  Additionally, and significantly, the Settlement and Case Dismissal Order, as requested by this Motion, would not include any nonconsensual priority-skipping distribution provisions that might be questionable after the United States Supreme Court's recent decision in *Czyezewski v. Jevic Holding Corp.*, 137 S. Ct. 973 (2017) because the United States will have entered into the United States Payment Stipulation, and the claims of the Other Taxing Authorities will ride-through unimpaired, with their ability to execute on their claims restored.

### A.    Pending and Resolved Matters

There are no adversary proceedings pending in the Case.  The only pending contested matters are the Debtor's initial and supplemental exclusivity motions and the motion for relief from stay of JFL to resume a pending JFL Arbitration.  All would be resolved by the relief requested in this Motion.

### 1.    Resolution of JFL Parties' Claims

As stated above, the claims of the JFL Parties would be resolved in accordance with the terms of the JFL Settlement.

### 2.    Resolution of United States Claims

The United States is the Debtor's only creditor claiming an interest in cash collateral.  The United States on behalf of the IRS entered into a supplemented, interim stipulation and renewed

---

[5] As stated above, the secured claim of CB&T, the priority and general unsecured claims of the Other Taxing Authorities, and the general unsecured claims of Stoll and X-Law Group would ride through unimpaired, subject to the rights, privileges, defenses and counterclaims of the Debtor.

stipulations (the "IRS Cash Collateral Stipulations") authorizing the estate's use of cash collateral and granting adequate protection to the United States in the form of monthly payments and replacement liens;[6] in accordance with its terms, the supplemented, initial stipulation survives dismissal of the Case.

The Stipulation among Debtor, Michael Avenatti, and the United States on behalf of the IRS Regarding Terms of Payment of Taxes in the Event of Dismissal of Bankruptcy Case ("United States Payment Stipulation"), which will be separate from the IRS Cash Collateral Stipulations, would include an agreed upon schedule for the payment of amounts agreed to by the Debtor, Avenatti, and the United States in full satisfaction of its claims against the Debtor and Avenatti, as set forth in fifth amended proof of claim, Claim 1-6.[7] The United States Payment Stipulation is conditioned upon the entry of a final order approving the United States Payment Stipulation. Under the United States Payment Stipulation, Avenatti shall deliver the Initial Payment (as described below) to Assistant United States Attorney Najah J. Shariff on or before the 10th calendar day following the entry of the Settlement and Case Dismissal Order, and further provided that if the 10th calendar day falls on a weekend or National Holiday, the initial payment shall be due on the next calendar day that is neither a weekend or National Holiday (the "Initial Payment Due Date"). The total amount of the Initial Payment is $1,508,422.30, consisting of all of the "Trust Fund" taxes in the amount of $1,288,276.63, and 20% of the "Non-Trust Fund" taxes due as of February 28, 2018, in the amount of $220,145.70. Once applied by the United States, the Initial Payment shall constitute full satisfaction of (a) all "Trust Fund' taxes owed by the Debtor for the tax periods as set forth in the IRS's fifth amended proof of claim, Claim 1-6; and (b) all claims held by the United States on behalf of the IRS against Avenatti for Trust Fund Recovery Penalty ("TFRP") for the tax periods as set forth in the fifth amended proof of claim, Claim 1-6. After receipt of the Initial Payment, the remaining balance due by the Debtor to the United States shall be $880,582.91 (the "Remaining Balance"). Interest shall accrue on the Remaining Balance at the rate determined by applicable

---

[6] The interim stipulation was filed on May 31, 2017, ECF No. 91, which was supplemented on June 13, 2017, ECF No. 117. The supplemented, interim stipulation was approved by this Court in its order entered August 7, 2017, ECF No. 197 (the "IRS Use of Cash Collateral and Adequate Protection Order"). Renewed stipulations were filed on (a) October 5, 2017, ECF No. 253; (b) November 6, 2017, ECF No 276; (c) December 4, 2017, ECF No. 293; and (d) January 9, 2018, ECF No. 311.

[7] The summary herein is subject to the terms of the United States Payment Stipulation, which will control.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

6

nonbankruptcy law pursuant to section 511 of the Bankruptcy Code, the current rate is 4%.  The Debtor has agreed to pay the Remaining Balance within 120 days from the date of the entry of the Settlement and Case Dismissal Order as follows:  (a) $440,291.45, plus accrued interest at the rate determined by applicable nonbankruptcy law pursuant to section 511 of the Bankruptcy Code, on the 60th day following the date of the entry of the Dismissal Order; and (b) $440,291.45 plus accrued interest at the rate determined by applicable nonbankruptcy law pursuant to section 511 of the Bankruptcy Code, on the 120th day following the date of the entry of the Dismissal Order, less credit for any adequate protection payments made by the Debtor pursuant to the IRS Cash Collateral Stipulations in the Case that have not been applied as of the date hereof, on the 120th day following the date of the entry of the Settlement and Case Dismissal Order.  If the Initial Payment is not paid, such that it has not been received by counsel for the United States by close of business on the Initial Payment Due Date, then the Settlement and Case Dismissal Order and the United States Payment Stipulation shall not become effective, and shall be null and void, with each party hereto reserving its/their respective rights.  The United States Payment Stipulation shall be binding on the Debtor, any committee, any subsequent trustee, Avenatti, the United States, or their successors.

Any liens held by the United States, including those provided pursuant to the Cash Collateral Stipulations shall continue in full force and effect in the event of a dismissal of the Case.  Pursuant to the provisions of the Internal Revenue Code § 6325(a)(1), the IRS will issue a certificate of release of any such lien after the entire liability amount assessed, together with any accrued interest, has been fully satisfied pursuant to the United States Payment Stipulation or has become legally unenforceable.  Notwithstanding the dismissal of the Debtor's bankruptcy case, pursuant to the United States Payment Stipulation the Court shall retain jurisdiction for purposes of enforcing the United States Payment Stipulation.[8]  The United States Payment Stipulation is expected to fully resolve the IRS's claims as set forth in the fifth amended claim, Claim 1-6.

3.    Professionals' Fees and Expenses

Professionals' fees and expenses are subject to allowance by this Court at or after hearings on the respective fee and expense reimbursement applications of the PSZJ and Dinsmore ("Fee

---

[8] The summary here is subject to the terms of the IRS Payment Stipulation, which will control.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Applications"), which were each filed on January 24, 2018 and noticed for hearing on February 14, 2018.[9]  The Bankruptcy Court shall retain exclusive jurisdiction to implement and enforce orders ruling on Fee Applications ("Fee Orders").

4.    Payments to Administrative Expense Claimants

Allowed administrative expense claims that are due and payable would be paid as they become due and payable in the ordinary course of the Debtor's business, subject to the Debtor's Reservations set forth below, or as otherwise agreed by the Debtor (which may be part of an agreement with the Committee for creditors in its constituency that have administrative expense claims).

5.    Committee's Constituents

Subject to approval by the Debtor and the Committee on behalf of its constituency, the holders of allowed general unsecured claims (other than as otherwise set forth in this Motion)[10] shall be paid the allowed amount of such claims in full, without interest, in nine equal monthly installments beginning 91 days after the Effective Date,[11]  and any administrative expense claims of such creditors shall be treated as set forth in this Motion for administrative expense claims in general (in article IV.A.4 above), and be paid as they become due and payable in the ordinary course of the Debtor's business, subject to the Debtor's Reservations set forth below, unless the Debtor and such claim holder agree to a different treatment, such as one payment at a discounted amount.[12]

6.    Ride-Through Claims

Any claims of California's Employment Development Department and Franchise Tax Board, the County of Orange, California, CB&T, Stoll, and X-Law Group that remain outstanding as of the Effective Date would each ride-through dismissal of the Case unimpaired, with all legal, equitable and contractual rights unaltered, and be reinstated against the Debtor on the Effective Date.

**B.    Reservations; No Reserve**

For all claims, the Debtor's rights, privileges, defenses and counterclaims shall be preserved,

---

[9] Neither PSZJ nor Dinsmore has agreed to the treatment and payment of its claim under the terms of this Motion.
[10] The identity and allowed amount of each claim is subject to agreement by the Debtor and the Committee, and other terms may be the subject to agreement by the Debtor and the Committee.
[11] No claim is allowed solely because the Debtor had not objected to it prior to dismissal of the Case.
[12] The Debtor expects that it would pay such administrative expense claims, if not disputed in whole or part, within nine months of the Effective Date.

8

all contingencies existing as of the dismissal of the Case shall remain, and all unliquidated claims and claims in unknown amounts shall be subject to liquidation (the "Debtor's Reservations").  There will be no reserve for disputed claims.

**C.     Retention of Jurisdiction**

Consistent with this Court's retention of post-dismissal jurisdiction under LBR 1017-2(f) (quoted in article VI.B.4 below), the order requested by this Motion (the "Settlement and Case Dismissal Order") would retain limited jurisdiction in this Court for (a) hearing on retained professionals' Fee Applications and issuing related Fee Orders and (b) the interpretation, implementation and enforcement of the Settlement and Case Dismissal Order, Fee Orders, and the IRS Use of Cash Collateral and Adequate Protection Order.

**V.**

**REQUEST FOR RELIEF**

Therefore, the Debtor requests that this Court enter an order approving the JFL Settlement and dismissing the Case, as set forth in this Motion.[13]

**VI.**

**BASIS FOR RELIEF**

**A.     The JFL Settlement Should be Approved**

Rule 9019(a) of the Bankruptcy Rules provides in relevant part:

> On motion by the trustee and after notice and hearing, the court may approve a compromise or settlement.

Fed. R. Bankr. P. 9019(a).

When deciding whether to approve a settlement, the bankruptcy court must determine if the settlement is reasonable under the circumstances of the case, fair and equitable, and in the best interest of the estate.  *See Martin v. Kane (In re A & C Properties)*, 784 F.2d 1377, 1381 (9th Cir. 1986) ("The law favors compromise and not litigation for its own sake . . . .").  The court is neither

---

[13] The Debtor plans to upload one proposed electronic order to the Court's Lodged Order Upload (L.O.U.) system that would approve the JFL Settlement, allow and disallow claims in accordance with the JFL Settlement and dismiss the Case.  If the Court or the Clerk of the Court prefers more than one order (for instance, for reduction and allowance of the JFL Claim and/or disallowance of each of the Frank, Sims and Stolper claims), the Debtor will upload as many proposed orders as the Court or Clerk prefers.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

DOCS_LA:311840.4 20328/001

1    required to conduct a mini-trial on the merits of the settlement, *United States v. Alaska Nat'l Bank*

2    *(In re Walsh Constr..,* 669 F.2d 1325, 1328 (9th Cir. 1992); *Port O'Call Invest. Co. v. Blair (In re*

3    *Blair)*, 538 F.2d 849, 851 (9th Cir. 1976), nor determine that the settlement amount is the amount

4    that would have been paid had the matter been tried.  The court need only "canvass the issues and

5    see whether the settlement 'fall[s] below the lowest point in the range of reasonableness.'"  *Cosoff v.*

6    *Rodman (In re W.T. Grant Co.)*, 699 F.2d 599, 608 (2d Cir. 1983) (quoting *Newman v. Stein*, 464

7    F.2d 689, 693 (2d Cir. 1972)); *Walsh Constr.,* 669 F.2d at 1328; *In re Pacific Gas & Elec. Co*., 304

8    B.R. 395, 417 (Bankr. N.D. Cal. 2004); *In re Planned Protective Servs.*, 130 B.R. 94, 99 n.7 (Bankr.

9    C.D. Cal. 1991).

10    The United States Supreme Court stated in *Protective Committee v. Anderson*, 390 U.S. 414,

11    424 (1968), that in order to approve a proposed settlement under the then-extant Bankruptcy Act, a

12    court must have found that the settlement was "fair and equitable" based on an "educated estimate of

13    the complexity, expense, and likely duration of such litigation, the possible difficulties of collecting

14    on any judgment which might be obtained, and all other factors relevant to a full and fair assessment

15    of the wisdom of the proposed compromise."  *Id*.

16    The Ninth Circuit has reiterated that in determining the fairness, reasonableness, and

17    adequacy of a proposed settlement agreement, a court should consider the following factors:  (1) the

18    probability of success in litigation; (2) the difficulties, if any, to be encountered in the matter of

19    collection; (3) the complexity of the litigation involved and the expense, inconvenience, and delay

20    necessarily attending it; and (4) the paramount interest of the creditors and the proper deference to

21    their reasonable views in the premises (collectively, the "Woodson Factors").  *Woodson v.*

22    *Fireman's Fund Ins. Co. (In re Woodson)*, 839 F.2d 610, 620 (9th Cir. 1988).  It is not necessary that

23    the conclusions reached in the consideration of each of the Woodson Factors support the settlement

24    but, taken as a whole, those conclusions must favor the approval of the settlement.  *See Pacific Gas*,

25    304 B.R. at 417 (citing *In re WCI Cable, Inc*., 282 B.R. 457, 473-74 (Bankr. D. Or. 2002)).

26    Applying the Woodson Factors here:

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

10

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1.    <u>Probability of Success in Litigation.</u>

As stated above, JFL, Frank, Sims and Stolper filed claims in this case; JFL's is over $18 million.  While the Debtor believes that it should be successful in its claims objections and with respect to the JFL Lift Stay Motion, there is sufficient uncertainty here to fulfill the first of the Woodson Factors.  The JFL Settlement resolves all of these uncertainties, thereby addressing this Woodson Factor.

As referenced above, prior to the entry of the Order for Relief by the Florida Bankruptcy Court, the Debtor was involved in separate Arbitrations with JFL and Sims.  In the JFL Arbitration, JFL asserted essentially two claims.  First, a claim for breach of a prepetition independent contractor agreement between JFL and the Debtor (the "<u>ICA</u>"), which governed the rendition of legal services by Frank, the sole owner of JFL, as an attorney at the Debtor.  Second, a claim for fraud, alleging the Debtor fraudulently induced JFL to remain at the Debtor and bring business to the firm with false assurances the Debtor would perform under the ICA.  The Debtor disputes both of these claims, and the Debtor filed counterclaims alleging JFL improperly left the firm and formed a new law firm, FSS.  In addition, as stated above, the Debtor had filed attorney liens in a number of cases in which former clients of the Debtor replaced the Debtor as their counsel with FSS.

In the JFL Arbitration, JFL is seeking damages of over $18 million against the Debtor, including over $14.6 million on its breach of contract claim, and an additional $4 million in fraud damages.  Similarly, JFL filed a proof of claim in this Case (Claim 8-1) in the amount of not less than $18,615,866, plus indemnification in an unliquidated amount.  As stated above, the Debtor disputes the claims made by JFL in the JFL Arbitration and in this Court.

The JFL Arbitration was assigned to a three-judge panel at JAMS (the "<u>Panel</u>").  The trial in the JFL Arbitration was scheduled to commence on Monday, March 13, 2017.  However, the JFL Arbitration was stayed by the automatic stay in this Case because, as stated above, a single creditor (unaffiliated with the JFL Parties) filed an involuntary petition against the Debtor in the Florida Bankruptcy Court on March 1, 2017, FL ECF No. 1.   On March 6, 2017, JFL filed its first motion to lift the automatic stay to permit the March 13, 2017 arbitration trial to proceed, FL ECF No. 3; however, the Florida Bankruptcy Court denied JFL's motion on March 14, 2017, FL ECF No. 21,

four days after the date the Florida Bankruptcy Court entered its Order for Relief, FL ECF No. 13 after the Debtor filed its *Eagan Avenatti, LLP's Answer to Involuntary Petition and Consent to Entry of Order for Relief and Reservation of Rights*, FL ECF No. 12 (reserving rights, including against the sole petitioning creditor under section 303(i) of the Bankruptcy Code).

Prior to the petition date, the Panel had issued evidentiary sanction rulings and factual findings against the Debtor, which the Debtor disputes.  Due in part to the Panel's pretrial rulings, the Debtor believes that its chance of success in the JFL Arbitration is uncertain.  This is, in part,[14] why the Debtor vigorously opposed JFL Lift Stay Motion, which was JFL's second motion to lift the stay (this time filed in this Court), ECF No. 155.  At the hearing held on the JFL Lift Stay Motion on August 9, 2017, the Court neither granted nor denied the motion, and continued the hearing until September 20, 2017.  The hearing on the JFL Lift Stay Motion has been continued five times since, on the agreement of the Debtor, Committee and JFL, while the parties engaged in settlement discussions, which resulted in the JFL Settlement.  While the Debtor plans to continue to oppose the grant of the JFL Lift Stay Motion if the Settlement Agreement is not approved and the case is not dismissed, the Debtor appreciates that its effort might not be successful and the stay might be lifted to permit the JFL Arbitration to proceed.  If the Court grants the JFL Lift Stay Motion, the Debtor necessarily would incur substantial legal fees proceeding with trial, and there would be a risk that JFL would have an allowed claim against the estate of $18 million or more.  JFL has informed that Debtor that it is highly confident this would occur, and if the JFL Lift Stay Motion proceeds and is granted, JFL would seek to have the Arbitration scheduled as quickly as possible.  If the JFL Lift Stay Motion is denied and this Court rules on the JFL claim, the risk remains that the JFL claim would be allowed in an amount in excess of $18 million.

With respect to the Debtor's counterclaims, Debtor acknowledges that under California law a client is free to terminate its counsel at any time, and the Debtor's claims for damages would be limited to *quantum meruit*, *i.e.* the reasonable value of its legal services rendered up to the time of

---

[14] By objecting to JFL's claim in this Court, the Debtor believes it would not be subject to the Panel's pretrial rulings, which would mean JFL's claims would be determined on their merits, which could inure to the benefit of the Debtor's other general unsecured creditors, as well as the Debtor.  JFL asserts that the pretrial rulings would apply to any proceedings in this Court concerning the issues raised in the JFL Arbitration, JFL's claim and other disputes between the Debtor and JFL.

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

the Debtor's termination.  Moreover, because the compensation to be paid to the Debtor in these cases were subject to contingency fee agreements, the Debtor is not entitled to any fees in these matters unless and until the underlying actions are resolved by way of a judgment or settlement in the clients' favor.  While the Debtor has asserted liens in 17 cases that the Debtor asserts were taken over by FSS, the Debtor has learned from FSS that a small number of cases were never filed or dismissed without any recovery, in which case the Debtor is not entitled to any damages.  *See* Settlement Agreement, Exh. A.   Further, certain cases were filed shortly before the clients terminated the Debtor, and as a result, the number of attorney hours incurred by the Debtor on those cases is limited. *Id*. And, in one of the cases, the client had never retained the Debtor in the first place. *Id*.  The Debtor is also aware that some cases may result in the payment of fees and costs that it might or might not be able to recover.  In particular, as stated above, under the JFL Settlement, the Debtor would be entitled to 50% of any fees paid to FSS, JFL and Frank from the AEP Litigation.  These factors will impact the value of the Debtor's counterclaims, which the Debtor values in its amended Schedule B and Statement of Financial Affairs at approximately $5 million.[15]  The JFL Parties dispute this valuation.

For this reason, the Debtor believes it is in the best interest of the Debtor, its estate and its estate's creditors to settle with JFL in accordance with the JFL Settlement.  As stated above, under the JFL Settlement, JFL will have an allowed general unsecured claim of $10,000,000, a reduction of nearly 47% of the claim amount asserted in the JFL Arbitration and in its proof of claim, which would be satisfied with an aggregate timely payment of $4,850,000, resulting in JFL being paid only 26% of the amount it seeks.  In arriving at these amounts, the Debtor received credit for the value of its attorneys' liens, Settlement Agreement, p. 6 n. 2., and, as stated above, will receive 50% of any fees from the AEP Litigation.

While settling with JFL, alone, would substantially benefit the estate, the Debtor did not want to do so only to have to continue to resolve or litigate claims filed by additional former firm attorneys, who, together with Frank, are the members of the FSS, and incur legal fees doing so.

---

[15] The JFL Parties assert that the Debtor would not prevail in its counterclaim or any claim objection against one or more of the JFL Parties based on the Debtor's allegations that Frank and Sims wrongfully left the Debtor and started their own firm.

DOCS_LA:311840.4 20328/001

Sims also commenced Sims Arbitration against the Debtor prepetition.  In the Sims Arbitration, Sims sought damages of over $400,000.  The Debtor asserted a counterclaim against him.  Sims filed a proof of claim (Claim 7-1) for over $400,000, plus indemnification.  Stolper filed a proof of claim (Claim 9-1) for indemnification.  Frank, individually, filed a proof of claim (Claim 6-1) for indemnification, as well.  Approval of the Settlement Agreement will resolve the claims of all of Sims, Stolper and Frank, except for contingent malpractice indemnification and insurance coverage and related indemnification rights.  See Settlement Agreement 5.1, 5.2, 5.5.  Also, the Debtor will receive broad releases from all of the JFL Parties.  See Settlement Agreement 4-6.  Substantial litigation costs and chapter 11 costs also end.  Together, all of this frees up substantial assets for distribution to other creditors.

2.    Difficulties of Collection.

The Debtor has filed counterclaims in the Arbitration and has asserted attorney's liens in the cases listed in its amended Schedule B.74.  The difficulties of collection are addressed in the subsection immediately below.

3.    Complexity, Expense, Inconvenience, and Delay.

As stated above, determining whether the Debtor is entitled to fees and costs, and in what amount, in particular litigation assets is very complex, and is often based on *quantum meruit*, proof of which requires expert testimony in potentially lengthy and expensive state or federal court litigation.  Co-counsel claims are also complex and may require estimation or allowance based on expert testimony before this Court, which would be expensive and time-consuming.  The asset-recovery and claims-objections process may, therefore, delay distributions to creditors for potentially years.  In contrast, the JFL Settlement would be implemented upon dismissal of the Case, and distributions to some creditors, whether in the ordinary course or by agreement, would begin promptly thereafter.

4.    Interests of Creditors.

The Debtor believes that the JFL Settlement is in the best interests of the Debtor, the Debtor's chapter 11 estate, its creditors, and its equity interest holders, as well as its clients,

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

14

employees, landlord, vendors, co-counsel, and community.  Also, the United States, JFL and large unsecured creditor X-Law Group support this Motion.

If the relief sought is granted, unsecured creditors with allowed claims will be paid in full or as otherwise agreed by the Debtor and creditor, and the United States will be paid more promptly than it would through a plan.  Other tax claims and Stoll's disputed claim will be ride-through unimpaired.  Further, approval of the Settlement Agreement will facilitate dismissal of this Case.  The alternative is further litigation on the JFL Lift Stay Motion, litigation before the Panel or this Court, on the merits of the disputes between JFL and the Debtor, as well as litigation in some forum on the disputes between Sims and the Debtor, all at substantial cost and risk to the Debtor and its other creditors, while this case lingers and administrative costs continue to grow.

Therefore, this Woodson Factor is fulfilled, and the JFL Settlement should be approved, including its requirement that the Case be dismissed.

**B.    The Case Should Be Dismissed As Set Forth in this Motion**

1.    Dismissal of the Case Is Warranted Under Section 1112(b)

Pursuant to section 1112(b)(1) of the Bankruptcy Code, "the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, if the movant establishes cause." 11 U.S.C. § 1112(b)(1).  The Ninth Circuit has stated that "unless dismissal will cause some plain legal prejudice to the creditors, it normally will be proper."  *Schroeder v. Int'l Airport Inn P'ship (In re Int'l Airport Inn P'ship)*, 517 F.2d 510 (9th Cir. 1975) (Bankruptcy Act case), *applied under the Bankruptcy Code in In re Richmond Unified School District*, 133 B.R. 221, 224 (Bankr. N.D. Cal. 1991) (dictum) ("The same rule would presumably apply to a Chapter 11 debtor's motion to dismiss pursuant to section 1112(b) . . . ."), *and in Gill v. Hall (In re Hall)*, 15 B.R. 913, 917 (BAP 9th Cir. 1981) ("This Panel can find no authority or changes in the Code which would command a change in the law under the Act.").

Other courts have found that dismissal is mandatory once a court has found that "cause" exists and that dismissal is in the best interests of a debtor's creditors and its estate.  *See In re Riverbend Community*, 2012 Bankr. LEXIS 1275, at *11 (Bankr. D. Del. Mar. 23, 2012) (court must dismiss if cause shown unless unusual circumstances exist); *In re 3 Ram, Inc.*, 343 B.R. 113, 119

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

15

(Bankr. E.D. Pa. 2006) ("Under new § 1112 when cause is found, the court *shall* dismiss or convert unless special circumstances exist that establish that the requested conversion or dismissal is not in the best interests of creditors and the estate.").

The bankruptcy court has "broad authority to act in a manner that will prevent injustice or unfairness in the administration of bankruptcy estates." *In re Kaiser Aluminum Corp.*, 456 F.3d 328, 340 (3d Cir. 2011). This authority includes the ability to grant a dismissal with conditions. *See In re Fleurantin*, 420 F. App'x 194, 197 (3d Cir. 2001) (bankruptcy court's finding that structured dismissal with conditions was in best interests of creditors was not abuse of discretion). In fact, the Local Bankruptcy Rules of this Court expressly provide for conditions to a dismissal, including conditioning dismissal on the payment of fees and expenses. LBR 1017-2(e)(2) ("The Declaration in support of the motion must disclose any arrangement or agreement between the debtor and creditors or any other person in connection with the motion for dismissal or suspension.") and (3) ("The court may condition the dismissal upon payment of fees and expense, including fees due the United States trustee."). Also, "[w]hen construing feasibility requirements under § 1112(b), Chapter 11 debtors should be given the benefit of the doubt and a court should reasonably resolve conflicts in the evidence in favor of the debtor." *In re Fort Knox Mini Warehouse*, 2002 Bankr. LEXIS 909, at **9-10 (Bankr. N.D. Iowa July 31, 2002).

a.    Cause Exists to Dismiss the Chapter 11 Case.

"[T]he bankruptcy court has broad discretion in determining what constitutes 'cause' adequate for dismissal under § 1112(b)." *Rand v. Porsche Fin. Servs. (In re Rand),* 2010 Bankr. LEXIS 5076, at *15 (BAP 9th Dec. 7, 2010). "A non-exclusive list of what constitutes 'cause' is found in § 1112(b)(4)." *Id.* at **9-10. "[T]he court should 'consider other factors as they arise, and use its equitable powers to reach the appropriate result in individual cases.'" *Id.* (quoting *Pioneer Liquidating Corp. v. U.S. Trustee (In re Consolidated Pioneer Mortgage Entities),* 248 B.R. 368, 375 (BAP 9th Cir. 2003)). "The court must also consider what is in the best interests of creditors and the estate." *Id.*[16]

---

[16] *See also In re Buffet Partners,* 2014 Bankr. LEXIS 3204, at * 7 (Bankr. N.D. Tex. July 28, 2014) (to approve structured dismissal preceded by a settlement and sale, bankruptcy court found satisfaction of (a) "best interests of creditors" test, which focuses on the entire creditor body, not individual creditors, and (b) "best interest of the estate" test, which "compares the economic value of the debtor in a converted case to its value after dismissal"; it also applied

DOCS_LA:311840.4 20328/001

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    The Debtor believes that, while it would be able to propose a confirmable plan, dismissal of

2    the Case is best here.  Given the nature of its business, the Debtor has "chunky" revenues that are

3    often received in very large amounts, from time to time (but not periodically).  Demonstrating plan

4    feasibility based on admissible evidence, including expert testimony, would be expensive and may

5    involve confidential and proprietary information that could impinge on the attorney-client privilege

6    of the Debtor's plaintiff clients.[17]  Testimony and documentary evidence sought to be entered into

7    evidence might also subject to evidentiary objections from parties seeking leverage in negotiations

8    with the Debtor and other creditors.  Such leverage would not exist outside of bankruptcy because

9    plan feasibility would not be at issue.  Also, a time-consuming plan negotiation, proposal, disclosure

10    and solicitation process, as well as the bankruptcy process overall with its reporting requirements

11    and deadlines, would continue to distract the Debtor from its business.

12    Therefore, the Debtor believes that the dismissal of the Case is in the best interests of the

13    Debtor, its estate and its estate's creditors because creditors would paid as set forth in this Motion or

14    have their claims reinstated, and the Debtor would be freed from the distraction, time and expense

15    burdens of bankruptcy, thereby permitting the Debtor to focus on its profitable business for the

16    benefit of all of its constituencies.  Thus, dismissal would benefit the Debtor's (a) clients and

17    potential clients, whom would have a law firm that is no longer in bankruptcy to represent them; (b)

18    employees, whom would remain employed; (c) vendors and co-counsel, which would have a viable

19    Debtor with which they could continue to do business; (d) landlord, which would continue to have

20    rent-paying tenant; and (e) taxing authorities, which would collect post-dismissal taxes, all in the

---

tests for settlement, and found structured dismissal was "fair and equitable" because "senior interests are entitled to full priority over junior interests," the settlement was not a *sub rosa* plan, and it did "not discriminate unfairly," a conclusion supported by there being no dissenting creditors).

[17] "To confirm a plan, a bankruptcy court must find that the plan is feasible, meaning that confirmation of the plan is not likely to be followed by the liquidation, or the need for further financial reorganization, of the debtor.  Feasibility requires only that the debtor demonstrate that the plan has a reasonable probability of success. The Code does not require the debtor to prove that success is inevitable or assured, and a relatively low threshold of proof will satisfy § 1129(a)(11) so long as adequate evidence supports a finding of feasibility….  Because feasibility is an issue of fact, we give due regard to the bankruptcy court's evaluation of witness testimony and any inferences drawn by the court."  See *Beal Bank USA v. Windmill Durango Office, LLC (In re Windmill Durango Office, LLC)*, 473 B.R. 762, 777 (BAP 9th Cir. 2012) (citations and internal quotation marks omitted).

17

1    ordinary course of business.  Accordingly, the Debtor has shown that cause exists to dismiss the

2    Case on the terms described herein pursuant to section 1112(b) of the Bankruptcy Code.[18]

3                   **b.**        **Dismissal Is in the Best Interests of the Debtor's Creditors and Estate.**

4    Once a court determines that cause exists to dismiss a debtor's chapter 11 case, the court

5    must evaluate whether dismissal or conversion is in the best interests of the debtor's creditors and of

6    the estate.  *Shulkin Hutton, Inc. v. Treiger (In re Owens),* 552 F.3d 958, 961 (9th Cir. 2009)

7    (affirming dismissal:  "when deciding between dismissal and conversion under 11 U.S.C. § 1112(b),

8    'the Court must consider the interests of all of the creditors'") (quoting *Rollex Corp. V. Associated*

9    *Metals (In re Superior Siding & Window Inc.),* 14 F.3d 240, 243 (4th Cir. 1994)).  *See In re*

10   *American Capital Equipment, LLC*, 688 F.3d, 145, 161 (3d Cir. 2012); *Superior Siding & Window*,

11   14 F.3d at 242 ("Once 'cause' is established, a court is required to consider this second question of

12   whether to dismiss or convert.").  A court has significant discretion to determine whether dismissal

13   or conversion is the more appropriate alternative.  *American Capital*, 688 F.3d at 163.  Here,

14   dismissal is more appropriate for several reasons.

15   First, the alternatives to dismissal, either requiring the Debtor to prepare and solicit votes on

16   a chapter 11 plan or converting the chapter 11 Case to chapter 7 with the resulting appointment of a

17   trustee, are unnecessary and would impose significant additional administrative costs upon the

18   Debtor's estate with no corresponding benefit.

19   Second, conversion here is impractical; no trustee could manage the Debtor – a contingency

20   fee law firm – as a going concern.

21   Third, a trustee could not collect on the Debtor's quantum meruit litigation assets more

22   quickly or with better results than Avenatti.

23   Fourth and last, the Court may consider the expressed interests of creditors and other parties

24   in interest when determining whether dismissal or conversion is in the best interests of creditors.  *See*

25   *Camden Ordnance Mfg. v. U.S. Trustee (In re Camden Ordnance Mfg.)*, 245 B.R. 794, 801 (E.D. Pa

26   2000) (bankruptcy court properly considered opinions of committee members and United States

---

[18] The structured dismissal of a case has also been granted under section 105(a), as well as section 1112(b).  *Buffet Partners,* 2014 Bankr. LEXIS 3204, at * 11 ("11 U.S.C. §§ 1112(b) and 105(a) provide this court with the requisite authority to fashion the dismissal order that the parties seek.").

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

Trustee when evaluating best interests of creditors); *In re Mazzocone*, 183 B.R. 402, 413-14 (Bankr. E.D. Pa. 1995) (preference of one creditor not dispositive of the best interests of creditors, but global approach is appropriate); *Buffet Partners,* 2014 Bankr. LEXIS 3204, at * 10 ("It is important to emphasize that not one party with an economic stake in the case has objected to the dismissal in this manner.  While this fact is not outcome determinative, it is still worthy of consideration.").  Here, the United States and JFL require dismissal of the Case.

c.    This Court May Dismiss the Case.

This Court may approve dismissal of the Case in conformity with the Supreme Court's guidance in *Czyezewski v. Jevic Holding Corp.*, 137 S. Ct. 973 (2017).  In *Jevic,* on March 22, 2017, the Supreme Court reversed the Third Circuit's order approving a structured dismissal that included a priority-skipping distribution scheme.  *Id.*  The Supreme Court stated:  "[T]he Code permits the bankruptcy court 'for cause,' to alter a Chapter 11 dismissal's ordinary restorative consequences.  A dismissal that does so (or which has special conditions attached) is often referred to as a 'structured dismissal'. . . ."  *Id.* at 979 (quoting 11 U.S.C. § 349(b)).  The Supreme Court, however, limited the scope of its decision to priority-skipping dismissal orders, stating that:  "We express no view about the legality of structured dismissals in general."  *Id.* at 985.

As the treatise *Collier on Bankruptcy* recognizes:  "[T]he [Supreme] Court was careful to note that it expressed 'no view about the legality of structured dismissals in general.'  Thus, presumably a settlement that provides for releases of third parties might still pass muster.  All the court's opinion in *Jevic* tells us is that a dismissal order may not violate the Code's priority scheme, at least without the consent of all affected parties."  *Collier* ¶ 1112.08 (quoting *Jevic,* 137 S. Ct. at 985).[19]

Although in *Jevic*, the Supreme Court stated that it was not deciding the legality of structured dismissals in general, it addressed case law that approved or disapproved particular structured

---

[19] *Accord*, *In re Fryer*, 2017 Bankr. LEXIS 1123, at **16-17 (Bankr. E.D. Tenn. Apr. 25, 2017) (applied the Supreme Court's holding in *Jevic* to a contested settlement that was "a preamble to a conversion or structured dismissal," finding that the movant must prove that the settlement is "fair and equitable" based on a Sixth Circuit factor test, and that in order to deviate from the priority scheme of the Bankruptcy Code, per *Jevic*, the bankruptcy court must find that the settlement "serves a significant Code-related objective . . . such as enabling a successful reorganization or permitting a business debtor to reorganize and restructure its debt in order to revive the business and maximize the value of the estate" and "demonstrate that it makes even the disfavored creditors better off.").

19

dismissals.  For example, the Supreme Court discussed the decision of United States Bankruptcy

Court for the District of New Jersey in *In re Biolitec, Inc.* to deny the motion of a chapter 11 trustee

for approval of a settlement with a secured creditor in conjunction with a structured dismissal of the

case, because the terms of the settlement and conditions of dismissal modified the distribution

scheme of the Bankruptcy Code, and altered many of the Bankruptcy Code's most important

safeguards.  528 B.R. 261, 269 (Bankr. N.J. 2014).  The New Jersey bankruptcy court mentioned

specifically that the settlement and dismissal conditions:  (a) executed binding assignments of rights

and releases of liability; (b) modified the claims distribution process; (c) replaced the bankruptcy

trustee with a liquidating trustee answerable to the secured creditor, not the court; and

(d) subordinated the claims of non-debtor affiliates with no determination by the bankruptcy court

that subordination was warranted.  *Id.*

    In *Jevic,* the Supreme Court also briefly addressed *Buffet Partners*.  The Supreme Court

implied that *Buffet Partners* was not contrary precedent to its decision to deny the structured

dismissal before it because in *Buffet Partners* "not one party with an economic stake in the case …

objected to the dismissal …."  137 S.Ct. at 985.

    The *Biolitec* bankruptcy court also addressed *Buffet Partners*, distinguishing it based on

respective facts.  In *Buffet Partners*, the bankruptcy court recognized that "[w]hile the proposed

dismissal does have certain plan aspects," it did not violate the absolute priority rule, and the process

was fair because "it does not cut off the rights of any parties without giving them the chance to voice

and objection" after "appropriate notice is given."  *Id.*, at *8-10.  As well, the following conditions

had to be met before a case would be dismissed:  (a) completion of the claims reconciliation process

by the creditors' committee; (b) payment of United States Trustee's fees; (c) disbursal of funds to

creditors by the debtor in accordance with a schedule filed with the court; (d) entry of orders by the

court with respect to final fee applications.  In addition the court would retain jurisdiction to interpret

and implement orders entered during the case.  Further, the debtor would wind up and dissolve under

state law without need for shareholder or board approval.  *Id.* at *4-5.  See *Biolitec*, 528 B.R. at 269.

    Also in *Jevic,* the Supreme Court listed the following factors in support of its decision to

reverse approval of the structured settlement before it:  (a) "the priority-violating distribution is

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

20

attached to a final disposition"; and (b) "it does not": (1) "preserve the debtor as a going concern";

(2) "make the disfavored creditors better off"; (3) "promote the possibility of a confirmable plan";

(4) "help to restore the status quo ante"; and (5) "protect reliance interests," which the Supreme

Court refers to collectively as "significant offsetting bankruptcy-related justification." *Id.*, at 986.

Additionally, in discussing why it rejects a "rare case exception," which would permit

priority–skipping structured settlements, the Supreme Court listed the following considerations:

(i) "departure from the protections Congress granted particular classes of creditors," particularly

addressing the wage priority; (ii) "changes in the bargaining power of different classes of creditors";

and (iii) "risks of collusion," particularly between "senior secured creditors and general unsecured

creditors teaming up to squeeze out priority unsecured creditors." *Id.*, at 986-87.

Here, the proposed dismissal of the Case is more like the dismissal in *Buffet Partners* than in

*Biolitec* and *Jevic*. All creditors and interest holders are being served with this Motion, and have an

opportunity to object. The dismissal here does not feature nonconsensual priority-skipping, and will

preserve the Debtor as a going-concern. It will make all creditors better off because the Debtor will

pay creditors as agreed or will reinstate their claims. It also preserves the status quo ante, as well as

protects the reliance interests of the United States. Significantly, this Case is not a case where a

secured creditor is colluding with a committee to skip a priority class or where the bargaining power

of a class is adversely affected. Here, the United States (which consents) is not a lender, the claims

of tax priority claimants (other than the United States) will ride-through unimpaired, and there are no

wage claimants or other non-tax priority claimants to skip. There is no attempt by the Debtor to

impose a departure from Congressional protections through this Motion.

Therefore, the proposed dismissal here is viable after *Jevic*. In fact, your Honor entered

structured dismissal orders post-*Jevic* in the *LKN Properties* case, which had more variation from a

mere restoration than here.[20] *See* Order Granting the Following Two Parts of Debtor's Motion: (1)

---

[20] In *LNK Properties*, this Court approved a two-stage dismissal process. First, in an order (ECF No. 83), the Court granted the motion in part, approving a settlement with a secured creditor, authorizing distributions from sale proceeds, and requiring the debtor in possession to file a declaration indicating when all distributions had been made. After such declaration was filed (ECF No. 86), this Court entered its related order (ECF No. 90) granting the part of the motion requesting dismissal of the case. In its motion for these orders, the Debtor had requested, in part, that the requested order provide that dismissal "shall not vacate any order or judgment previously entered by this Court," and that "the Court shall retain jurisdiction over enforcement of any of its orders." ECF No. 70, at 14, lines 18-21. Also, in the motion, the debtor stated that "the Debtor does not want to incur unnecessary legal expenses by remaining in bankruptcy," and

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

21

Approving Settlement of Disputes Between the Debtor and Bank of America, N.A.; and (2)

Authorizing Distribution of Sale Proceeds; and Continuing to May 31, 2017:  (1) Dismissal of

Chapter 11 Case, *In re LKN Properties,* No. 16 -13734 (Bankr. C.D. Cal. May 23, 2017) ECF No.

83, and Order Dismissing Chapter 11 Case, *id.,* (June 9, 2017), ECF No. 90.  In *LKN*, the dismissal

portion of the motion, as granted, was brought under section 1112(b) of the Bankruptcy Code.  *Id.*

(Apr. 20, 2017) ECF No. 70.

Also, Judge Zurzolo granted a post-*Jevic* structured dismissal in *In re Park Green LL. See*

Case No. 15- 28991, Order Granting Debtor's Motion for Order Dismissing Chapter 11 Case Upon

Distribution of Funds to Creditors (Bankr. C.D. Cal. June 26, 2017) ECF No. 168; Order Dismissing

Chapter 11 Bankruptcy Case, *id.* (Aug. 14, 2017) ECF No. 180.  The notice for the motion that was

granted requested the order:  "To avoid the time and expense associated with formulating a

liquidating plan, the Debtor requests that the Court authorize the Debtor to distribute funds to its

creditors and dismiss this case." *Id.* (May 31, 2017) ECF No. 146 at 2.  The *Park Green* motion, as

granted, was brought under section 1112(b) of the Bankruptcy Code.  *Id.* at 7-8.

Also, pre-*Jevic* structured dismissal orders are relevant for deciding post-*Jevic* motions for

structured dismissals.  As stated above, in *Jevic*, the Supreme Court was unpersuaded by a

bankruptcy court opinion in *Buffet Partners* because the matter before the bankruptcy court was not

contested by any party with an economic interest in the outcome.  137 S. Ct. at 985 (addressing

*Buffet Partners,* 2014 Bankr. LEXIS 3204).  In contrast to *Buffet Partners*, in *In re North American*

*Health Care,* Judge Wallace of this Court ordered the structured dismissal of a chapter 11 case

where the creditors' committee opposed dismissal because tort plaintiff creditors might be left with

nothing after the Debtor made distributions to creditors with liquidated claims, as proposed in the

motion seeking the dismissal order.  *See* Order (1) Authorizing the Distribution of Estate Funds to

Creditors, and (2) Dismissing Chapter 11 Bankruptcy Cases on Terms and Conditions Set Forth

Herein, No. No. 15-10610 (Bankr. C.D. Cal. June 13, 2006) ECF No. 711.  After considering the

committee's arguments, Judge Wallace ordered the case dismissed, having found "cause," under

"None of the Debtor's creditors (to the extent any exist) would be prejudiced by the dismissal of the case because they would be paid outside of bankruptcy and would retain their rights under state law.  The creditors would also not be affected nor prejudiced because the Debtor is not receiving a discharge.  Accordingly, the Debtor has determined that it is in the best interest of the Estate to dismiss this Chapter 11 case."  ECF No. 70 at 13, lines 23-26.

DOCS_LA:311840.4 20328/001

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

section 1112(b).  *Id.*, at 10.  He stated that "the key issue is 'whether creditors are better off if the bankruptcy case remains pending than they would be if the bankruptcy case is dismissed,'" and found that:  "To the extent that the Debtors save money by not being in bankruptcy, it is possible that the Debtors will be in a better position to pay any judgments rendered against them.  (In this instance, it is a case where a possibility of something is better than a certainty of nothing, because after money is spent on allowed professional fees and expenses, it is gone forever) . . . .  The Debtors' businesses are profitable . . . .   [T]here is no indication or reason to believe that a trustee could operate the Debtor's business better than the Debtor's current management is operating it."  *Id.* Ex. A. (Tentative Ruling) at 13-15.[21]

The orders discussed above are examples of the numerous structured dismissal orders entered in the Central District of California bankruptcy court over the years, including your Honor's orders in *In re Easy Life Furniture, Inc.*, No. 14-12713 (Bankr. C.D. Cal. Mar. 23, 2015) ECF No. 347, motion at *id.* (Feb. 12, 2015) ECF No. 314 (requested order under sections 305(a) and 1112(b) of the Bankruptcy Code); *In re Nederland Hospitality,* No. 13-11701 (Bankr. C.D. Cal. Jan. 1, 2015) ECF No. 330 (approving settlement under Bankruptcy Rule 9019, and granting dismissal portion of motion under section 1112(b) of the Bankruptcy Code), motion at *id.* (Oct. 15, 2014) ECF No. 320; *In re Masonek*, No. 11-23223 (Bankr. C.D. Cal. Oct. 25, 2013) ECF No. 268; motion at *id.* (Sept. 4, 2013) ECF No. 251, at 5 (requested order under section 1112(b) of the Bankruptcy Code); *In re Krystal Infinity, LLC,* No. 12-19701 (Bankr. C.D. Cal. Apr. 23, 2013) ECF No. 374, motion at *id.* (Feb. 2, 2013) ECF  No. 309 (requested order under section 1112(b) of the Bankruptcy Code).  The Debtor will provide additional orders of this Court approving structured dismissals that are known to its bankruptcy counsel upon request, rather than list or attach them here.

The Debtor notes that the instant case is distinguishable from the case before Judge Mund in her opinion in *In re Johnson*, 565 B.R. 417, 427 (Bankr. C.D. Cal. 2017), a pre-*Jevic* decision.  In

---

[21] Also, Judge Saltzman of this Court entered structured dismissal order predicated on a settlement, even though the terms of the settlement were not disclosed to parties in interest.  In *In re Avail Trading Corp.*, she found that "'cause' exists under 11 U.S.C. § 1112(b) to dismiss this bankruptcy case and that dismissal is in best interests of the creditors and of the estate" predicated on a settlement with the largest creditor in the case, without the debtor disclosing the terms of the settlement in its motion, stating that:  "The Settlement, by its terms, is confidential and therefore, is not attached hereto.  However, the Settlement may be disclosed in camera at the hearing on the Motion should the Court so request." No. 16-11648 (Bankr. C.D. Cal. April 13, 2016) ECF No. 62, at 2 n.1.

DOCS_LA:311840.4 20328/001

*Johnson,* Judge Mund converted the debtors' chapter 11 case to a chapter 7 case, rather than enter the structured dismissal order proposed by the chapter 11 trustee under sections 105(a), 305(a) and/or 1112(b) of the Bankruptcy Code, because conversion remained possible and the debtors were individuals who would lose their discharge upon dismissal.  Judge Mund distinguished the case before her from a case of a corporate debtor:  "The lack of discharge is not relevant to a corporation, which cannot receive one in chapter 7."[22]

Here, not only would discharge not be a factor in deciding whether to convert the case or dismiss it, not one party in interest is seeking conversion because this Debtor is viable as a going concern only if Avenatti is running it.  The parties know that handing the Debtor's highly profitable business over to a chapter 7 trustee would destroy much of the estate's value, leaving creditors significantly impaired.  In contrast to conversion, which would precede a liquidation, after the Case is dismissed, the Debtor plans to remain a highly-profitable going-concern, pay its creditors as described in this Motion, provide its employees with continued employment, offer its vendors and co-counsel a continuing source of business, remain a rent-paying tenant for its landlord, and pay taxes.

2.      Dismissal of the Chapter 11 Cases Is Warranted Under Section 305(a)

Alternatively, this Court may dismiss the Case pursuant to section 305(a) of the Bankruptcy Code.  It provides:

> The court, after notice and a hearing, may dismiss a case under this title, or may suspend all proceedings in a case under this title, at any time if  . . . the interests of creditors and the debtor would be better served by such dismissal or suspension. . . .

11 U.S.C. § 305(a).

Under section 305(a), "the bankruptcy court may decline to exercise . . . [the general bankruptcy] jurisdiction [granted under 28 U.S.C. §§ 1334(a)-(b)], relegating a debtor and its creditors to the governance of non-bankruptcy law."  *In re NRG Energy, Inc.*, 294 B.R. 71, 79

---

[22] Cf. *In re St. Luke Baptist Church*, 2016 Bankr. LEXIS 3687, at *13 (Bankr. C.D. Cal. Oct. 11, 2016) (Kwan, J.) ("While the debtor may be contemplating a structured dismissal based on settlement of various disputes, which may justify a distribution to creditors outside a plan under the "extraordinary circumstances" exception, the exception was not discussed here, nor raised in a motion to approve a structured settlement.") (citing *In re Air Beds, Inc.*, 92 B.R. 419, 422-24 (BAP 9th Cir. 1988)).

24

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

(Bankr. D. Minn. 2003) (citing to legislative history). "Substantial support by creditors for abstention and a non-bankruptcy process is an important factor in the analysis . . . . These values are consistent with the structure of most consensual 'global' workouts." *Id.* at 81. "One prominent factor that militates in favor of a consensual arrangement under a non-bankruptcy process is economy. For two decades or more, the courts have recognized that notice requirements, procedural exactitude, and public oversight that debtors-in-possession assume in exchange for the court's protection and imprimatur entail rapidly-mounting costs, and consume more time as well. Over that time, private and public participants in the bankruptcy process acknowledged the tensions between these alternative vehicles, recognized the benefit of the federal forum, and then developed means for cost containment that keep the protections of the bankruptcy jurisdiction." *Id.* at 81-82 (citations omitted). "[T]he 'paradigm case' for abstention [is] identified in the legislative history:

> The court may dismiss or suspend under [§ 305(a)], for example if an arrangement is being worked out of court, there is no prejudice to the rights of creditors in that arrangement, and an involuntary case has been commenced by a few recalcitrant creditors to provide a basis for future threats to extract full payment. The less expensive out-of-court workout may better serve the interests of the case . . . .

*Id.* at 81 (brackets in original; quoting H.R. Rep. No. 595, 95th Cong., 1st Sess. 325 (1977); S. Rep. No. 989, 95th Cong., 2d Sess. 48-49 (1977) (hereinafter "House Report" and "Senate Report"). In *NRG*, the bankruptcy court granted the motion before it pursuant to section 305(a), finding that dismissal of the involuntary petition under section 303(j) would then be moot. *Id.* at 87-88. *See In re Iowa Trust*, 135 B.R. 615, 621-22 (Bankr. N.D. Iowa 1992) ("abstention is most appropriate in an involuntary case") (citing *In re Pine Lake Village Apartment Co.*, 16 B.R. 750, 753 (Bankr. S.D.N.Y. 1982)).

The Bankruptcy Appellate Panel has stated:

> The courts that have construed § 305(a)(1) are in general agreement that abstention in a properly filed bankruptcy case is an extraordinary remedy, and that dismissal is appropriate under § 305(a)(1) only in the situation where the court finds that both "creditors and the debtor" would be "better served" by a dismissal. . . .

> As the statutory language and legislative history demonstrate, the test under § 305(a) is not whether dismissal would give rise to a substantial prejudice to the debtor. Nor is the test whether a balancing

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

25

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

process favors dismissal.  Rather, the test is whether both the debtor and the creditors would be "better served" by a dismissal.

*Eastman v. Eastman (In re Eastman)*, 188 B.R. 621, 624-25 (BAP 9th Cir. 1995) (citations omitted; quoting House Report at 325).  The BAP also stated:

> There are seven factors the bankruptcy court may consider to determine whether dismissal or suspension under § 305(a) is appropriate.  The bankruptcy court "must make specific and substantiated findings" based upon these factors and conclude that the interests of the creditors and the debtor will be better served by dismissal or suspension. Those factors are:

> (1) the economy and efficiency of administration; (2) whether another forum is available to protect the interests of both parties or there is already a pending proceeding in state court; (3) whether federal proceedings are necessary to reach a just and equitable solution; (4) whether there is an alternative means of achieving an equitable distribution of assets; (5) whether the debtor and the creditors are able to work out a less expensive out-of-court arrangement which better serves all interests in the case; (6) whether a non-federal insolvency has proceeded so far in those proceedings that it would be costly and time consuming to start afresh with the federal bankruptcy process; and (7) the purpose for which bankruptcy jurisdiction has been sought.

*Gelb v. U.S. Trustee (In re Gelb)*, 2013 Bankr. LEXIS 1415, at *14-15 (BAP 9th Cir. Mar. 22, 2013), (citing *Marciano v. Fahs (In re Marciano)*, 459 B.R. 27, 45 (BAP 9th Cir. 2011), *aff'd*, 703 F.3d 1123 (9th Cir. 2013)).[23]  *See In re Iowa Trust*, 135 B.R. 615, 622 (Bankr. N.D. Iowa 1992) ("this Court will be guided by the unique facts of this case, and look only to the factors or criteria particularly relevant and applicable here.").

Dismissal of cases, with features similar to the dismissal sought here, have been approved by bankruptcy courts since early after the enactment of the Bankruptcy Code.  *See, e.g.*, *In re Luftek*, 6 B.R. 539, 548 (Bankr. E.D.N.Y. 1980) ("the alleged debtor has shown its willingness to pay these creditors in full by entering into a loan commitment; the loan would be secured by the personal assets of the debtor's president.  Moreover, the alleged debtor's President has testified that Luftek has potential receivables as a result of contracts which are only partially performed by Luftek.  If Luftek or its trustee were to disaffirm these contracts, as a result of bankruptcy liquidation, most or all of these receivables would be lost.  With or without the loan commitment, it is apparent that the

---

[23] *See In re Fax Station, Inc.* 118 B.R. 176, 177 (Bankr. D.R.I. 1990) (seven-factor or criteria test first listed).  Such factors, collectively, are referred to herein as the "Fax Station Factors."

26

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

1    best interests of creditors and the debtor would be better served by dismissal under section 305(a).")

2    (citation omitted).

3        This Court has previously granted a dismissal pursuant to section 305(a).  Order Approving

4    Debtor's Motion for Order Dismissing Chapter 11 Bankruptcy Cases and Authorizing Distribution

5    of Available Funds to Pay UST Fees in Full and Allowed 503(b)(9) Claims Pro Rata, *In re S.B.*

6    *Restaurants Co*., No. 14-13778 (Bankr. C.D. Cal. June 18, 2015) ECF No. 553; granting order at *id.*

7    (May 21 2015) ECF No. 521, at 11 *et seq.* (seeking order under sections 305(a) and 1112(b)).

8        The dismissal here includes many of the Fax Station Factors, and is consistent with the

9    legislative history quoted above.  The Debtor believes that it and its creditors are best served by

10    dismissal.  Therefore, dismissal of the Case may be granted under section 305(a) of the Bankruptcy

11    Code, in addition to or as an alternative to section 1112(b) of the Bankruptcy Code.

12        3.     Effect of Section 349(b) Upon Dismissal

13    Section 349(b) of the Bankruptcy Code provides, in pertinent part:

14              Unless the court, for cause, orders otherwise, a dismissal of a case . . .

15              (1) reinstates - . . . (C) any lien voided under section 506(d) of this
               title; (2) vacates any order judgment, or transfer ordered, under section

16              522(i)(1), 542, 550, or 553 of this title; and  (3) revests the property of
               the estate in the entity in which such property was vested immediately

17              before commencement of the case under this title.

18    11 U.S.C. § 349(b).

19        "Dismissal allows creditors and debtors to get on with their non-bankruptcy business and

20    resolve their disputes in appropriate fora." *Aheong v. Mellon Mortgage Co. (In re Aheong),* 276

21    B.R. 233, 239 (BAP 9th Cir. 2002).  "'The basic purpose of [Section 349(b)] is to undo the

22    bankruptcy case, as far as practicable, and to restore all property rights to the position in which they

23    were found at the commencement of the case.'" *Id.* (quoting House Report at 338; Senate Report at

24    48-49).  "However, § 349(b)(2) only applies to orders or judgments specifically identified in that

25    provision." *United States v. Moyer*, 2011 U.S. Dist. LEXIS 112909, at *11 (N.D. Cal. Sept. 30,

26    2011) (citing *Gardenhire v. IRS (In re Gardenhire),* 209 F.3d 1145, 1152 (9th Cir. 2000), *In re*

27    *Carraher*, 971 F.2d 327, 328 (9th Cir. 1992); *Arenson v. Farmers Ins. Exch. (In re Arenson)*, 282

28

DOCS_LA:311840.4 20328/001

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

B.R. 883, 891 n.3 (BAP 9th Cir. 2002). *See Commer. Elec., Inc. v. JGC Enters. (In re JGC Enters.),* 40 F. App'x 561, 564-65 (9th Cir. 2002) ("Because it is clear that the decision of the bankruptcy court was based exclusively on Idaho state law, and failed altogether to rely on the provisions of § 349, specifically by not voiding any liens under § 506(d) of the Bankruptcy Code, we reject appellants' argument and affirm the district court's grant of summary judgment in favor of JGC.").

For orders granted under the sections of the Bankruptcy Code listed in section 349(b), the bankruptcy court may nevertheless order them effective post-dismissal "for cause."  11 U.S.C. § 349(b).  The court has discretion to order a different result than specified in section 349(b). *Collier, supra*, ¶ 349.03[2].  In fact, "it is the task of the bankruptcy court to make whatever orders may be necessary and appropriate to protect the rights acquired in reliance of the title 11 case." *Id.*

Here, the IRS Use of Cash Collateral and Adequate Protection Order (August 8, 2017), ECF No. 197, granted the Debtor's motion (May 31, 2017), ECF No. 93, which sought such order under sections 105(a) , 361, and 363(c) of the Bankruptcy Code, Bankruptcy Rules 4001 and 9019(a), and local Bankruptcy Rule 4001-1, none of which are listed in section 349(b).  The order approved the Stipulation Permitting Use of Cash Collateral and Providing Adequate Protection for the United States on Behalf of the Internal Revenue Service (May 31, 2017) ECF No. 91 (as supplemented June 13, 2017, ECF NO. 117), which states that "The obligations and replacement liens and super-priority claims shall continue in full force and effect in the event of a dismissal of the case." Id. ¶ 21. Therefore, the "obligations and replacement liens and super-priority claims" as set forth in such order would "continue in full force and effect" after dismissal of the Case, not because of the order requested here, but because of the prior order (ECF No. 197) granting adequate protection to the United States.[24]

Here, the Settlement and Case Dismissal Order sought by this Motion would need to survive dismissal of this Case, including (without limitation) its provisions approving and implementing the JFL Settlement, including such settlement's requirement that JFL's claim be allowed as a general unsecured claim in the amount of $10 million (subject to timely payment in full in two installment in

---

[24] The other pre-dismissal order that will survive dismissal of the Case is the order requested by this Motion.  Fee Orders may be entered concurrently with the order requested by this Motion or post-dismissal.

the total amount of $4.8 million), as set forth in the Settlement Agreement.  Additionally, the Fee

Orders would need to survive after they are issued and entered.

4.    Retention of Jurisdiction Post-Dismissal

As referenced in article VI.C above, a Local Bankruptcy Rule of this Court provides in

pertinent part:

> Notwithstanding any dismissal, the court retains jurisdiction regarding
> all issues involving sanctions, any bar against being a debtor in
> bankruptcy, all issues arising under 11 U.S.C. §§ 105, 107, 109(g),
> 110, 303, 329, 330, 349, 362, and 364, and to any additional extents
> permissible under applicable law.

LBR 1017-2(f).  Further, a bankruptcy court retains jurisdiction after its dismissal of a case to

interpret and effectuate its own orders entered prior to dismissal of the case and dispose of ancillary

matters, such as attorneys' fee applications, but may not grant new relief that is independent of its

prior rulings.  *Tsafaroff v. Taylor (in re Taylor),* 884 F.2d 479, 481 (9th Cir. 1989), *cited in Aheong*,

276 B.R. at 239-40.  *See Carraher*, 971 F.2d at 328 (bankruptcy court has discretion to retain

jurisdiction over adversary proceeding after dismissal of case), *cited in Aheong*, 276 B.R. at 240 n.7;

*In re Franklin*, 802 F.2d 324, 327 (9th Cir. 1986) (jurisdiction retained to interpret own order).

Here, as addressed above, the Debtor requests that in its order, the Court retain jurisdiction to

interpret, implement and enforce all of its pre-dismissal orders that survive dismissal, and all

ancillary matters.  In particular, the Debtor requests that this Court retain jurisdiction to consider Fee

Applications, enforce Fee Orders and other orders as set forth above.

# VII.

## NOTICE

Notice of this Motion has been given to:  (i) the U.S. Trustee; (ii) counsel to the Committee;

(iii) all known creditors of the Debtor; and (iv) all parties that have requested notice in the Case

pursuant to Bankruptcy Rule 2002.  The Debtor submits that no other or further notice is required.

DOCS_LA:311840.4 20328/001

# VIII.

## __CONCLUSION__

For the reasons set forth herein, the Debtor respectfully requests that the Court enter an order granting this Motion and such other and further relief as the Court deems proper.

Dated:    January 30, 2018                PACHULSKI STANG ZIEHL & JONES LLP

                                          By      */s/ Robert M. Saunders*
                                                  Robert M. Saunders
                                                  Attorneys for Eagan Avenatti, LLP, Debtor
                                                  and Debtor in Possession

DOCS_LA:311840.4 20328/001

## <u>DECLARATION OF MICHAEL J. AVENATTI</u>

I, Michael J. Avenatti, do hereby declare as follows:

1.    I am the managing partner of Eagan Avenatti, LLP, debtor herein (the "<u>Debtor</u>").  I make this Declaration based on facts within my personal knowledge.  If called upon, I can and will competently testify to the facts stated herein.

2.    I make this Declaration in support of the *Debtor's Motion for Order Approving Settlement and Dismissing Case* (the "<u>Motion</u>").  Capitalized terms not otherwise defined herein have the same meaning ascribed to them in the Motion.

3.    The Debtor is a Newport Beach, California based law firm consisting of nine attorneys that focuses on the litigation of complex, often high-profile class action and contingency fee lawsuits nationally.  The Debtor maintains an office in Los Angeles under an arrangement with The X-Law Group, P.C. ("<u>X-Law Group</u>") where the X-Law Group is the primary tenant.

4.    By their nature, the Debtor's lawsuit assets do not pay out fees and costs until litigation is concluded or settled, which often takes several years during which the Debtor routinely invests millions of dollars in investigating claims, conducting discovery, hiring experts, and preparing for trial.  Although the Debtor's revenue stream is "chunky," it is very profitable over time.  For example, on April 7, 2017, I, as class counsel, with the assistance of the Debtor, obtained an over $454 million jury verdict against Kimberly-Clark Corporation and Halyard Health, Inc. for damages resulting from defective surgical gowns.

5.    Because of the risk involved in a contingency practice, it is critical to a law firm such as the Debtor that lawsuits settle or be resolved on a regular basis.  The reason that the Debtor consented to the entry of the Order for Relief in the Florida Bankruptcy Court was that the Debtor's primary dispute is not with the petitioning creditor but with three former attorney employees of the Debtor – Jason Frank, Scott Sims and Andrew Stolper – who, from the Debtor's perspective, were terminated from the firm in May 2016 after they were discovered to have been forming their own competing law firm for months.  These former attorneys, all of whom have agreed to settle their claims in accordance with the terms of the proposed settlement brought before this Court in the Motion, dispute these allegations.  When they left the firm, the three attorneys took substantial

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

business with them, which the Debtor has repeatedly asserted left the Debtor with significant sunk costs on numerous cases, including hundreds of hours of staff and attorney time across many years, together with substantial out-of-pocket expenses for advanced costs and overhead.  The JFL Parties (Jason Frank Law, PLC ("JFL"), Frank, Sims, Stolper and their law firm Frank Sims & Stolper LLP ("FSS") then sought to diminish (if not eliminate) the Debtor's asserted lien rights in each of these lawsuits.  The Debtor claims that a number of these lawsuits were on the verge of settling, with potentially millions of dollars of contingency attorneys' fees and costs due the Debtor.  The Debtor has repeatedly asserted that the transfer of these assets from the Debtor to FSS caused a significant disruption in and impairment of the Debtor's cash flow.

6.    Prior to the Order for Relief Date, the Debtor was in an active arbitration with JFL, and in a separate arbitration with Sims.  JFL sought, but on March 10, 2017, was denied by the Florida Bankruptcy Court, relief from the automatic stay to liquidate its claim in the Arbitration.

7.    The Debtor disputes JFL's claim.  On July 10, 2017, the parties began mediation of JFL's claim and the Debtor's counterclaim.

8.    The Motion sets forth my understanding (on behalf of the Debtor) of the JFL Settlement.  The JFL Settlement resolves competing claims and counterclaims (including those currently in stayed Arbitrations) between the Debtor and the JFL Parties to millions of dollars of fees and costs from the lawsuits listed in amended Schedule B.74 in which FSS succeeded the Debtor as plaintiffs' counsel.  It also resolves one of the largest general unsecured claims filed in the Case, as well as disallows other general unsecured claims.   Further, it resolves all of the motions currently pending before this Court (JFL's motion seeking relief from stay and the Debtor's exclusivity motions).

9.    I, on behalf of the Debtor, have determined that the Debtor and its clients, employees, creditors, vendors, co-counsel, lessors and other constituencies would be best served by dismissal of this initially involuntary Case.  Also, significantly, dismissal of the Case is required by the JFL Settlement.  Additionally, the order requested by this Motion would implement the United States Payment Stipulation  and any terms agreed to by the Committee on behalf of holders of general unsecured claims in its constituency, and recognize that certain other claims ride-through the

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

32

dismissal of the Case unimpaired. Further, dismissal would free the Debtor from the time and distraction of addressing the continuing requirements of the Bankruptcy Code, Bankruptcy Rules, Local Bankruptcy Rules, and the U.S. Trustee's guidelines for a debtor in possession, which would permit it to dedicate more time to its profitable business for the benefit of all of its constituencies. Dismissal would also avoid unnecessary professional fees and other administrative claims, including the substantial cost of a disclosure statement and plan process.

10.     Therefore, I (on behalf of the Debtor) believe that dismissal of the Case would optimize the Debtor's continuing business. In doing so, it would maximize its going-concern value, which would inure to the benefit of all of its constituencies. Additionally, and significantly, the Settlement and Case Dismissal Order, as requested by the Motion, would not include any nonconsensual priority-skipping distribution provisions that might be questionable because the United States will have entered into the United States Payment Stipulation, and the claims of the Other Taxing Authorities will ride-through unimpaired, with their ability to execute on their claims restored.

*[REMAINDER OF PAGE INTENTIONALLY LEFT BLANK]*

1    I declare under penalty of perjury under the laws of the United States of America, that the

2    foregoing is true and correct.

3    Executed this 30 day of January, 2018 at Newport Beach, California.

4

5

6    Michael J. Avenatti

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

PACHULSKI STANG ZIEHL & JONES LLP
ATTORNEYS AT LAW
LOS ANGELES, CALIFORNIA

# EXHIBIT A

## SETTLEMENT AGREEMENT AND RELEASES

This Settlement Agreement and Releases ("Agreement") is entered into this 12th day of December 2017 by and between Jason Frank Law, PLC, a professional law corporation organized in California ("JFL"), Jason Frank ("FRANK"), an individual, Scott Sims ("SIMS"), an individual, Andrew Stolper ("STOLPER"), an individual, and Frank Sims & Stolper LLP, a limited liability partnership organized in California ("FSS") (collectively, the "JFL Parties"), on the one hand, and Eagan Avenatti LLP ("EA"), a limited liability partnership organized in California, Avenatti & Associates, APC ("A&A"), a professional corporation organized in California, Michael Avenatti ("AVENATTI"), an individual, and Michael Eagan, an individual ("EAGAN") (collectively, the "EA Parties"), on the other hand.  The JFL Parties and EA Parties are collectively referred to as the "Parties."

WHEREAS, JFL and FRANK entered into an Independent Contractor Agreement with EA effective November 1, 2013 (the "JFL Agreement") and prior to that time FRANK had been an employee of EA;

WHEREAS, SIMS entered into an Employment Agreement with EA dated March 1, 2014 (the "SIMS Employment Agreement");

WHEREAS, on or about February 28, 2016, JFL filed a Demand for Arbitration with JAMS against EA asserting claims for damages and other remedies for breach of contract, which demand was later amended to include claims for fraud, unjust enrichment, declaratory relief and punitive damages (the "JFL Arbitration");

WHEREAS, on or about May 20, 2016, JFL, FRANK, SIMS and STOLPER ceased practicing law at EA and formed a new law firm, FSS;

WHEREAS, the clients in the matters listed on Exhibit "A" (attached hereto) (collectively, the "Matters") terminated EA as their counsel in the Matters and retained FSS as their counsel in certain of the Matters;

WHEREAS, EA asserted attorneys' liens in the Matters and/or claimed it had the right to recover its reasonable attorneys' fees and costs for the work performed at EA on the Matters;

WHEREAS, on or about July 22, 2016, EA filed a Demand for Arbitration with JAMS against EA's former client, Kimberly Birbrower, seeking to recover fees and costs in the Birbrower v. Quorn Foods, Inc. matter, which is one of the Matters (the "EA/Birbrower Arbitration");

WHEREAS, on or about August 9, 2016, SIMS filed a Demand for Arbitration with JAMS against EA seeking certain sums owed under the SIMS Employment Agreement, including claims for breach of contract, fraud, accounting and constructive trust (the "SIMS Arbitration");

WHEREAS, on or about September 23, 2016, EA filed counterclaims against SIMS in the SIMS Arbitration asserting claims for breach of contract, fraud, violation of the California Uniform Trade Secret Act, breach of fiduciary duty, breach of duty of loyalty, conversion, accounting, and constructive trust;

WHEREAS, on or about September 12, 2016, EA filed counterclaims against JFL in the JFL Arbitration asserting claims for breach of contract, fraud, breach of fiduciary duty, breach of duty of loyalty, conversion, accounting, constructive trust and tortious interference;

WHEREAS, on or about December 15, 2016, EA filed a complaint in California Superior Court, County of Orange, Case No. 30-2016-00892564-CU-BC-CJC against its former client, William Scott Callaway, seeking to recover fees and costs in the Callaway v. Mercedes Benz USA, Inc. et al. matter, which is one of the Matters (the "EA/Callaway Lawsuit");

WHEREAS, on or about December 21, 2016, EA filed a complaint in California Superior Court, County of Orange, Case No. 30-2016-00893847-CU-MC-CJC against Paul Root and Madison Street Partners, Inc. asserting claims for aiding and abetting breach of duty of loyalty and aiding and abetting fraud (the "EA/Root Lawsuit");

WHEREAS, on or about February 8, 2017, EA's former clients, Authentic Entertainment Properties, LLC and Authentic Entertainment Properties Development, LLC (collectively "AEP") filed a Demand for Arbitration with JAMS against EA seeking declaratory relief and damages relating to EA's former representation of AEP in the AEP v. Royal Center Associates, LLC et al. matter, which is one of the Matters (the "AEP/EA Arbitration");

WHEREAS, on or about February 28, 2017, EA filed a motion to adjudicate its attorney lien against AEP in the District Court for Clark County Nevada, in the AEP v. Royal Center Associates, LLC et al. matter, which such motion was denied and is currently being appealed by EA;

WHEREAS, on or about March 1, 2017, an Involuntary Bankruptcy Petition against EA, seeking that EA be a debtor in a Chapter 11 case was filed in the Middle District of Florida, Case No. 6:17-bk-01329-KSJ (the "Bankruptcy Case");

WHEREAS, on or about March 10, 2017, EA consented to entry of Order for Relief in the Bankruptcy Case;

WHEREAS, on or about May 16, 2017, the Bankruptcy Case was transferred to the Central District of California, Santa Ana Division, before the Honorable Catherine E. Bauer (the "Bankruptcy Court"), and assigned a new case number 8:17-bk-1191-CB;

WHEREAS, on or about June 19, 2017, JFL filed a Proof of Claim in the Bankruptcy Case in the amount of not less than $18,615,886, which included (a) $12,396,633 in unpaid compensation under the JFL Agreement; (b) $1,868,221 in prejudgment, prepetition interest; (c) $500,000 in pre-petition attorneys' fees and costs; and (d) fraud damages and punitive damages in an unliquidated amount but likely in excess of $4,000,000;

WHEREAS, on or about June 19, 2017, FRANK, SIMS, STOLPER and FSS also filed Proofs of Claim in the Bankruptcy Case;

WHEREAS, on or about July 12, 2017, JFL filed a motion for relief from stay to proceed with the JFL Arbitration [Bankruptcy Case Docket Nos. 155, *et al.*] ("JFL RFS Motion"), the Debtor and certain other parties filed oppositions to the JFL RFS Motion, JFL filed a reply to those oppositions, a hearing on the JFL RFS Motion commenced on August 9, 2017 and was continued by direction of the Bankruptcy Court until September 20, 2017 and repeated times thereafter through and including December 13, 2017;

WHEREAS, AVENATTI is the managing member and majority equity holder of EA and solely owns and controls A&A;

WHEREAS, JFL, FRANK and SIMS have asserted that AVENATTI is personally liable to them for all or substantially all claims they have against EA and that A&A may be liable to them, all of which Avenatti and A&A dispute;

WHEREAS, it is in the personal, professional and business interests of AVENATTI and the professional and business interests of EA and A&A that the disputes among the JFL Parties and EA Parties be resolved promptly and each has concluded that he/it will received meaningful value if this Agreement is executed, approved and fully satisfied; and

WHEREAS, the Parties desire to resolve any and all disputes between them on the terms set forth herein (the "Settlement");

NOW THEREFORE, for and in consideration of the mutual covenants contained herein and for other good and valuable consideration, the sufficiency of which is hereby acknowledged, the Parties agree as follows:

1. **Dismissal of Bankruptcy Case.**

   1.1.    Subject to Paragraph 1.5 below, the effectiveness of the terms and obligations of this Agreement are contingent upon (a) EA filing a motion ("Settlement and Dismissal Motion") with the Bankruptcy Court seeking entry of one or more orders (the "Orders") approving the Settlement and authorizing and directing the Debtor to fully comply with all terms of this Agreement pursuant to Fed. R. Bankr. Pro. 9019 ("Settlement Order"), and dismissing the Bankruptcy Case, pursuant to Bankruptcy Code Section 1112(b) ("Dismissal Order"), on terms acceptable to JFL and EA, on or before January 3, 2018,with a hearing on the Settlement and Dismissal Motion to be held on January 24, 2018; (b) entry of the Orders on or before January 31, 2018; (c) the Bankruptcy Case being dismissed within sixteen (16) calendar days after entry of the Dismissal Order; (d) execution of the Guaranty Agreement (as defined below), on or before December 12, 2017; and (e) if a stay of the Settlement Order or Dismissal Order has been entered pursuant to Rule 8007 of the Federal Rules of Bankruptcy Procedure ("Rule 8007"), a

Termination Notice, as defined in Paragraph 1.5 below, having not been provided by JFL or EA. The proposed Order(s) are attached as Exhibit B.

1.2.     The JFL Parties will not oppose any of the relief sought in the proposed Orders, nor will they encourage others to do so, all subject to the timely satisfaction of the deadlines set forth herein (collectively "Deadlines").

1.3.     In the event the Orders are not entered by the Deadlines for their entry, or the Guaranty Agreement is not executed by the pertinent Deadline for its execution, the Parties will be returned to the *status quo ante* prior to their execution of this Agreement, and the Agreement shall be deemed null and void, and neither this Agreement, its execution nor any statements contained therein may be used in any subsequent proceedings in any court or arbitration.

1.4.     The hearing on the JFL RFS Motion shall be continued until January 24, 2018.

1.5.     If a stay of the Settlement Order or Dismissal Order is entered pursuant to Rule 8007 (a "Stay Order") or if the terms of this Agreement are materially modified by the Court, then JFL or EA may elect to withdraw from and terminate this Agreement, in which case this Agreement and all Orders entered thereon will be rescinded and all Parties will be restored to the *status quo ante* prior to the execution of this Agreement, and the Agreement shall be deemed null and void, and neither this Agreement, its execution nor any statements contained therein may be used in any subsequent proceedings in any court or arbitration.  If JFL or EA elects to exercise this right to terminate this Agreement, it shall provide notice of this election to the other parties to this Agreement, in writing, within five (5) business days after the Stay Order is entered (the "Termination Notice").  Upon such election, the Parties will cooperate in taking any action necessary to request that the appropriate court vacate the Settlement Order, the Dismissal Order and Stay Order, and will not object to or oppose such actions.

1.6.     If a Stay Order is issued and neither JFL or EA elect to terminate the Agreement in accordance with Paragraph 1.5, then the time for performing all obligations under this Agreement will commence upon the later of: (a) sixteen (16) calendar days after the Stay Order is no longer in effect provided that the Settlement Order and Dismissal Order have been affirmed; or (b) the time when the obligation would have otherwise been required to be performed under the terms of this Agreement.

2.   **Resolution of EA's Asserted Liens and Right to Attorneys' Fees and Costs in the Matters.**

2.1.     Within sixteen (16) calendar days of entry of the Dismissal Order, and provided no stay of the Settlement Order or Dismissal Order having been issued pursuant to Rule 8007, EA will withdraw all purported liens asserted in the Matters and will forever waive and forego, with prejudice and finality, any present or future claims for attorneys' fees, costs, expenses, damages, or any other compensation or remedies arising out of or relating to the Matters.

2.2.    Upon the sixteenth (16th) day following the entry of the Settlement Order, and provided no stay of the Settlement Order or Dismissal Order having been issued pursuant to Rule 8007, the EA Parties will be deemed to have released and forever waived and foregone, with prejudice and finality, any present or future claims for damages, legal fees and costs, or other remedies against (a) the JFL Parties, (b) the current, prior or future parties in the Matters; (c) the current, prior or future co-counsel of EA or FSS in the Matters, or (d) any other party or their counsel for claims arising out of or relating to the Matters, as more fully set forth in Section 5 of this Agreement.

2.3.    In exchange for the consideration provided under the terms of this Agreement, JFL has agreed to reduce its claim in the Bankruptcy Case, as set forth in paragraph 3.1, below, and SIMS, FRANK, STOLPER and FSS have agreed to waive, forego and withdraw each of their claims in the Bankruptcy Case, subject to and except for the terms of the Releases provided in Paragraph 5 below and compliance with the terms and conditions of this Agreement.

2.4.    In addition, the JFL Parties have agreed that EA will receive 50% of any and all legal fees which would otherwise be paid to FSS or FRANK in the future in connection with FSS's contingency agreement with AEP in the AEP v. Royal Center Associates, LLC et al. matter.  This arrangement will be documented in a separate written agreement between EA, AEP and FSS (the "AEP Fee Sharing Agreement"), the execution of which shall be required for this Agreement to take effect.  A copy of the AEP Fee Sharing Agreement is attached as Exhibit C.

3.    **Settlement Payments to JFL.**

3.1.    Upon entry of the Settlement Order, JFL will have an allowed claim against EA in the amount of TEN MILLION DOLLARS ($10,000,000.00), which claim ("JFL Allowed Claim") of JFL and liability of EA will survive dismissal of the Bankruptcy Case, and will not be subject to any further defenses, offsets, counterclaims, oppositions, answers, objections, contests, disputes or other challenges by any EA Party or any other party, provided, however, if (a) the Dismissal Order is not entered, (b) a Stay Order is entered and a Termination Notice is timely sent, or (c) the Settlement Order is overturned, vacated or remanded on appeal, then the JFL Allowed Claim will be null and void and the proof of claim it filed in the Bankruptcy Case and all the claims, rights, and damages asserted therein and in the JFL Arbitration will remain pending.  Nothing in this Paragraph 3.1 is intended to limit the rights of any Parties to enforce the terms of this Agreement.[1]

---

[1] For the avoidance of any doubt, the Parties arrived at the JFL Allowed Claim amount of TEN MILLION DOLLARS ($10,000,000.00) after deducting the credit for fees on the Matters as described in Paragraph 2.3 above and additionally JFL, thereafter, further agreed to reduce its claim to TEN MILLION DOLLARS ($10,000,000.00) as part of this Settlement.  In other words, the Allowed Claim of TEN MILLION DOLLARS ($10,000,000.00) will not be further reduced by any credit for fees, costs, expenses, damages or any other compensation allegedly owed on the Matters.

3.2.    EA will pay JFL the sum of FOUR MILLION EIGHT HUNDRED AND FIFTY THOUSAND DOLLARS ($4,850,000.00) pursuant to the following schedule:

      3.2.1.    Within sixty (60) calendar days after the entry of the Dismissal Order, and provided no stay of the Settlement Order or Dismissal Order having been issued pursuant to Rule 8007 and remains in effect, EA will wire JFL the sum of TWO MILLION DOLLARS ($2,000,000.00), in immediately available funds, pursuant to written wire instructions to be provided by JFL.

      3.2.2.    Within one-hundred and twenty (120) calendar days after the entry of the Dismissal Order, and provided no stay of the Settlement Order or Dismissal Order having been issued pursuant to Rule 8007 and remains in effect, EA will wire JFL the sum of TWO MILLION EIGHT HUNDRED AND FIFTY THOUSAND DOLLARS ($2,850,000.00), in immediately available funds, pursuant to written wire instructions to be provided by JFL.

      3.2.3.    The payments to be made in accordance with Paragraphs 3.2.1 and 3.2.2 are collectively referred to as the "Settlement Payments."

3.3.    In consideration of the terms of this Agreement, including, without limitation, the Releases set forth herein and the nature and pendency of the disputes between JFL and the EA Parties, AVENATTI agrees to personally guarantee, in his individual capacity, the FOUR MILLION EIGHT HUNDRED FIFTY THOUSAND DOLLARS ($4,850,000.00) of Settlement Payments.  The complete terms of this guaranty shall be set forth in a separate agreement ("Guaranty Agreement") between JFL and AVENATTI. A copy of the Guaranty Agreement is attached as Exhibit D.

3.4.    As will be set forth in the Guaranty Agreement, it is the intention of JFL and AVENATTI that AVENATTI's payment obligations under the Guaranty Agreement shall be non-dischargeable, under 11 U.S.C. Section 523(b) in the event AVENATTI becomes a debtor in a bankruptcy case while the Settlement Payments remain outstanding and thereafter to the extent any party in (1) AVENATTI's bankruptcy case or (2) a subsequent bankruptcy case or similar proceeding in which EA is the debtor or has a similar role seeks to recover all or any portion of the Settlement Payments.

3.5.    If the Settlement Payments are paid by EA to JFL within the timeframes and in the manner required by this Agreement, then effective 367 calendar days after the final Settlement Payment is received by JFL, JFL will waive and forego its right to collect any part of the remaining FIVE MILLION ONE HUNDRED AND FIFTY THOUSAND DOLLARS ($5,150,000.00) of its allowed claim.

3.6.    <u>Remedy Upon Payment Default.</u>  If the Settlement Payments are not made within three (3) business days of the applicable Settlement Payment date due, then all of the EA Parties agree that they will not oppose the entry by the Bankruptcy Court of a final, non-

appealable judgment against EA in favor of JFL in the amount of TEN MILLION DOLLARS minus any amounts previously paid to JFL pursuant to this Agreement (the "Final Judgment"), and will not oppose the reopening of the Bankruptcy Case for the limited and sole purpose only of entering this Final Judgment. JFL and the EA Parties expressly consent to the exclusive jurisdiction of the Bankruptcy Court to enter this Final Judgment against EA. By seeking or obtaining any of the relief described in this paragraph, JFL will not in any way waive or otherwise prejudice or impact its right to enforce the personal guarantee and Guaranty Agreement set forth in Paragraphs 3.3 and 3.4 of the Agreement.

4.    **Dismissal of Lawsuits and Arbitrations.**

4.1.    Within sixteen (16) calendar days of entry of the Dismissal Order, and provided no stay of the Settlement Order or Dismissal Order having been issued pursuant to Rule 8007, the commencing party in each of the following actions shall dismiss the actions and all claims therein with prejudice: (a) the JFL Arbitration and EA's counterclaims therein; and (b) the SIMS Arbitration and EA's counterclaims therein. With respect to the other litigation, EA will not pursue the EA/Birbrower Arbitration, the EA/Callaway Lawsuit, the EA/Root Lawsuit or any claims against AEP. AEP has dismissed, without prejudice, the AEP/EA Arbitration.

5.    **Releases.**

5.1.    **Release of EA Parties by JFL Parties.**  Effective upon the latest of (a) entry of Settlement Order, (b) entry of the Dismissal Order, and (c) dismissal of the Bankruptcy Case, and provided no stay of the Settlement Order or Dismissal Order having been issued pursuant to Rule 8007, and in consideration of the terms of this Agreement and other good and valuable consideration, JFL, FRANK, SIMS, STOLPER and FSS on their own behalf and on behalf of each and all of their respective legal predecessors, successors, assignees, attorneys, agents, partners, owners, employees, heirs, parents, children, spouses, and related organizations hereby irrevocably and unconditionally release, and fully and forever discharge, absolve, and covenant not to sue the EA Parties, and each of them, and every one of their respective partners, officers, directors, owners, agents, employees, companies, parents, subsidiaries, divisions, affiliates, attorneys, trustees, legatee, personal representative, administrators, insurers, fiduciaries, executors, representatives, predecessors, successors, assigns, related parties, heirs, parents, children and spouses from and for any and all claims, causes of action, liabilities, damages, legal or administrative relief, of any basis or source, whether known or unknown, that were, have been or could have been asserted now, in the past, or in the future, including, but not limited to, any and all claims raised in the JFL Arbitration, the Sims Arbitration or the Bankruptcy Case and/or any and all claims arising out of or relating to the JFL Agreement, the Sims Agreement and JFL's, Frank's, Sims' or Stolper's employment at or other rendition of services at EA. However, and notwithstanding any other terms in this Agreement, this release does not include or in any way release or waive claims held by any of the JFL Parties for indemnification, contribution and insurance coverage for any claims brought against them related to their employment at, or rendition of services at,

EA, including without limitation indemnification for tax liability that they may have now or in the future against EA. Further, notwithstanding the foregoing or any other terms of this Agreement, the releases set forth in this paragraph shall not operate to release the EA Parties from any of their payment and other covenants, obligations and duties under this Agreement or the Guaranty Agreement, nor will they in any way waive, limit or foreclose any of the JFL Parties from seeking and obtaining any appropriate remedies for any violation of the terms of this Agreement or the Guaranty Agreement.

5.2.    **Release of JFL Parties by the EA Parties.** Effective upon the latest of (a) entry of the Settlement Order, (b) entry of the Dismissal Order, and (c) dismissal of the Bankruptcy Case, and provided no stay of the Settlement Order or Dismissal Order having been issued pursuant to Rule 8007, and in consideration of the terms of this Agreement and other good and valuable consideration, EA, EAGAN, A&A and AVENATTI on their own behalf and on behalf of each and all of their respective legal predecessors, successors, assignees, attorneys, agents, partners, employees, heirs, parents, children, spouses, creditors, owners, executors, trustees and related parties hereby irrevocably and unconditionally release, and fully and forever discharge, absolve, and covenant not to sue the JFL Parties, and each of them, and every one of their respective partners, officers, directors, owners, agents, employees, companies, subsidiaries, divisions, affiliates, attorneys, trustees, legatee or personal representative, administrators, insurers, fiduciaries, executors, representatives, predecessors, successors, assigns, related organizations, heirs, parents, children and spouses from and for any and all claims, causes of action, liabilities, damages, legal or administrative relief, of any basis or source, whether known or unknown, that were, have been or could have been asserted now, in the past, or in the future. This release includes, but is not limited to any and all claims or counterclaims raised in the JFL Arbitration, the SIMS Arbitration or the Bankruptcy Case and/or any and all claims arising out of or relating to the JFL Agreement, the SIMS Agreement or the Parties employment at EA or other rendition of services at EA, or any and all claims for tortious interference, unfair competition, misappropriation, trade secret, conversion, fraud, breach of fiduciary duty, breach of duty or other such claims against the JFL Parties. Notwithstanding the foregoing, theses releases shall not operate to release the JFL Parties from any of their covenants, obligations and duties under this Agreement or the Guaranty Agreement, nor will they in any way waive, limit or foreclose any of the EA Parties from seeking and obtaining any appropriate remedies or relief for any violation of the terms of this Agreement or the Guaranty Agreement.

5.3.    **Release of Counsel in the Matters by the EA Parties.** Effective upon the latest of (a) entry of Settlement Order, (b) entry of the Dismissal Order, and (c) dismissal of the Bankruptcy Case, and provided no stay of the Settlement Order or Dismissal Order having been issued pursuant to Rule 8007, and in consideration of the terms of this Agreement and other good and valuable consideration, each of EA, EAGAN, A&A and AVENATTI on their own behalf and on behalf of each and all of their respective legal predecessors, successors, assignees, attorneys, agents, partners, employees, heirs, parents, children, spouses, creditors and related organizations hereby irrevocably and unconditionally release, and fully and forever discharge, absolve, and covenant not to sue the current, past or future co-counsel, in-house counsel, local counsel or subsequent

counsel for current, past or future clients of FSS in the Matters for any claims for attorneys' fees, costs, expenses, damages, or any other compensation or remedies arising out of or related to the matters listed on Exhibit "A," whether known or unknown, that were, have been or could have been asserted now, in the past, or in the future.    The persons and entities covered by this release include, but are not limited to: (a) Franklin D. Azar & Associates, P.C., Franklin D. Azar, Esq. Keith R. Scranton, Esq. and Jonathan Parrott, Esq.; (b) Law Offices of Steven R. Young and Steven R. Young, Esq.; (c) Girardi Keese, LLP and James O'Callahan, Esq.; (d) McNicholas & McNicholas, LLP, Patrick McNicholas, Esq., Matthew McNicholas, Esq., Philip Shakhnis Esq., and Michael J. Kent, Esq.; (e) Yuhl Carr LLP, Eric Yuhl, Esq. and Colin Yuhl Esq.; (f) Snell & Wilmer LLP and Steve T. Graham; (g) Lewis Roca Rothgerber Christie LLP and Dan R. Waite, Esq.; (h) Bridgford Gleason & Artinian, Richard K. Bridgford, Esq. and Michael H. Artinian, Esq.; (i) Orrick, Herrington & Sutcliffe LLP and Jörg Ritter, Esq.; (j) Osborn Machler and Simeon J. Osborn, Esq.; (k) Smyth & Mason PLLC and Jeffrey Smyth Esq. and (l) FSS, FRANK, SIMS and STOLPER as well as their respective legal predecessors, successors, assignees, attorneys, agents, partners, employees and related organizations.

5.4.    **Release of the Clients in the Matters by the EA Parties.**    Effective upon the latest of (a) entry of Settlement Order, (b) entry of the Dismissal Order, and (c) dismissal of the Bankruptcy Case, and provided no stay of the Settlement Order or Dismissal Order having been issued pursuant to Rule 8007, each of EA, EAGAN, A&A and AVENATTI on their own behalf and on behalf of each and all of their respective legal predecessors, successors, assignees, attorneys, agents, partners, employees, heirs, parents, children, spouses, creditors and related organizations hereby irrevocably and unconditionally release, and fully and forever discharge, absolve, and covenant not to sue the clients and class members in the Matters for any claims for attorneys' fees, costs, expenses, damages, or any other compensation or remedies arising out of or related to the Matters whether known or unknown, that were, have been or could have been asserted now, in the past, or in the future. The persons and entities covered by this release include, but are not limited to: (a) Kimberly Birbrower; (b) William (Scott) and Elizabeth Callaway; (c) Authentic Entertainment Properties, LLP, Authentic Entertainment Properties Development, LLP, RCC Company, LLC, Robert Coffman, Robert O'Neil and Steve Graham; (d) Hannes Kuhn; (e) Gary and Louise Weaver; (f) Jeffrey Wall; (g) the Estate of Jonathan A. Spound, Corey Spound, Michael Spound, and Amy Spound; (h) Skylar Ward; (i) Jamie Deehan; (j) Rasheed, Robinson and Jiminez; (k) Shayna Broadstone and Kristine Billon; (l) Benjamin Lagunas, Dianna Mendoza and Susan Jung; and (m) Al Chaffee, Yuping Chen, Jeanne Demund, Laird Devick, Todd Hager, Ash Hanlon, Peter Heathcote, Nathaniel Heathcote, Mike Scheffler, Matthew Wahlman and Michael Wilson, as well as their respective legal predecessors, successors, assignees, attorneys, agents, partners, employees, related organizations, heirs, parents, siblings and children.

6.    **Waiver of Civil Code § 1542**. Each of the Parties has read and understood the following language contained in Section 1542 of the California Civil Code:

A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS
WHICH THE CREDITOR DOES NOT KNOW OR SUSPECT

TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE, WHICH IF KNOWN BY HIM OF HER MUST HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR.

To the extent that Section 1542 is applicable, each of the Parties hereto expressly waives all rights, if any, that they may have under this statute.

7.  **No Admission of Liability**.  This Agreement is made in settlement of claims and allegations which are denied, disputed, and contested.  Neither this Agreement nor anything contained in this Agreement shall be construed as an admission of any fact, issue, liability, or responsibility by any Party hereto to any other Party hereto, all of which are expressly denied.

8.  **Assignment**.  Each of the Parties represents and warrants that he, she, or it has not assigned or transferred to any person not a Party to this Agreement any part or portion of any matter released under this Agreement, and each Party agrees to defend, indemnify, and hold harmless the other Parties against any claim (including the payment of attorneys' fees and costs actually incurred whether or not litigation or other proceedings are commenced) based on or in connection with, or arising out of any such assignment or transfer made, purported, or claimed.  Each of the Parties represents and warrants that he, she, or it will not assign or transfer to any person not a Party to this Agreement any part or portion of any obligations or liabilities created under this Agreement, except that JFL may assign its rights to receive the Settlement Payments to any party, in its sole discretion, and no Party may assign any of its other rights or obligations.  Each Party agrees to defend, indemnify, and hold harmless the other Parties against any claim (including the payment of attorneys' fees and costs actually incurred whether or not litigation or other proceedings are commenced) based on or in connection with, or arising out of any such assignment or transfer made, purported, or claimed in violation of this paragraph.

9.  **Indemnification of Claims Brought by Green Street Advisors, LLC**.  The EA Parties, and each of them, hereby agree they will fully indemnify the JFL Parties and the Estate of Jonathan A. Spound and its Administrators, Corey and Michael Spound, for any and all claims brought by Green Street Advisors, LLC ("Green Street") against them individually or collectively for amounts owed under the Service Engagement Agreement entered into between EA and Green Street in the matter Spound v. SSV Properties et al., dated March 31, 2016, and modified by an Addendum with the same date (the "Green Street Engagement"), including but not limited to providing a defense and paying for all reasonable attorneys' fees, costs and expenses incurred defending against such claims.

10.  **Mutual Non-Defamation**.  Each of the Parties agree that they will not make any defamatory statements about each other to any third party, whether orally or in writing.

11.    **Changes to FSS Website.**  At the request of EA, FSS has made changes to its website with respect to matters that were previously resolved at EA, and those changes will remain in effect as long as such matters are included on the website.

12.    **EA Cooperation on Fee Applications.**  EA will cooperate with FSS to promptly compile and provide FSS with all time sheets, emails and other records documenting the time spent at EA on the disputed Matters so that FSS may submit such time in support of any necessary fee applications or other motion practice.

13.    **EA Agreement to Automatically Forward Emails.**  EA shall arrange to have all emails sent to the EA email addresses for FRANK, SIMS, STOLPER or Maritza Nowowiejski automatically forwarded to FRANK, SIMS, STOLPER and Maritza Nowowiejski at FSS for a period expiring no earlier than December 31, 2018, and thereafter disable the email addresses.

14.    **EA Agreement to Delete FRANK's Personal Folder.**  EA agrees that FRANK will be provided with access to his personal folder on EA's computer system, and upon request, will permanently delete any such items from EA's system.

15.    **Destruction of Documents and Use in Future Legal Proceedings.**  Within sixteen (16) calendar days of entry of the Dismissal Order, and provided no stay of the Settlement Order or Dismissal Order having been issued pursuant to Rule 8007, the Parties and each of their respective attorneys, consultants, experts, agents, and representatives and any other person or entity under the direction or control of any of them, and any other person or entity that they caused information to be disseminated to will destroy the original and all copies of the following materials and documents, whether in hard copy or electronic form:

- All discovery, documents, materials, and electronic files received from any Party that were marked confidential.

The Parties shall also jointly request JAMS and its arbitrators to destroy its entire file relating to the JFL arbitration, with the exception of billing information, within 10 days or other reasonable time period proposed by JAMS and agreed to by the Parties, and carry out all reasonable steps to ensure compliance.

Further, to the extent consistent with their professional, ethical and legal obligations, the Parties further agree they will not use the following documents in any subsequent legal proceeding, litigation or arbitration, unless the litigation is between the Parties:

- All discovery responses provided by any Party during the JFL Arbitration;
- All orders entered by any arbitrator during the JFL Arbitration relating to discovery or sanctions;
- All pleadings relating to any motion for sanctions and/or terminating sanctions submitted in connection with the JFL arbitration, including but not limited to all exhibits filed in connection with any such pleading.

16. **Payment, Dismissal and Release Obligations Are Not Excused by Alleged Breaches of this Agreement.** The payment, dismissal and release obligations set forth in this Agreement and the Guaranty Agreement will not be delayed or excused by any alleged breach or violation of Section 7 through 27 of this Agreement. However, any such breaches may be remedied pursuant to the dispute resolution procedures set forth in Paragraph 21 of this Agreement.

17. **Representations and Warranties.** The Parties hereto represent and warrant that each has read and understood and has received independent legal advice with respect to the advisability of making this Agreement, and/or has had the opportunity to obtain such legal advice and has knowingly entered into this Agreement without taking advantage of the opportunity to obtain such advice. Each Party has made such investigation of the facts pertaining to this Agreement and of all other matters pertaining hereto as they deem necessary. The Parties hereto represent and warrant that each signatory hereto has the full right and authority to enter into this Agreement and bind the Party on whose behalf he, she, or it has executed this Agreement.

18. **Further Assurances.** Each Party hereto agrees to cooperate fully and to execute any and all supplementary documents and to take all additional actions that may be necessary or appropriate to give full force and effect to the basic terms and intent of this Agreement and which are not inconsistent with its terms and intent.

19. **Headings.** The various headings in this Agreement are inserted for convenience only, and shall not be deemed a part of or in any manner affect this Agreement or any provision hereof.

20. **Governing Law**. This Agreement shall be governed and construed in accordance with the substantive laws of the State of California and the United States Bankruptcy Code. Respective counsel for each Party hereto has participated in the drafting of, read, and approved the language of this Agreement. The language of this Agreement shall be construed as a whole according to its fair meaning, and not strictly for or against any of the Parties hereto.

21. **Dispute Resolution Procedure.** Any disputes regarding this Agreement, with the exception of the procedures set forth in Paragraph 3.6 above pertaining to failures to make the Settlement Payments in accordance with the terms of this Agreement, shall be first submitted to the Honorable Louis Meisinger to resolve in mediation, and the cost of the mediation shall be equally borne by the JFL Parties, on the one hand, and the EA Parties, on the other hand. If the Parties are unable to resolve the dispute, then 10 days after the mediation, they will submit the claim to binding arbitration before Benchmark Resolution Group, Inc. (the organization recently formed by Judge Meisinger) in Los Angeles, California to be resolved employing their rules and procedures for arbitration.

22. **Waiver/Severability.** The Parties agree that no waiver by any Party of any particular provision or right under this Agreement shall be deemed to be a waiver of any other

provision or right herein. The Parties further agree that each provision or term of this Agreement is intended to be severable from the others so that if any particular provision or term hereof is or determined to be illegal or invalid for any reason whatsoever, such illegality or invalidity shall not affect the legality or validity of the remaining provisions and terms hereof.

23. **Attorneys' Fees.** The Parties agree that should any relief be brought by any Party to enforce any provision or right under this Agreement, the prevailing party shall be entitled to recover, in addition to any other relief, reasonable attorneys' fees and costs incurred therein.

24. **Entire Agreement.** This Agreement constitutes the sole and entire agreement and understanding between the Parties concerning the subject matter hereof and supersedes all prior agreements and understandings between the Parties on those subjects hereto with the exception of (a) the AEP Fee Sharing Agreement and the Guaranty Agreement and (b) the Separation Agreement entered into between EA and STOLPER dated May 23, 2016 (the "STOLPER Separation Agreement"). If there is an inconsistency between this Agreement and the STOLPER Separation Agreement, this Agreement will control. Each of the Parties hereto acknowledge to each of the other Parties that no other Party or any agent or attorney of any Party has made any promise, representation or warranty whatsoever, express or implied, written or oral, not contained herein concerning the subject matter hereof to induce him, her, or it to execute this Agreement, and each of the Parties hereto acknowledges that he, she, or it has not executed this Agreement in reliance on any promise, representation or warranty not expressly contained herein. No person has any authority to make any representation or promise on behalf of any Party that is not set forth herein. This Agreement may be modified only with a written instrument duly executed by each of the Parties hereto.

25. **Binding Agreement.** This Agreement shall bind and shall inure to the benefit of successors and assigns of each Party. With respect to the individual Parties, this Agreement shall also bind and inure to the benefit of his or her heirs, assigns, executors, legatees, administrators and personal representatives. With respect to the entity Parties, this Agreement shall also bind and inure to the benefit of any parent, affiliate, predecessor-in-interest, successor-in-interest, transferee, endorsee, or assign.

26. **Notice Provision.** Any and all notices required by this Agreement shall be mailed and emailed in writing to the following:

26.1. **To the JFL Parties**. To Jason Frank, Scott Sims, & Andrew Stolper, Frank Sims & Stolper LLP, 19800 McArthur Blvd., Suite 855, Irvine, California 92612, jfrank@lawfss.com; ssims@lawfss.com; astolper@lawfss.com

26.2. **To the EA Parties**. To Michael Avenatti & Michael Eagan, Eagan Avenatti, LLP, 520 Newport Center Drive, Ste. 1400, Newport Beach, CA 92660, mavenatti@eaganavenatti.com.

137774123.8

13

27. **Execution/Counterparts.**  This Agreement may be executed in counterparts, and a facsimile or PDF signature shall have the same force and effect as an original signature penned in ink.  When each of the Parties hereto has signed and delivered at least one such counterpart to all other Parties or their counsel, each counterpart shall be deemed an original, and when taken together with other signed counterparts, shall constitute one fully executed agreement which shall be binding upon and effective as to all Parties.

IN WITNESS WHEREOF, the Parties hereto have caused this Agreement to be executed as of the day and year indicated below.

December 2, 2017                    EAGAN AVENATTI LLP

                                   _____
                                   Michael J. Avenatti
                                   Its Managing Partner

December 2, 2017                    AVENATTI & ASSOCIATES, APC

                                   _____
                                   Michael J. Avenatti
                                   Its President

December 2, 2017                    MICHAEL J. AVENATTI

                                   _____
                                   Michael J. Avenatti
                                   In his individual capacity

December 12, 2017                   MICHAEL Q. EAGAN

                                   _____
                                   Michael Q. Eagan
                                   In his individual capacity

December 12, 2017                   JASON FRANK LAW, PLC

                                   _____
                                   Jason M. Frank
                                   Its President

December 12, 2017

FRANK SIMS & STOLPER, LLP

_____
Jason M. Frank
Partner

December 12, 2017

JASON M. FRANK

_____
Jason M. Frank
In his individual capacity

December 12, 2017

SCOTT H. SIMS

_____
Scott H. Sims
In his individual capacity

December 2, 2017

ANDREW D. STOLPER

_____
Andrew D. Stolper
In his individual capacity

APPROVED AS TO FORM:

January 30, 2018
~~December ___, 2017~~

PACHULSKI STANG ZIEHL & JONES LLP

_____
~~Richard M. Pachulski~~  Robert M. Saunders
Counsel to Eagan Avenatti LLP

137774123.8                          15

December 22, 2017                    PERKINS COIE LLP

_____
                                    Sara L. Chenetz
                                    Counsel to the JFL Parties

December __, 2017                   SULMEYER KUPETZ LLP


_____
                                    Marc Haroupian
                                    Counsel to Michael Avenatti and Avenatti &
                                    Associates APC

137774123.8                         16

December __, 2017        PERKINS COIE LLP


_____
     Sara L. Chenetz
     Counsel to the JFL Parties

December __, 2017        SULMEYER KUPETZ ~~LLP~~ APC


_____
     ~~Marc Haroupian~~
     Counsel to Michael Avenatti and Avenatti &
     Associates APC
     MARK HOROUPIAN

# Exhibit A to Settlement Agreement

| Case Name |
|---|
| 1.  **Birbrower v. Quorn Foods, Inc.**<br><br>• Nationwide class action for false advertising |
| 2.  **Callaway v. Mercedes Benz USA, Inc.**<br><br>• California class action concerning defective seat heaters |
| 3.  **Authentic Entertainment Properties v. Royal Center et al.**<br><br>• Breach of Joint Venture Agreement |
| 4.  **Weaver v. Southern California Edison, et al.**<br><br>• Personal injury action<br>• Plaintiff is Jason Frank's cousin |
| 5.  **Shine v. Williams Sonoma, Inc.**<br><br>• California employment class action challenging on-call shift policy |
| 6.  **Ward v. Tilly's**<br><br>• California employment class action challenging on-call shift policy |
| 7.  **Deehan v. Gap, Inc.**<br><br>• California employment class action challenging on-call shift policy |
| 8.  **Rasheed v. Gap, Inc.**<br><br>• California employment class action challenging on-call shift policy |
| 9.  **Broadstone v. Pacific Sunwear**<br><br>• California employment class action challenging on-call shift policy |
| 10. **Broadstone/Billon v. Bath & Body**<br><br>• California employment class action challenging on-call shift policy |
| 11. **Robinson v. BCBG**<br><br>• California employment class action challenging on-call shift policy |
| 12. **Lagunas v. Ambercrombie**<br><br>• California employment class action challenging on-call shift policy |
| 13. **Jiminez (Dylan)**<br><br>• Unaware of any case by this name |

| **14. RFF v. Spound** |
|---|
| • Hourly breach of contract case representing Defendant<br>• Incorrectly listed on EA's schedule as a plaintiff case |
| **15. Hannes Kuhn** |
| **16. Chaffe v. Keller Rohrback** |
| • Attorney malpractice action |
| **17. Eldard (Wall) v. Hewlett Packard** |
| • California employment class action for waiting time penalties |

# EXHIBIT B

1  Richard M. Pachulski (CA Bar No. 90073)
   Ira D. Kharasch (CA Bar No. 109084)
2  Robert M. Saunders (CA Bar No. 226172)
   PACHULSKI STANG ZIEHL & JONES LLP
3  10100 Santa Monica Blvd., 13th Floor
   Los Angeles, CA  90067
4  Telephone:  310/277-6910
   Facsimile:  310/201-0760
5  Email:    rpachulski@pszjlaw.com
             ikharasch@pszjlaw.com
6            rsaunders@pszjlaw.com

7  Attorneys for Debtor and Debtor in Possession

8                   **UNITED STATES BANKRUPTCY COURT**

9           **CENTRAL DISTRICT OF CALIFORNIA - SANTA ANA DIVISION**

| | |
|---|---|
| In re: | Case No. 8:17-bk-11961-CB |
| | Chapter 11 |
| EAGAN AVENATTI, LLP, | **ORDER GRANTING MOTION FOR ORDER APPROVING SETTLEMENT AND DISMISSING CASE** |
| Debtor. | Hearing: Date:      February 28, 2018 Time:      10:00 a.m. Place:      Courtroom 5D 411 West Fourth Street Santa Ana, CA 92701-4393 |

20      A hearing (the "Hearing") was held on February 28, 2018, at 10:00 a.m. on Debtor's *Motion*

21  *for an Order Approving Settlement and Dismissing Case* filed on January 30, 2018 as Docket # ___

22  (the "Motion").  Appearances were made as noted on the record.  Capitalized terms not defined in

23  this order have the meanings ascribed to such terms in the Motion.

24      The Court having read and considered the Motion, the pleadings filed in support of the

25  Motion, having heard statements of counsel at the Hearing, noting no opposition, and having found

26  that notice of the Hearing and Motion was due and proper, and with good cause shown:

27      **IT IS ORDERED:**

28      1.      The Motion is granted.

1

DOCS_LA:311830.4 20328/001

2.      The case is dismissed.

3.      The Settlement Agreement and Releases (attached to Declaration of Michael Avenatti in support of the Motion as Exhibit A) and compromises contained therein (the "Agreement") are approved.

4.      The Debtor is authorized and directed to take all steps necessary to implement and effectuate the Agreement.

5.      Claim 8-1, filed in this case by Jason Frank Law PLC, is allowed in the amount of $10,000,000.00 ("Compromised Claim Amount") and to the extent it asserts a claim for indemnification, contribution and insurance coverage for any claims brought against Jason Frank Law, PLC related to its rendition of services at Eagan Avenatti LLP, including without limitation indemnification for tax liability.

6.      The Clerk of the Court is directed to enter on the Claims Register in this case that Claim 8-1 is allowed in the amount of $10,000,000.00, and thereafter the Clerk of the Court shall dismiss this case.

7.      If Jason Frank Law, PLC timely and fully receives the Settlement Payments set forth in paragraph 3.2 of the Agreement, the Compromised Claim Amount will be deemed satisfied in full on the date set forth in paragraph 3.5 of the Agreement.

8.      Claim 6-1, filed by Jason M. Frank, is disallowed, except it is allowed to the extent it asserts a claim for indemnification, contribution and insurance coverage for any claims brought against Jason M. Frank related to his employment at, or rendition of services at, Eagan Avenatti LLP, including without limitation indemnification for tax liability.

9.      Claim 7-1, filed by Scott Sims, is disallowed, except it is allowed to the extent it asserts a claim for indemnification, contribution and insurance coverage for any claims brought against Scott Sims related to his employment at, or rendition of services at Eagan Avenatti LLP, including without limitation indemnification for tax liability.

10.     Claim 9-1, filed by Andrew Stolper, is disallowed, except to the extent it asserts a claim for indemnification, contribution and insurance coverage for any claims brought against

2

Andrew Stolper related to his employment at, or rendition of services at Eagan Avenatti LLP, including without limitation indemnification for tax liability.

11.    The Court retains post-dismissal jurisdiction pursuant to LBR 1017-2(f) and as set forth in the Motion.

###

DOCS_LA:311830.4 20328/001

## PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
**10100 Santa Monica Boulevard, 13ᵗʰ Floor, Los Angeles, California 90067**

A true and correct copy of the foregoing document entitled (*specify*):  ***DEBTOR'S NOTICE OF MOTION AND MOTION FOR ORDER APPROVING SETTLEMENT AND DISMISSING CASE; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF MICHAEL J. AVENATTI IN SUPPORT*** will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1.  TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On **January 30, 2018**, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

&boxtimes; Service information continued on attached page

**2.  SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge <u>will be completed</u> no later than 24 hours after the document is filed.

□ Service information continued on attached page

**3.  SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) **January 30, 2018**, I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge <u>will be completed</u> no later than 24 hours after the document is filed.

**VIA OVERNIGHT DELIVERY**
Honorable Catherine E. Bauer
United States Bankruptcy Court
Central District of California
411 West Fourth Street, Suite 5165
Santa Ana, CA 92701-4593

□ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| January 30, 2018 | Myra Kulick | /s/ Myra Kulick |
|---|---|---|
| Date | Printed Name | Signature |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*
DOCS_LA:305992.5 20328/001

**F 9013-3.1.PROOF.SERVICE**

## SERVICE LIST

**Eagan Avenatti, LLP**
**Chapter 11 Case No. 8:17-bk-11961-CB**

### TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF):

- *Mikel R Bistrow      mikel.bistrow@dinsmore.com, caron.burke@dinsmore.com*
- *Peter W Bowie      peter.bowie@dinsmore.com, caron.burke@dinsmore.com*
- *Christopher Celentino      chris.celentino@dinsmore.com, caron.burke@dinsmore.com*
- *Sara Chenetz      schenetz@perkinscoie.com, dlax@perkinscoie.com;cmallahi@perkinscoie.com*
- *David B Golubchik      dbg@lnbyb.com, dbg@ecf.inforuptcy.com*
- *Michael J Hauser      michael.hauser@usdoj.gov*
- *Mark S Horoupian      mhoroupian@sulmeyerlaw.com,*
  *ppenn@sulmeyerlaw.com;mhoroupian@ecf.inforuptcy.com;dperez@sulmeyerlaw.com;ppenn@ecf.inforuptcy.com*
- *Sheri Kanesaka      sheri.kanesaka@fnf.com, Christine.hipp@fnf.com*
- *Isaac Marcushamer*
- *Malhar S Pagay      mpagay@pszjlaw.com, mpagay@pszjlaw.com*
- *R Gibson Pagter      gibson@ppilawyers.com, ecf@ppilawyers.com;pagterrr51779@notify.bestcase.com*
- *Misty A Perry Isaacson      misty@ppilawyers.com, ecf@ppilawyers.com;perryisaacsonmr51779@notify.bestcase.com*
- *Thomas J Polis      tom@polis-law.com, paralegal@polis-law.com;r59042@notify.bestcase.com*
- *Robert M Saunders      rsaunders@pszjlaw.com, rsaunders@pszjlaw.com*
- *Najah J Shariff      najah.shariff@usdoj.gov, USACAC.criminal@usdoj.gov*
- *David H Stein      dstein@wilentz.com*
- *Michael K Symons      mike@symonsmarkwith.com, mike@symonsmarkwith.com*
- *United States Trustee (SA)      ustpregion16.sa.ecf@usdoj.gov*

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*
DOCS_LA:305992.5 20328/001                                          **F 9013-3.1.PROOF.SERVICE**