Sara L. Chenetz, State Bar No. 206936
SChenetz@perkinscoie.com
Amir Gamliel, State Bar No. 268121
AGamliel@perkinscoie.com
PERKINS COIE LLP
1888 Century Park East, Suite 1700
Los Angeles, CA 90067-1721
Telephone: 310.788.9900
Facsimile: 310.788.3399

Attorneys for Jason Frank Law, PLC

UNITED STATES BANKRUPTCY COURT

CENTRAL DISTRICT OF CALIFORNIA

SANTA ANA DIVISION

| | |
|---|---|
| In re<br><br>EAGAN AVENATTI, LLP,<br><br>　　　　　　Debtor. | CASE NO. 8:17-bk-11961-CB<br><br>Chapter 11<br><br>**DECLARATION OF JASON M. FRANK IN SUPPORT OF:**<br><br>**(A) MOTION FOR ENTRY OF ASSIGNMENT ORDER; AND**<br><br>**(B) APPLICATION FOR ORDER SETTING HEARING ON MOTION ON SHORTENED NOTICE**<br><br>[Motion for Order Shortening Time Concurrently Filed Herewith]<br><br>Honorable Catherine E. Bauer |

140230690.1

-1-

# DECLARATION OF JASON M. FRANK

I, Jason M. Frank, declare as follows:

1. I am the owner and president of the judgment creditor, Jason Frank Law, PLC (the "Judgment Creditor"). I am admitted to practice law before all federal and state courts in the State of California, and I am a member in good standing of the State Bar of California. I have personal knowledge of the facts set forth herein, unless stated on information and belief, and if called as a witness, I could and would competently testify thereto. I make this declaration is support of the motions filed by Jason Frank Law, PLC ("JFL") (a) for entry of an assignment order ("Assignment Motion"), and (b) a hearing thereon on shorten time.

2. I have been a member in good standing of the State Bar of California since 1997. I received my J.D. degree from the University of Michigan in 1997, and my B.A. degree from the University of Michigan in 1994. I was formerly a litigation partner at Paul Hastings Janosfky & Walker LLP. From February 2009 through May 20, 2016, I was an attorney at Eagan Avenatti, LLP, either as an employee or through a contract between Eagan Avenatti, LLP and Judgment Creditor. I am currently a partner and founder of Frank Sims & Stolper LLP. I am also the owner and president of creditor JFL.

3. Attached as Exhibit A is a list of lawsuits in which the judgment debtor, Eagan Avenatti LLP (the "Judgment Debtor") will be potentially entitled to receive attorneys' fees and costs. I am informed and believe that the rights to payments on these matters sought to be assigned herein have not been previously assigned.

4. The first 23 cases listed on Exhibit A were disclosed in Judgment Debtor's Amended Schedule of Assets, filed on or about July 11, 2017 (Doc. No. 149, Exh. B-75), a true and correct copy of which is attached as Exhibit B.

5. I identified the remaining federal cases listed on Exhibit A from conducting a search of filings in California and federal courts by Judgment Debtor and Michael Avenatti, the managing partner of Judgment Debtor. A true and correct copy of these search results are attached as Exhibit C.

140230690.1

-2-

6. On May 22, 2018, this Court entered a judgment in favor of Judgment Creditor and against Judgment Debtor in the amount of $10,000,000.00, plus reasonable attorneys' fees and costs incurred in collecting the judgment (the "Judgment"). A true and correct copy of the Judgment is attached as Exhibit D.

7. The Judgment is final and enforcement thereof is not stayed.

8. On June 6, 2018, a writ of execution was issued against Judgment Debtor in the amount of $10,008,465.75, including $8,465.75 in accrued post-judgment interest (the "Writ of Execution"). A true and correct copy of the Writ of Execution is attached as Exhibit E.

9. No payments whatsoever have been received from Judgment Debtor or anyone to be applied to this Judgment. There is now due and owing the amount of $10,000,000.00, plus interest from the date of entry of judgment in the amount of at least $11,287.67. I have not included a liquidated amount of counsel fees and costs incurred to date to enforce the Judgment, as that amount increases nearly daily. But I, on behalf of the Judgment Creditor, expressly reserves the right to seek such amounts in the future as provided for in the Judgment.

10. I personally attended the 341(a) Continued Meeting of Creditors in which Mr. Avenatti testified under oath on behalf of Judgment Debtor. I also arranged to have a court reporter prepare a certified transcript of the proceedings. A true and correct copy of the relevant pages of the transcript of Mr. Avenatti's testimony is attached as Exhibit F. I can personally verify that these pages accurately reflect Mr. Avenatti's testimony, as I was in attendance.

11. Based on my years at the Eagan Avenatti, LLP firm, and my review of Judgment Debtor's bankruptcy schedules and testimony, I am personally aware that Michael Avenatti is the managing partner of Judgment Debtor and owns a controlling 75% interest in the firm through his personal corporation, Avenatti & Associates, APC. Since at least 2012, I have also personally observed and am aware that Mr. Avenatti has ultimate control over Judgment Debtor's financial decisions, including any decision to assign rights to attorneys' fees and costs to third parties. Similarly, I am aware that Judgment Debtor has sublet part of its premises to subtenants and collected rent from them.

-3-

140230690.1

12.     One of the largest assets of Judgment Debtor is its right to attorneys' fees and costs in the Bahamas v. Kimberly-Clark class action, in which Judgment Debtor obtained a judgment of over $20 million on behalf of the class, which is currently on appeal.  Assuming the judgment in that class action is affirmed on appeal, Judgment Debtor stands to be awarded millions of dollars in attorneys' fees and costs for its work on the matter.  However, during the 341(a) Continued Meeting of Creditors, Mr. Avenatti testified he may decide in the future to assign an unspecified portion of the fees from the Bahamas v. Kimberly-Clark class action to himself personally, rather than the firm.  *See* Declaration of Michael J. Avenatti in Support of Debtor's Motion for Order Approving Settlement and Dismiss Case (Doc. No. 343) ("Dismissal Motion"), a true and correct copy of which is attached as Exhibit G, at p. 38 of 67 at 17-19.  Based on Mr. Avenatti's sworn statements, I am concerned that Mr. Avenatti will seek to divert this money to himself or another entity or third party under his control to avoid the Judgment in favor of my company.

13.     During the 341(a) Continued Meeting of Creditors held on July 14, 2017, Mr. Avenatti testified that at some unspecified time after I left the firm, he purportedly caused Judgment Debtor to assign the right to $17 million to the X-Law Group, a law firm controlled by Mr. Avenatti's friend, Fillipo Marchino.  Mr. Avenatti testified the agreement was in writing, but failed to provide a copy of the agreement to Michael Hauser at the U.S. Trustee's office after he was requested to do so.  [Id.]  Mr. Avenatti listed the X-Law Group as a "secured creditor" for this $17 million amount on the Judgment Debtor's initial bankruptcy schedules, which were filed on or about April 6, 2017.  A true and correct copy the initially filed Judgment Debtor's Official Form 206D, Schedule D, ¶ 2.1, filed on or about April 6, 2017 (Doc. No. 48) is attached as Exhibit H.

14.     During the 341(a) Continued Meeting of Creditors, Mr. Avenatti testified that Judgment Debtor was paying the X-Law Group's rent and salaries pursuant to an "oral agreement" reached between Mr. Avenatti and Mr. Marchino.  [Exh. F at 68:9-69:21; 70:2-73:18.]  Mr. Avenatti never explained what Judgment Debtor received in return from the X-Law Group that possibly could have been worth assigning the right to $17 million in fees from the Judgment Debtor and paying the X-Law Group's rent and salaries.  A true and correct copy of the X-Law proof of claim, filed

1  on May 25, 2017, is attached as Exhibit I.  The most recent Monthly Operating Report ("MOR")
2  filed by the Judgment Debtor while it was a debtor-in-possession reflects that it made such
3  payments.  A true and correct copy of this MOR is attached as Exhibit J.  For example, the MOR
4  shows the Debtor making payments to Thomas Cassaro who was then and seeming remains an
5  employee of X-Law Group and Damian Rogers was then and seemingly remains a partner at X-
6  Law Group.  *See* www.thexlawgroup.com and Exh. J at 5 and 11.

7  15.    When Judgment Debtor later sought to dismiss the bankruptcy case and agreed to pay off
8  the claims of approved creditors (backed with the security of consent judgments), Judgment
9  Debtor specifically excluded the X-Law Group's claim.  *See* Debtor's Motion for Order
10 Approving Settlement and Dismiss Case (Doc. No. 343) at p. 5 n. 5, a true and correct copy of
11 which is attached as Exhibit J.

12 16.    As the above examples demonstrate, there is a need to restrain the Judgment Debtor from
13 encumbering, assigning, disposing of or spending any fees and costs it may receive in the future
14 from the cases listed in Exhibit A, because Judgment Debtor may dispose of the property or spend
15 the payment(s) received.

**Information Justifying Setting Hearing on Shortened Notice**

**pursuant to L.B.R. 9075-1(b)(2)(B)**

18 17.    Pending a hearing on the Assignment Motion, Judgment Debtor could encumber, assign,
19 dispose or divert any or all of its rights to receive payments on the Receivables (as defined in the
20 Assignment Motion).  Judgment Debtor already seems to have deemed Receivables for work
21 done on the *Kimberly-Clark* action to belong to Mr. Avenatti and seems to have agreed to pay its
22 ally, X-Law Group, $17 million.  Clearly, Judgment Debtor has chosen to ignore its obligations to
23 Judgment Creditor, even though the settlement agreement between Judgment Creditor and
24 Judgment Debtor was a cornerstone of the structured dismissal approved in this case.  *See*
25 Dismissal Motion, Exh. G at 9 of 67 at 13-20.  As set forth in prior pleadings in this case,
26 Judgment Debtor consented to entry of an order for relief to avoid going to trial in its arbitration
27 against JFL, after the three retired judge arbitration panel granted multiple sanctions against
28

-5-

140230690.1

1  Judgment Debtor for, among other things, failing to produce tax returns and other financial data

2  and otherwise failing to comply with discovery orders.  *See generally* Dismissal Motion, Exh. G.

3  18.    If a hearing on the Assignment Motion is scheduled on at least 21 days' notice and at the

4  day and time the Court most often holds hearings in chapter 11 cases, this hearing will not be held

5  until Wednesday July 11, 2018.  (July 4, 2018 is a court holiday.)  Given past and pending events

6  and circumstances, waiting a month for a hearing on the Assignment Motion puts Judgment

7  Creditor at meaningful risk that Judgment Debtor could and would assign its rights to Receivables

8  to other parties, in whole or part.

9      I declare under penalty of perjury under the laws of the United States of America that the

10  foregoing this true and correct.  Executed this 11th day of June 2018, in California.

                                                /s/ Jason M. Frank
                                                JASON M. FRANK

140230690.1