**RAINES FELDMAN LLP**
Miles J. Feldman (State Bar No. 173383)
Robert M. Shore (State Bar No. 166018)
Hamid R. Rafatjoo (State Bar No. 181564)
1800 Avenue of the Stars, 12th Floor
Los Angeles, CA  90067
Telephone: 310.440.4100
Facsimile:  310.691.1367
E-mail:    mfeldman@raineslaw.com
           rshore@raineslaw.com
           hrafatjoo@raineslaw.com

Attorneys for Former Debtor
Eagan Avenatti, LLP

# UNITED STATES BANKRUPTCY COURT
## CENTRAL DISTRICT OF CALIFORNIA, SANTA ANA DIVISION

| | |
|---|---|
| In re:<br><br>EAGAN AVENATTI, LLP,<br><br>    Debtor. | Case No. 8:17-bk-11961-CB<br><br>Chapter 11<br><br>**OPPOSITION TO JASON FRANK LAW, PLC'S AMENDED MOTION FOR ENTRY OF ASSIGNMENT AND RESTRAINING ORDER**<br><br>Date:    July 11, 2018<br>Time:   10:00 a.m.<br>Place:   Courtroom 5D<br>         411 West Fourth Street<br>         Santa Ana, CA 92701-4593<br><br>Judge: The Hon. Catherine E. Bauer |

**TABLE OF CONTENTS**

I. INTRODUCTION AND SUMMARY OF ARGUMENT ................................................. 1

II. FACTS ........................................................................................................................... 2

III. ARGUMENT ................................................................................................................. 4

    A. The Court Should Not Assign Legal Fees from Ongoing Cases. ........................... 4

        1. Fees Are Not Assignable Without the Client's Consent. ............................ 4

    B. An Assignment Order Is Not Available for Future Legal Work. ........................... 4

    C. It Is Inefficient to Order the Assignment of Fees for Past Legal Work, and Unfair to Order that Assignment Without Accounting for Expenses. .............................................................................................................. 6

    D. An Assignment Order for Future Fees Is Inappropriate Because It Risks Destroying the Value of the Assigned Assets. ............................................. 7

    E. The Debtor Has No Interest in Most of the Cases at Issue Here. ........................... 8

IV. The Requested Restraining Order Is Beyond the Court's Jurisdiction. ............................ 9

    A. No Restraining Order May Extend Beyond the Debtor. ........................................ 9

    B. The Facts Do Not Justify a Restraining Order Against Third Parties. ................. 10

V. CONCLUSION ............................................................................................................ 12

# TABLE OF AUTHORITIES

**Cases**

*Cetenko v. United Cal. Bank*,
    30 Cal. 3d 528 (1982) ............................................................................................... 7

*Chambers v. Kay*,
    29 Cal. 4th 142 (2002) ............................................................................................... 4

*Fracasse v. Brent*,
    6 Cal. 3d 784 (1972) ................................................................................................. 6

*General Dynamics Corp. v. Superior Court*,
    7 Cal. 4th 1164 (1994) ............................................................................................... 5

*Greenbaum v. Islamic Republic of Iran*,
    782 F. Supp. 2d 893 (C.D. Cal. 2008) ...................................................................... 4

*Heller Ehrman LLP v. Davis, Wright, Tremaine, LLP*,
    527 B.R. 24 (N.D. Cal. 2014) ................................................................................... 5

*In re Thelen LLP*,
    20 N.E.3d 264 (N.Y. 2014) ....................................................................................... 5

*Landstar Global Logistics, Inc. v. Robinson & Robinson, Inc.*,
    216 Cal. App. 4th 378 (2013) ................................................................................. 10

*Lopez v. Musinorte Entertainment Corp.*,
    Case No. CV 11-01442 AHM (AJWx), 2011 WL 2471927, at *3 (C.D. Cal.
    June 21, 2011) ......................................................................................................... 10

*Margolin v. Shemaria*,
    85 Cal. App. 4th 891 (2000) ..................................................................................... 4

*Martin v. Holiday Inns, Inc.*,
    199 Cal. App. 3d 1434 (1988) .................................................................................. 5

*Olson v. Cohen*,
    106 Cal. App. 4th 1209 (2003) ............................................................................... 12

*Pangborn Plumbing Corp. v. Carruthers & Skiffington*,
    97 Cal. App. 4th 1039 (2002) ................................................................................... 8

*Steven M. Garber & Assocs. v. Eskandarian*,
    150 Cal. App. 4th 813 (2007) ................................................................................. 12

**Other Authorities**

CAL. BUS. & PROF. CODE § 16600 ...................................................................................... 8

CAL. CIV. CODE § 700 ......................................................................................................... 5

CAL. CIV. PROC. CODE § 708.510 ....................................................................................... 6

1  CAL. CIV. PROC. CODE § 708.520.................................................................................................. 2
2  CAL. CIV. PROC. CODE § 708.520(a) ........................................................................................ 10
3  CAL. CORP. CODE § 16306(c) .................................................................................................... 12
4  CAL. R. PROF. COND. 1-500(A) ................................................................................................... 8
5  CAL. R. PROF. COND. 2-200(A) ............................................................................................... 1, 4

Eagan Avenatti, LLP, the former chapter 11 debtor in the above-captioned case (the "Debtor"), hereby submits this Objection to the Motion for Entry of Assignment and Restraining Order (the "Motion") [Dkt. No. 470] filed by Jason Frank Law, PLC ("JFL").

In support of this Objection, the Debtor respectfully represents as follows:

**I.    INTRODUCTION AND SUMMARY OF ARGUMENT**

The differences between ordinary accounts receivable and contingency-fee cases for attorneys' fees make the relief JFL is seeking both unavailable and inappropriate. JFL's request for an assignment order has two fundamental problems. First, under California law, attorneys' fees *are not assignable* without the client's consent. CAL. R. PROF. COND. 2-200(A). Thus, an order assigning attorneys' fees is contrary to California law. Second, as to future fees, there is nothing to assign because the Debtor has no property interest in its future fees. Indeed, the Debtor has not yet earned the vast majority of its contingency fees and it *does not have control over whether it will ever earn them*. That control belongs to the Debtor's clients in the first instance, and to the individual attorneys whom those clients have engaged in the second instance — attorneys who are free to leave the Debtor at any time and for any reason, and to take their cases with them with the clients' consent.

Thus, under the law, there is nothing to prevent clients from engaging new law firms to represent them — law firms that would not be faced with the prospect of doing extensive additional work for little or no recompense. Moreover, there is nothing to stop the individual attorneys from moving to another firm where they can receive the full economic value of their future work. The order sought by JFL, seeks to strip both clients and individual attorneys of these bedrock rights under California law. Finally, granting an assignment order would interfere with the Debtor's ability to pay its priority creditors before JFL, which is an unsecured creditor.

Accordingly, JFL should make its request *after* a fee award is ripe. At that time, JFL can present to the supervising court of any class action any concerns it may have regarding the allocation of fees to Debtor, and any remaining priority creditors can present their claims as well. Finally, even if any assignment order were appropriate, it must be limited to the 23 "Exhibit B"

1

cases in which the Debtor has actually provided legal services. The Debtor has no right to a fee award from other cases where it does not represent anyone in those cases.

The Court should deny the requested restraining order for several other reasons. First, JFL has provided no admissible evidence of existing or threatened actions which would warrant the issuance of a restraining order. In fact, one day after EA missed its initial $2 million payment to JFL, JFL sued Mr. Avenatti on his $4.8 million guaranty of the payment to JFL. As a result, contrary to JFL's unsupported assertions, Mr. Avenatti has every incentive to maximize the Debtor's recovery from the various cases so that his personal liability is decreased. Second, the Court should refrain from issuing any restraining order that might limit the Debtor's ability to use its receipts to pay its ordinary expenses as they come due or to pay its priority creditors ahead of JFL. The value (to the Debtor) of the Debtor's remaining unresolved cases depends on the Debtor's ability to hold its clients and their individual attorneys, so any order that gives the Debtor's clients or attorneys an incentive to leave is economically irrational.

If a restraining order is issued at all, controlling law requires it to be limited to the Debtor itself. JFL's request for a broader order that would apply to its employees, attorneys, and other professionals, among others, is unauthorized by the controlling statutes and case law, and therefore is beyond the Court's power. California law requires enforcement statutes in general, and Section 708.520 in particular, to be "strictly construed." That section authorizes a restraining order only against the Debtor itself, so that is the limit of the Court's authority. Moreover, even if the Court could ever issue a restraining order against any person or entity other than the Debtor itself, JFL's factual showing still would not justify that relief here.

## II.    FACTS

JFL holds a judgment in the principal amount of $10 million against the Debtor. No other persons or entities are named in the Judgment. The Debtor is a law firm. It has two equity partners, Michael Avenatti and Michael Eagan. *Avenatti Decl.*, ¶ 3. Avenatti holds his interest through his professional corporation, Avenatti & Associates, APC. *Avenatti Decl.*, ¶ 3. Jason Frank was never an equity partner of the Debtor. *Avenatti Decl.*, ¶ 3. He therefore never had any

access to information regarding the financial arrangements the Debtor made with other law firms, including Avenatti's other firm, Avenatti & Associates, APC. *Avenatti Decl.*, ¶ 3. Avenatti & Associates, APC, and the Debtor are two separate entities and two separate law firms, each with its own client base (though some clients are shared). *Avenatti Decl.*, ¶ 3. Indeed, Avenatti & Associates, APC, has been in existence since 2006 well before the Debtor was formed. *Avenatti Decl.*, ¶ 3.

The cases listed on the Debtor's amended schedule of assets and liabilities (*Frank Decl.*, Exh. B) were the only cases in which the Debtor had a fee interest at the time of filing. *Avenatti Decl.*, ¶ 4. Since that time, the Debtor has filed additional cases in which it now has a fee interest. *Avenatti Decl.*, ¶ 4. The Debtor has no fee interest in many of the cases set forth on Exhibit C of the Frank Declaration. *Avenatti Decl.*, ¶ 5.

The Debtor has a written agreement with the X-Law Group. *Avenatti Decl.*, ¶ 6. Pursuant to the terms of that agreement, the X-Law Group referred several cases to the Debtor, on the understanding that the Debtor would provide legal services in those cases. *Avenatti Decl.*, ¶ 6. In exchange, the Debtor agreed to pay the X-Law Group a defined fraction of the legal fees earned from the referred cases. *Avenatti Decl.*, ¶ 6. Because these cases are contingency cases, at the time of the bankruptcy it was not possible to know the amount of fees these cases would earn so it was necessary to estimate the size of this potential obligation. *Avenatti Decl.*, ¶ 6. The Debtor's best estimate of that size at the time of filing was $17 million. *Avenatti Decl.*, ¶ 6. The Debtor anticipates making these payments, as they come do, from attorneys' fees realized from the referred cases. *Avenatti Decl.*, ¶ 6.

With respect to the *Kimberly Clark* matter, because a fee award (if any) is at least a year away, the Debtor and Avenatti & Associates, APC, have not yet ascertained the appropriate division of fees between the two firms. *Avenatti Decl.*, ¶ 7. When the time comes to negotiate a division of fees, Debtor anticipates that Michael Eagan will negotiate on its behalf to avoid any potential concern that Michael Avenatti is engaging in self-dealing. *Avenatti Decl.*, ¶ 7.

On some of its matters, Avenatti & Associates, APC, uses the time of associates employed by the Debtor. *Avenatti Decl.*, ¶ 8. When this occurs, Avenatti & Associates, APC, compensates the Debtor for the use of this time. *Avenatti Decl.*, ¶ 8. The compensation is negotiated on a case-by-case basis. *Avenatti Decl.*, ¶ 8.

**III. ARGUMENT**

### A. The Court Should Not Assign Legal Fees from Ongoing Cases.

#### 1. Fees Are Not Assignable Without the Client's Consent.

It is black letter California law that an attorney may not agree to assign or divide its fees without the client's written consent. CAL. R. PROF. COND. 2-200(A). The written consent requirement, among other purposes, informs the client of his or her right to reject a proposed fee-sharing arrangement. *Margolin v. Shemaria*, 85 Cal. App. 4th 891, 903 (2000). An attempt to divide fees without that consent is entirely unenforceable by law. *Chambers v. Kay*, 29 Cal. 4th 142, 156 (2002) (rejecting recovery on the contract); *id.* at 162 (rejecting recovery in *quantum meruit*). Because the requested assignment order seeks an assignment that is precluded by controlling California law, the Court must reject JFL's motion in its entirety. JFL has not cited a single case that would propose otherwise.[1]

### B. An Assignment Order Is Not Available for Future Legal Work.

The tacit premise of JFL's motion is that future legal fees to be earned from contingency work already belong to the Debtor, or at least are within the Debtor's control. That premise is false. "A law firm never owns its client matters. The client always owns the matter, and the most the law firm can be said to have is an expectation of future business." *Heller Ehrman LLP v. Davis, Wright, Tremaine, LLP*, 527 B.R. 24, 30 (N.D. Cal. 2014). "[T]he unilateral right of the client to sever the professional relationship [with an attorney] at any time and for any reason" remains "bedrock law." *General Dynamics Corp. v. Superior Court*, 7 Cal. 4th 1164, 1174

---

[1] JFL's citation to *Greenbaum v. Islamic Republic of Iran*, 782 F. Supp. 2d 893 (C.D. Cal. 2008) is at best misleading. That case does not relate to contingency fee arrangements between a firm and a client. That case relates to Iran's contingent rights to receive payments from oil companies. *Id.* at 896-97.

(1994). And an expectation of future business is not property at all. CAL. CIV. CODE § 700; *see also In re Thelen LLP*, 20 N.E.3d 264, 270-71 (N.Y. 2014).

Because an expectation of future business is not property, it is not subject to assignment. California, like most states, applies the doctrine of *ejusdem generis* to statutory construction. "[W]here specific words follow general words . . . application of the general term is restricted to those things that are similar to those which are enumerated specifically." *Martin v. Holiday Inns, Inc.*, 199 Cal. App. 3d 1434, 1437 (1988). Here, California permits an assignment order applied to "a right to payment due or to become due" (the general term), including wages, rents, commission, royalties, payments due from a patent or copyright, and an insurance company loan value (the specific terms). CAL. CIV. PROC. CODE § 708.510(a). Each of the specific terms here is a payment due from a type of contract. Thus, the general term (which defines the permitted scope of an assignment order) must be limited to payments due from a type of contract. As discussed above, the hope of legal fees arising from future work is nothing more than an expectation of future business, and is not property at all. It is therefore not subject to assignment.

JFL may argue, contrary to this analysis, that the right to payments is subject to an assignment order because it is merely "conditioned on future developments"; specifically, recovery via judgment or settlement. The difference between past work and future work illustrates the error in this argument. If a client discharges an attorney who had been working on a contingency-fee basis, California, like many other jurisdictions, allows the discharged firm to recover the reasonable value of its services up to that point. *Fracasse v. Brent*, 6 Cal. 3d 784, 791 & n.3 (1972). That fee has already been earned, but it is contingent on the client's recovery. *Id.* at 792. Because they have already been earned, fees for past services are similar to contract fees, even though the right to recover is "conditioned on future developments"; namely, the client's recovery. Thus, while an assignment order may issue with respect to a firm's right to fees for past work, an order to assign the expectation of fees for future work is not authorized by Section 708.510.

-5-

**C.     It Is Inefficient to Order the Assignment of Fees for Past Legal Work, and Unfair to Order that Assignment Without Accounting for Expenses.**

Although the Court has authority to order the assignment of fees for past work, it should exercise its discretion not to do so because JFL has more efficient and effective remedies available to it. An assignment order that divides fees for past work from fees for future work would be extremely difficult to administer as a practical matter. It would force the parties to litigate the amount of fees due to the Debtor based on pre-assignment work in order to ascertain the value of the assignment. And it would interfere with the rights of priority creditors to be paid ahead of JFL.

JFL can avoid these problems by simply awaiting the Debtor's application for fee awards in its class action cases and then asserting its claim (if the Judgment has not already been satisfied by that time). JFL will receive any payment just as soon as it would if an assignment order were granted, because an assignment order does not accelerate any payment due from a third-party obligor. When the Debtor submits a fee application, the Debtor's right to fees will have matured into a full-fledged contractual right to payment, which can then be assigned. If JFL believes that the Debtor is shortchanging itself to avoid payment of the judgment, JFL can intervene to prove its contention. The judge supervising a class action is in the best position to assess the value of the Debtor's work in that case, so that judge can ensure that the Debtor receives the fees to which it is entitled.

Even if the Court is inclined to order an assignment of fees for past work, that order should expressly provide that the Debtor is entitled to be reimbursed for its out-of-pocket expenses prior to any assignment taking effect. Those expenses are reasonably necessary to generate the asset (the judgment or settlement resulting in the attorneys' fees) in the first place, so it would be unfair to intercept the legal fees without ensuring that the Debtor is reimbursed for them. If the Debtor is not reimbursed for its out-of-pocket expenses, it would find itself in a worse financial position, even after a victory, than if it had never accepted the representation at all. *Cf. Cetenko v. United Cal. Bank*, 30 Cal. 3d 528, 535-36 (1982) (public policy supports a rule ensuring that expenses incurred to create a fund used to satisfy creditors are be reimbursed from that fund, because

-6-

otherwise the fund might never come into existence). Similarly, an assignment order would interfere with the rights of priority creditors to be paid ahead of JFL's claim, so any such order must be made subject to the rights of priority creditors to be paid first. And some of those fees are a result of referrals from other law firms. *Avenatti Decl.*, ¶ 10. It would be grossly unfair to the other firms to lose their right to payment for cases it referred to the Debtor.

### D. An Assignment Order for Future Fees Is Inappropriate Because It Risks Destroying the Value of the Assigned Assets.

JFL's prior conduct brings its good faith into question. JFL should be seeking to maximize the value of the Debtor's assets to ensure its ability to collect its judgment. Instead, JFL's past actions cannot be explained by a desire to collect its judgment. Instead, JFL is attempting to use its judgment as a weapon to destroy the Debtor, whether to apply undue economic pressure to the Debtor by interfering with its ongoing business, or in the hope that JFL can acquire cases that it could not win in fair competition with the Debtor, or merely from a sense of pure vindictiveness. None of these motives are appropriate bases for the relief JFL seeks.

JFL's vain attempt to interfere with the *Kimberly Clark* matter illustrates its bad faith. JFL contends that the *Kimberly Clark* matter alone will generate enough fees to satisfy its judgment. However, shortly before trial, JFL undertook a remarkable effort to destroy the economic value of the matter to the Debtor. Rather than cooperate (or at least avoid interfering with) the Debtor's efforts to maximize the value of potential future fee awards, JFL instead elected to cooperate with Defendants' efforts to decertify the class on the ground that the Debtor could no longer serve as adequate class counsel. Although this effort failed (in part because the Debtor is not and never has been class counsel), the very effort belies any claim that JFL's motive is to collect its judgment, as opposed to inflicting harm on the Debtor.

It is economically irrational for JFL to seek an assignment order from Debtor now, instead of waiting for the fees to be earned, because the likely result of the request is that the Debtor will not earn the bulk of those future fees. California public policy supports rules that ensure that attorneys are in fact compensated for the efforts necessary to create a settlement fund because without such rules, the settlement fund likely would never come into existence. *Pangborn*

*Plumbing Corp. v. Carruthers & Skiffington*, 97 Cal. App. 4th 1039, 1054 (2002) ("[P]ublic policy requires that attorneys . . . be assured that they will be repaid for their labor, so as to encourage them to provide labor to persons not then able to pay for it."). Both clients and individual attorneys are free to leave the Debtor at will, as we now explain. CAL. BUS. & PROF. CODE § 16600 (illegality of non-compete agreements); CAL. R. PROF. COND. 1-500(A) (forbidding agreements limiting the right of an attorney to practice law). The bedrock principle of California law makes it essential to honor California public policy.

If, contrary to California public policy (and contrary to the limits on this Court's power discussed above), the Court orders the Debtor to assign its future fees, the economic consequences are clear. The Debtor would have no further economic incentive to pay any future expenses for a case that will merely result in fees paid to JFL. Any economically rational client, knowing that, would have a strong incentive to find that case another "home." The individual attorneys who control the representation by virtue of their relationship with the client would likewise have a strong economic incentive to find another home in order to maintain the client relationship. In short, an order to assign future fees would give both the clients and their individual lawyers a strong incentive to move any future fees from the affected cases to a different law firm. Clients are always free to terminate their attorney-client relationship at will, and attorneys are always free to take their practice to another firm. This is a black letter law in California.

### E.     The Debtor Has No Interest in Most of the Cases at Issue Here.

JFL is seeking an assignment order that would affect scores of cases in which the Debtor has no interest. Exhibit B to the Frank Declaration identifies the cases in which the Debtor has an expectation of future fees. The remainder of JFL's showing fails to satisfy even a relaxed evidentiary hurdle. Other than Exhibit B, JFL relies entirely on what it describes as "a search of filings in California and federal courts by Judgment Debtor and Michael Avenatti." *Frank Decl.*, ¶ 5. JFL does not describe the contents of the database. JFL does not describe the scope of the search. JFL provides no reason to believe that the search is limited to cases in which one or more plaintiffs is in fact represented by the Debtor.

JFL could easily have solved this problem. Lawsuit filings are obviously public records. If the Debtor were actually representing the plaintiffs in these cases, all JFL had to do is present a copy of a pleading saying so. It did not present such a pleading.

Indeed, JFL frankly concedes that in at least some matters that are the subject of its motion, the Debtor is *not* counsel of record. Instead, the plaintiffs in these matters are represented by Avenatti & Associates, APC, a separate law firm that is registered with the California Secretary of State and has been for over a decade. Ignoring this fact, JFL asks the Court to issue an assignment order affecting cases being handled by Avenatti & Associates, APC, just as though they were instead being handled by the Debtor. The Court cannot issue such an order because, among other reasons, Avenatti & Associates, APC has not received formal notice of JFL's request or an opportunity to be heard in this matter.

**IV. The Requested Restraining Order Is Beyond the Court's Jurisdiction.**

    **A.   <u>No Restraining Order May Extend Beyond the Debtor.</u>**

"Statutory provisions governing [restraining orders] are subject to strict construction . . . ." *Landstar Global Logistics, Inc. v. Robinson & Robinson, Inc.*, 216 Cal. App. 4th 378, 390 (2013). The governing statute authorizes "an order restraining ***the judgment debtor*** from assigning or otherwise disposing of the right to payment that is sought to be assigned." CAL. CIV. PROC. CODE § 708.520(a) (emphasis added). JFL, however, has requested an order that is not limited to the Debtor, but reaches beyond the Debtor to "any servant, agent, employee, representative, attorney or other professionals for the Judgment Debtor and any person(s) in active concert or participation with any of them."

Because the breadth of JFL's request is not authorized by the governing statute, it must be denied. With one exception, none of the cases cited in JFL's moving papers issue an order affecting any party beyond the judgment debtor itself. That case, however, *Lopez v. Musinorte Entertainment Corp.*, Case No. CV 11-01442 AHM (AJWx), 2011 WL 2471927, at \*3 (C.D. Cal. June 21, 2011), does not assist JFL's argument. Although the Court did express its intent to issue a restraining order against both the judgment debtors "and their associates," it did so with no

analysis whatsoever of the statutory language limiting the court's authority to the judgment debtor itself. *Lopez* is therefore not persuasive authority for the Court's ability to issue an order that is not authorized by California law. In JFL's remaining cases, the restraining order was issued only against the judgment debtor itself.

### B. The Facts Do Not Justify a Restraining Order Against Third Parties.

Even if the Court were authorized to issue a restraining order against anyone other than the Debtor itself (but it is not), JFL has failed to prove any right to that relief here. The order JFL is requesting would have the effect of preventing any of the Debtor's attorneys from bringing their cases to another firm, ***even if that is what their clients wanted***. Indeed, because the order as framed by JFL extends to clients (as people acting in active concert with the Debtor's attorneys), it would terminate the client's absolute right under California law to freely change attorneys. This grave interference with the attorney-client relationship, and with the free mobility of attorneys, is simply beyond the pale.

Relying largely on innuendo, JFL advances three separate factual contentions to justify this unauthorized order. None of them withstand scrutiny. First, JFL argues that Michael Avenatti, in his role as the Debtor's managing partner, might choose to divert fees earned in the *Kimberly Clark* litigation from the Debtor to his own firm. But that was not Avenatti's testimony. Avenatti only said that at the time of the examination, he had not yet given thought to the appropriate division of fees between the Debtor, on the one hand, and Avenatti & Associates, on the other hand. The case remains on appeal, and a fee award (if any is awarded) is at least a year away, so there is no reason for anyone to determine the appropriate division of fees at this time. *Avenatti Decl.*, ¶ 15. Indeed, the matter may result in no fees at all. Moreover, the ultimate fee award, should the judgment survive appeal, will be a matter for the supervising court. To ensure that the Debtor's interests are protected by an independent voice with no financial interest in Avenatti & Associates, APC, Avenatti will, if necessary, negotiate with his equity partner Michael Eagan, not with himself, regarding the division of fees between the two firms. *Avenatti Decl.*, ¶ 15.

Second, JFL insinuates that money owed to the X-Law Group is actually an attempt to divert money from the Debtor. The sole factual basis for this outrageous accusation is that JFL elected to settle with the Debtor before it received the Debtor's written agreement with the X-Law Group — JFL suggests that the Debtor's failure to produce this document prior to settlement is somehow probative of bad intent. The X-Law Group referred a number of cases to the Debtor and requested the Debtor's assistance in handling them. *Avenatti Decl.*, ¶ 16. In exchange for those referrals, the Debtor agreed to pay the X-Law Group a defined fraction of the legal fees arising from the referred work. *Avenatti Decl.*, ¶ 16. The Debtor anticipates that the source of the payments due to the X-Law Group will be the cases referred by the X-Law Group. *Avenatti Decl.*, ¶ 16.

Third, without actually saying so, JFL appears to be arguing that Avenatti & Associates, APC, is actually an alter ego of the Debtor, and therefore should be subject to the Judgment. A motion for an assignment order and a restraining order is not the proper manner in which to present that position. If JFL truly believes that the Debtor and Avenatti & Associates, APC, are one and the same, it should move to amend the judgment to name Avenatti & Associates, APC, as a judgment debtor. Until and unless JFL brings that motion and obtains that relief, it has no right to enforce the Judgment against Avenatti & Associates, APC, which is a separate legal entity.

But JFL will not bring that motion because Avenatti & Associates, APC, is not the Debtor's alter ego. In this motion, it claims that the failure of Avenatti & Associates, APC, to register as a law corporation with the State Bar means that it is not a separate law firm. As a matter of California law, JFL is wrong. At most, the failure to register might cause the loss of liability protections and tax advantages flowing from corporate status. *Cf.* CAL. CORP. CODE § 16306(c) (only the partners of a "registered limited liability partnership" enjoys limited liability).

The California courts have squarely held, "Incorporation is not undertaken for the protection of clients." *Olson v. Cohen*, 106 Cal. App. 4th 1209, 1215 (2003). Accordingly, a law corporation that fails to register as required is nonetheless still entitled to collect its earned fees.

*Id.* at 1216 (rejecting rescission claim notwithstanding a failure to register); *Steven M. Garber & Assocs. v. Eskandarian*, 150 Cal. App. 4th 813, 820 (2007) (a law firm's failure to register as a professional corporation does not amount to the unauthorized practice of law and has no impact on attorney fees).

Finally, JFL argues that Avenatti & Associates, APC, is a sham because from time to time it used the services of an associate, Ahmed Ibrahim, who works for the Debtor. According to JFL, this use of Mr. Ibrahim was somehow improper because "I have never known Mr. Ibrahim to be employed by Avenatti & Associates, APC, nor do I believe he is now." *Frank Decl.*, ¶ 26. What Frank does not know, because he was never an equity partner of the Debtor, is that Avenatti & Associates, APC, compensates the Debtor when it uses the time of the Debtor's associates. *Avenatti Decl.*, ¶ 18.

The simple fact is that Michael Avenatti has ownership interests in two separate law firms. One is the Debtor. The other is not. He maintains his office at the Debtor's Newport Beach office. JFL's motion is either an attempt to impose alter ego liability without even attempting to obtain an alter ego judgment (which would require notice and an opportunity to be heard), or it is an attempt to impose liability on a partner of a limited liability partnership for the entity's debts, contrary to law. CAL. CORP. CODE § 16306(c) (a partner of a limited liability partnership is ordinarily not liable for the partnership's debts). Even if the Court had jurisdiction to issue a restraining order against anyone other than the Debtor, the factual showing here does not justify that relief.

**V.    CONCLUSION**

For all of the foregoing reasons, the Debtor respectfully requests that the Court deny the requested assignment order and deny the requested restraining order.

Dated: July 2, 2018                              RAINES FELDMAN LLP

                                                 By:      /s/ Hamid R. Rafatjoo
                                                       Hamid R. Rafatjoo
                                                       Attorneys for Former Debtor
                                                       Eagan Avenatti LLP

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:
1800 Avenue of the Stars, 12th Floor, Los Angeles, CA 90067

A true and correct copy of the foregoing document entitled (*specify*):
**OPPOSITION TO JASON FRANK LAW, PLC'S AMENDED MOTION FOR ENTRY OF ASSIGNMENT AND RESTRAINING ORDER**
will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner stated below:

**1**. <u>**TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING (NEF)**</u>:  Pursuant to controlling General Orders and LBR, the foregoing document will be served by the court via NEF and hyperlink to the document. On (*date*) July 2, 2018 I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following persons are on the Electronic Mail Notice List to receive NEF transmission at the email addresses stated below:

- Michael Avenatti    mavenatti@eaganavenatti.com, jregnier@eaganavenatti.com
- Mikel R Bistrow    mikel.bistrow@dinsmore.com, caron.burke@dinsmore.com
- Peter W Bowie    peter.bowie@dinsmore.com, caron.burke@dinsmore.com
- Christopher Celentino    chris.celentino@dinsmore.com, caron.burke@dinsmore.com
- Sara Chenetz    schenetz@perkinscoie.com, dlax@perkinscoie.com;cmallahi@perkinscoie.com;mduncan@perkinscoie.com
- Fahim Farivar    ffarivar@foley.com, amcdow@foley.com;khernandez@foley.com
- Amir Gamliel    amir-gamliel-9554@ecf.pacerpro.com, cmallahi@perkinscoie.com;DocketLA@perkinscoie.com;JDerosier@perkinscoie.com
- David B Golubchik    dbg@lnbyb.com, dbg@ecf.inforuptcy.com
- Michael J Hauser    michael.hauser@usdoj.gov
- Mark S Horoupian    mhoroupian@sulmeyerlaw.com, ppenn@sulmeyerlaw.com;mhoroupian@ecf.inforuptcy.com;dperez@sulmeyerlaw.com;ppenn@ecf.inforuptcy.com
- James KT Hunter    jhunter@pszjlaw.com
- Sheri Kanesaka    sheri.kanesaka@fnf.com, Christine.hipp@fnf.com
- Isaac Marcushamer
- Ashley M McDow    amcdow@foley.com, Khernandez@foley.com;Ffarivar@foley.com
- Malhar S Pagay    mpagay@pszjlaw.com, mpagay@pszjlaw.com
- R Gibson Pagter    gibson@ppilawyers.com, ecf@ppilawyers.com;pagterrr51779@notify.bestcase.com
- Misty A Perry Isaacson    misty@ppilawyers.com, ecf@ppilawyers.com;perryisaacsonmr51779@notify.bestcase.com
- Thomas J Polis    tom@polis-law.com, paralegal@polis-law.com;r59042@notify.bestcase.com
- Hamid R Rafatjoo    hrafatjoo@raineslaw.com, bclark@raineslaw.com;cwilliams@raineslaw.com
- Robert M Saunders    rsaunders@pszjlaw.com, rsaunders@pszjlaw.com
- James R Selth    jim@wsrlaw.net, jselth@yahoo.com;brian@wsrlaw.net;vinnet@ecf.inforuptcy.com
- Najah J Shariff    najah.shariff@usdoj.gov, USACAC.criminal@usdoj.gov
- David H Stein    dstein@wilentz.com
- Michael K Symons    mike@symonsmarkwith.com, mike@symonsmarkwith.com
- United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov

☐ Service information continued on attached page

---

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                                    **F 9013-3.1.PROOF.SERVICE**

**2. SERVED BY UNITED STATES MAIL**:
On (*date*) _____, I served the following persons and/or entities at the last known addresses in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States mail, first class, postage prepaid, and addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☐ Service information continued on attached page

**3. SERVED BY PERSONAL DELIVERY, OVERNIGHT MAIL, FACSIMILE TRANSMISSION OR EMAIL** (state method for each person or entity served):  Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on (*date*) July 2, 2018 I served the following persons and/or entities by personal delivery, overnight mail service, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on, or overnight mail to, the judge will be completed no later than 24 hours after the document is filed.

Via Email and Personal Delivery
Sara L. Chenetz
Amir Gamliel
Perkins & Coie LLP
1888 Century Park East, Suite 1700
Los Angeles, CA 90067-1721
Email:   schenetz@perkinscoie.com
            agamliel@perkinscoie.com

Via Personal Delivery
The Honorable Catherine E. Bauer
United States Bankruptcy Court
411 West Fourth Street, Suite 5165
Santa Ana, CA 92701-4593

☐ Service information continued on attached page

I declare under penalty of perjury under the laws of the United States that the foregoing is true and correct.

| 7/2/2018 | Bambi Clark | /s/ Bambi Clark |
|---|---|---|
| *Date* | *Printed Name* | *Signature* |

This form is mandatory.  It has been approved for use by the United States Bankruptcy Court for the Central District of California.

*June 2012*                                                                                      **F 9013-3.1.PROOF.SERVICE**