1 | Sara L. Chenetz, State Bar No. 206936
SChenetz@perkinscoie.com
2 | Amir Gamliel, State Bar No. 268121
AGamliel@perkinscoie.com
3 | PERKINS COIE LLP
1888 Century Park East, Suite 1700
4 | Los Angeles, CA  90067-1721
Telephone:  310.788.9900
5 | Facsimile:  310.788.3399

6 | Attorneys for Jason Frank Law, PLC

7 | UNITED STATES BANKRUPTCY COURT

8 | CENTRAL DISTRICT OF CALIFORNIA

9 | SANTA ANA DIVISION

10 |

11 | In re

12 | EAGAN AVENATTI, LLP,

13 |                    Debtor.

Case No. 8:17-bk-11961-CB

**REPLY IN SUPPORT OF AMENDED MOTION FOR ENTRY OF ASSIGNMENT AND RESTRAINING ORDER; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF JASON M. FRANK IN SUPPORT THEREOF**

Date:    July 11, 2018
Time:    10:00 a.m.
Place:   Courtroom 5D
         411 West Fourth Street
         Santa Ana, CA 92701-4593

JUDGE:  HON. CATHERINE E. BAUER

# TABLE OF CONTENTS

**Page**

I.     SUMMARY OF THE REPLY ......................................................................... 1

II.    THE REQUESTED ASSIGNMENT ORDER DOES NOT VIOLATE THE RULES OF PROFESSIONAL CONDUCT ......................................................... 4

III.   EA'S INTEREST IN FUTURE CONTINGENCY FEES IS "PROPERTY" SUBJECT TO ASSIGNMENT ............................................................................ 5

IV.   EA'S OTHER ARGUMENTS AGAINST THE ASSIGNMENT ORDER SHOULD BE REJECTED .......................................................................... 8

V.    THE ASSIGNMENT ORDER SHOULD INCLUDE EA'S RIGHT TO PAYMENTS IN ALL LAWSUITS LISTED ON EXHIBIT A ..................................... 10

      A.    JFL has Satisfied the Evidentiary Requirements for an Assignment Order.......... 10

      B.    The Assignment Order Should Include the Lawsuits in which "Avenatti & Associates" is Listed as Class Counsel ............................................. 11

VI.   THE REQUESTED RESTRAINING ORDER SHOULD BE GRANTED ..................... 13

      A.    The Restraining Order Should Be Granted Against EA and its Equity Partners.......................................................................................... 13

      B.    The Restraining Order Is Justified by EA's Failure to Pay.................................. 14

VII.  CONCLUSION ............................................................................................. 15

# TABLE OF AUTHORITIES

Page

**CASES**

*Cetenko v. United Cal. Bank,*
  30 Cal.3d 528 (1982) .................................................................................................10

*Choice Hotels Int'l, Inc. v. Singh,*
  No. 2:15-mc-144-GEB-EFB, 2017 WL 3773774 (E.D. Cal. 2017) .........................................11

*Diamond v. Hogan Lovells US LLP,*
  883 F.3d 1140 (9th Cir. 2018).........................................................................................7

*Erickson v. Sympathy for the Record Industry ex rel. Mermis,*
  No. C10-00636 HRL, 2011 WL 1211533 (N.D. Cal. March 30, 2011) ...................................5

*Fox v. Abrams,*
  163 Cal. App. 3d 610 (1985)........................................................................................6, 7

*Global Money Mgmt. v. McDonnold,*
  No. 06cv34 BTM, 2009 WL 3352574 (S.D. Cal. Oct. 15, 2009) ...........................................5

*Greenbaum v. Islamic Republic of Iran,*
  782 F. Supp. 2d 893 (C.D. Cal. 2008) ......................................................................2, 3, 8, 12

*Heller Ehrman LLP v. Davis Wright Tremaine LLP,*
  4 Cal.5th 467, 474-75 (2018) ..............................................................................1, 6, 7, 13

*In re Brobeck, Phleger & Harrison LLP,*
  408 B.R. 318 (N.D. Cal. 2009) ................................................................................. passim

*In re Heller Ehrman LLP,*
  No. 08-32514DM, 2011 WL 1539796 (N.D. Cal. April 22, 2011) ................................1, 4, 5, 7

*Innovation Ventures, LLC v. N2G Distrib., Inc.,*
  No. SACV 12-717 ABC, 2014 WL 10384606 (C.D. Cal. May 1, 2014) ................................8, 9

*Jewel v. Boxer,*
  156 Cal. App. 3d 171 (1984)........................................................................................6, 7, 10

*Legal Additions LLC v. Kowalksi,*
  No. C-08-2754 EMC, 2011 WL 3156724 (N.D. Cal. July 26, 2011) ...................................3, 14

*Lopez v. Musinorte Entm't Corp.,*
  No. CV 11-01442 AHM, 2011 WL 2471927 (C.D. Cal. June 21, 2011) ................................14

*Nat'l Grange of Order of Patrons of Husbandry v. Cal. Guild,*
  No. 2:14-676 WBS DB, 2017 WL 953792 (E.D. Cal. March 9, 2017)............................3, 8, 9

140515126.2

1

## TABLE OF AUTHORITIES

2

**Page**

3

*Sleep Hollow Inv. Co. No. 2 v. Prototek, Inc.*,
4      No. C 0304792MMC (MEJ), 2006 WL 279349 (N.D. Cal. Feb. 3, 2006) .............................13

5

*Smaato, Inc. v. Mobilewalla, Inc.*,
      No. 16-cv-05162-JSC, 2017 WL 7243373 (N.D. Cal. April 12, 2017) ..................................13

6

*Telecom Asset Mgmt., LLC v. FiberLight, LLC*,
7      No. 14-cv-00728-SI, 2016 WL 7188008 (N.D. Cal. Dec. 12, 2016).........................................8

8

*UMG Recordings, Inc. v. BCD Music Group, Inc.*,
      No. CV 07-05808 SJO, 2009 WL 2213678 (C.D. Cal. July 9, 2009)..........................5, 11, 14
9

10

*Waltrip v. Kimberlin*,
      164 Cal. App. 4th 517 (2008) ...............................................................................................2, 9

11

STATUTES

12

Cal. Civ. Proc. Code § 697.510...................................................................................................9, 16

13

Cal. Civ. Proc. Code § 697.530...................................................................................................9, 16

14

Cal. Civ. Proc. Code § 697.600(a) ..............................................................................................2, 9

15

Cal. Civ. Proc. Code § 708.510...................................................................................................8, 9

16

Cal. Civ. Proc. Code § 782.520......................................................................................................13

17

OTHER AUTHORITIES

18

California Rule of Professional Conduct 2-200(A) ..........................................................................4

19

20

21

22

23

24

25

26

27

28

1    **I.      Summary of the Reply.**

2          The Opposition filed by Judgment Debtor Eagan Avenatti, LLP ("EA" or "Judgment

3    Debtor") contends that because EA is a contingency law firm, it cannot be required to pay its

4    debts or judgments like everyone else.  This, of course, is not the law.  EA's position rests on

5    erroneous propositions expressly *rejected* by the courts in the *Heller Ehrman* and *Brobeck*

6    bankruptcies.  EA's additional arguments against the requested Assignment Order and

7    Restraining Order are likewise without merit.

8          *First,* EA contends that assigning its right to payments from its clients would amount to

9    illegal fee sharing in violation of California Rules of Professional Conduct.  However, this

10   argument was expressly rejected in *In re Heller Ehrman LLP*, No. 08-32514DM, 2011 WL

11   1539796 (N.D. Cal. April 22, 2011) ("*Heller I*") where the court recognized that requiring a law

12   firm to satisfy its debts from legal fees does not constitute fee sharing.  *Id.* at *5.  To hold

13   otherwise would make law firms immune from creditors.

14         *Second*, EA contends it does not have an existing property interest in future legal fees on

15   contingency matters, because clients are free to terminate EA at any time.  This contention has

16   been consistently rejected by federal and California courts, which hold that the right to future

17   payments on contingency matters is considered an existing asset and property interest of the law

18   firm which is available to satisfy the debts owed to creditors.  *See*, *e.g.*, *In re Brobeck, Phleger &*

19   *Harrison LLP*, 408 B.R. 318, 337-38 (N.D. Cal. 2009); *Heller Ehrman LLP v. Davis Wright*

20   *Tremaine LLP*, 4 Cal.5th 467, 474-75 (2018) ("*Heller IV*") (citing *Jewel v. Boxer*, 156 Cal. App.

21   3d 171, 180-81 (1984).)  The one exception to this rule is that hourly work performed *after* a law

22   firm dissolves is not considered property of the dissolved firm.  But this exception is inapplicable

23   to the current case, because EA is not a dissolved law firm.  EA is an ongoing business continuing

24   to represent clients and file cases in which it has a fee interest – as Mr. Avenatti admits in his

25   declaration.  [Avenatti Decl., ¶ 4.]  And the California Supreme Court made clear that hourly

26   work performed *before* a law firm is dissolved is the property of the law firm.  *Heller IV*, 4 Cal.

27   5th at 481-82.

28

1    *Third,* EA contends that an assignment order would interfere with its ability to pay its

2    "priority creditors" before JFL, which EA erroneously asserts is an "unsecured creditor."

3    However, JFL filed a Notice of Judgment Lien on EA's property -- covering EA's account

4    receivables among other attachable property -- with the California Secretary of State on June 7,

5    2018. [Reply Declaration of Jason M Frank ("Frank Reply"), ¶ 3; Exh. 2.] As a result, JFL

6    became a secured creditor on June 7, 2018 in accordance with California law, and JFL's judgment

7    lien has priority over any later filed liens or unsecured creditors. *See, e.g.*, *Waltrip v. Kimberlin*,

8    164 Cal. App. 4th 517, 529 (2008); Cal. Civ. Proc. Code § 697.600(a). JFL is not aware of any

9    other priority creditors,[1] and EA has not identified any such creditors or encumbrances on the

10   property that is the subject of the requested Assignment Order.

11   *Fourth*, EA claims it "has no interest in most of the cases" listed on Exhibit A. However,

12   EA does not identify a single case on Exhibit A in which it has "no interest." On the contrary,

13   Mr. Frank conducted a database search of EA's cases and provided the results of that search with

14   his initial Declaration demonstrating that EA and its attorneys are the counsel of record in these

15   matters. [Declaration of Jason M. Frank (Docket No. 470) ("Frank Decl."), at ¶ 5, Exh. C.]

16   Further, at the invitation of EA, Mr. Frank is attaching the caption pages and dockets for the cases

17   that were not included in EA's bankruptcy schedules, once again demonstrating that EA and its

18   attorneys are counsel of record in these matters. [Frank Reply, Exh. 3.] In any event, on a

19   motion for assignment order, the judgment creditor is only required to list the sources of potential

20   payments and third-party obligors; it is not required to offer evidentiary proof that the sources do

21   or will, in fact, owe money to the judgment debtor. *Greenbaum v. Islamic Republic of Iran*, 782

22   F. Supp. 2d 893, 896-97 (C.D. Cal. 2008). The purpose of an assignment order is to serve as

23   placeholder to protect the judgment creditor in the event the third-party obligor does owe money

24   to the judgment debtor. *Id.* at 895. The determination of whether the third-party obligor

25   ultimately owes such money to the judgment debtor is reserved for a later stage in the

26

27   --------------------

28   [1] The one possible exception are tax liens. However, it is JFL's understanding that the remaining amounts owed to the IRS are unsecured amounts for interests and penalties. [*See* Dismissal Motion (Doc No. 343) at pp. 6-7.]

140515126.2

1    proceedings, in the event that the obligor challenges the assignment. *Id.* Consequently, the

2    requested Assignment Order properly covers all cases listed on Exhibit A.

3          *Fifth*, EA contends that the Assignment Order should not cover cases filed by "Avenatti &

4    Associates, APC." But even assuming arguendo this is a separate law firm from EA (despite all

5    evidence to the contrary and California's legal prohibitions on such an arrangement), Mr.

6    Avenatti admits that EA will be entitled to compensation on these matters to the extent that EA's

7    employees are working on these matters. [Avenatti Decl., ¶¶ 8, 18.] The Assignment Order

8    assigns EA's rights to payment on these matters, so they are properly included. To the extent

9    there is later a challenge as to whether the full amount of the fees owed on these matters belong to

10   EA, such challenges are reserved for a later stage after a properly filed objection. *Greenbaum*,

11   782 F. Supp. 2d at 895.

12         *Sixth,* EA complains that the requested Assignment Order will impact its business. While

13   this may be true, the cases hold this is not an adequate ground for denying an assignment order,

14   even if it "may put the [judgment debtor] out of operation." *National Grange of Order of Patrons*

15   *of Husbandry v. California Guild*, No. 2:14-676 WBS DB, 2017 WL 953792 at *2 (E.D. Cal.

16   March 9, 2017) (citing cases). This is because a judgment debtor cannot avoid paying a judgment

17   simply because it will impact its business. EA's own failure to honor the Court-approved

18   Settlement and its prior failure to pay sums owed to JFL (money which has been owed since

19   2014) resulted in the Judgment; EA has no one to blame for this predicament but itself.

20         *Seventh*, EA contends there is not an evidentiary basis for the requested Restraining Order

21   and attempts to offer excuses for its past conduct. But EA ignores the threshold for showing

22   "need" for such a restraining order is "low." *Legal Additions LLC v. Kowalksi*, No. C-08-2754

23   EMC, 2011 WL 3156724 at *3 (N.D. Cal. July 26, 2011). Where, as here, the judgment debtor

24   has failed to pay any portion of the judgment, the "need requirement" is satisfied and a restraining

25   order should be granted. *Id.*

26         *Eighth,* EA contends the restraining order should be limited to the Judgment Debtor and

27   not include unaffiliated third parties. While the requested Restraining Order language is standard,

28

-3-

1    JFL will agree to modify its request so that the Restraining Order will only apply to EA and its

2    equity partners.  A copy of the [Proposed] Order is attached as Exhibit 1 to the Frank Reply.

3         *Ninth*, EA contends JFL is seeking the requested relief out of "pure vindictiveness" and to

4    harm EA's ability to compete.  JFL's sole purpose in seeking the requested relief is to enforce its

5    Judgment.  The Court is well-aware of the prior efforts that were made to enable EA to dismiss its

6    bankruptcy.  JFL was the *only creditor* that agreed to a substantial reduction of what it was owed

7    (over $18 Million) to facilitate the Settlement and dismissal of the case.  Without JFL's

8    cooperation, EA would still be in bankruptcy.  So, for EA to now claim that JFL is not acting in

9    good faith, after EA blatantly breached the Settlement, is exasperating.

10        *Finally*, EA offers its common request that Court delay taking any action against it.  As

11   long as EA believes it can avoid paying the Judgment, it will do so.  The Court has already

12   observed this.  In connection with the dismissal of EA's bankruptcy, EA was first required to pay

13   the entire amount of allowed professional fees owed to Pachulski Stang Ziehl & Jones LLP ($2.2

14   million) and Dinsmore & Shohl, LLP ($120,000.00), and all "Trust Fund" taxes and related

15   penalties owed to the IRS ($1,508,422.30).  Suddenly, a firm that listed only $100,000 in its bank

16   accounts was able to come up with over $2.8 million in professional fees and taxes to get out of

17   bankruptcy [*See* Declaration of Mark Horoupian (Doc. No.  408), ¶ 2; Frank Reply, Exh. 5.]

18   However, after exiting bankruptcy, EA immediately reverted to its old form and stiffed JFL and

19   the IRS on its remaining payments.  Entering the requested Assignment Order and Restraining

20   Order will demonstrate to EA that it is not going to be able to avoid paying this Judgment, and the

21   game-playing and delay tactics will not be tolerated.

22        Accordingly, for the reasons stated herein and in the initial Motion, the requested

23   Assignment Order and Restraining Order (as modified in Exhibit 1) should be entered.

24   **II.    The Requested Assignment Order Does Not Violate the Rules of Professional
     Conduct.**

25        EA argues that assigning its rights to fees would violate California Rule of Professional

26   Conduct 2-200(A), which prohibits fee sharing arrangements without a client's consent.  This

27   same argument was made and rejected in *Heller I*, because, among other reasons, satisfying the

28

-4-

1  debts of a law firm from its only source of revenue (i.e., fees for its legal services) does not

2  constitute "fee sharing."  2011 WL 1539796 at *5.

3      In *Heller I,* the Bankruptcy Court considered whether recovering fees from a lawyer who

4  left the law firm would constitute an illegal sharing of fees in violation of the California Rules of

5  Professional Conduct.  2011 WL 1539796 at *5.  The court found that such rules were

6  inapplicable, because there would be no "sharing" of fees.  *Id.*  Rather, the client would have paid

7  the fees to the law firm, and then those fees would be used to pay the law firm's debts, just like

8  any other account receivable.  *Id.*  As the court noted, "[h]ad Debtor made a transfer in fraud of

9  creditors of an account receivable due from a client for legal services rendered, surely a recovery

10  under the fraudulent transfer laws would not be an impermissible sharing of fees.  There is no

11  difference with unbilled fees."  *Id.*

12      Similarly, the requested Assignment Order does not amount to fee sharing, any more than

13  EA paying its telephone bill constitutes fee sharing.  EA owes over $10 Million to JFL.  "Under

14  California law, all property of the judgment debtor is subject to enforcement of a money

15  judgment."  *Erickson v. Sympathy for the Record Industry ex rel. Mermis*, No. C10-00636 HRL,

16  2011 WL 1211533 at *1 (N.D. Cal. March 30, 2011).  The requested Assignment Order requires

17  that EA's right to payments be directly assigned to JFL up to the amount of that Judgment; no

18  different than if EA first collected the fees and then used them to satisfy its debt.  As the

19  California legislature explained, this is the precise purpose of an assignment order, i.e., to require

20  a judgment debtor to assign its right to payment from a third party to the judgment creditor to

21  ensure that the judgment is satisfied.  *See, e.g., UMG Recordings, Inc. v. BCD Music Group, Inc.*,

22  No. CV 07-05808 SJO,  2009 WL 2213678 at *2, 4 (C.D. Cal. July 9, 2009) (discussing

23  Legislative Comments for § 708.510(a)); *Global Money Mgmt. v. McDonnold,* No. 06cv34 BTM,

24  2009 WL 3352574, at *3 (S.D. Cal. Oct. 15, 2009) ("[T]he Court may require a judgment debtor

25  subject to personal jurisdiction of the Court to assign his rights to payment to a judgment creditor,

26  even if the assignable property is located outside of California.").

27  **III.    EA's Interest in Future Contingency Fees Is "Property" Subject to Assignment.**

28      EA next argues that "future legal fees to be earned from contingency work" are not

-5-

1  "property," and therefore not subject to assignment. [Opp. at 4:18 – 5:3.] This argument has

2  been consistently rejected. For example, in *Brobeck*, the court recognized that the right to future

3  legal fees on contingency matters are considered "unfinished business" of the partnership and are

4  the "property" of the law firm even after it dissolves. 408 B.R. at 337-38. It further held that

5  such property rights are "transferable" – and therefore subject to protection from fraudulent

6  transfers. *Id.* California courts have consistently reached this same conclusion, i.e., that the right

7  to future fees on contingency matters are the property of the law firm even though the

8  contingency has not yet occurred – as the California Supreme Court recognized this past March.

9  *Heller IV*, 4 Cal.5th at 474-75, 483 (noting that California appellate courts have "consistently

10  applied *Jewel's* holding to contingency fee cases" where the fees later earned are considered the

11  property of the dissolved firm, and distinguishing contingency fee cases from hourly work)

12  (citing *Jewel v. Boxer*, 156 Cal. App. 3d 171, 180-81 (1984); *Fox v. Abrams*, 163 Cal. App. 3d

13  610, 612-13 (1985); *Rosenfeld Meyer & Susman v. Cohen*, 191 Cal. App. 3d 1035, 1063 (1987).)

14  For example, in *Jewel*, 156 Cal. App. 3d at 176-77 and *Fox*, 163 Cal. App. 3d at 613-14,

15  equity partners left dissolved law firms and took contingency cases with them. Like EA, the

16  departing partners argued the law firms did not have an existing right to the future contingency

17  fees, or, at best, had a limited right to "*quantum meruit*" fees for the reasonable value of the

18  firm's services prior to dissolution, because the clients had the right to terminate the firm at any

19  time. *Id.* The *Jewel* and *Fox* courts rejected this argument on the grounds that pending

20  contingency cases constituted "unfinished business" belonging to the partnership and the

21  departing partners had a fiduciary duty to account for the profits recovered on the unfinished

22  business to the partnership. *Id.* As the *Jewel* and *Fox* courts explained, "the right of a client to an

23  attorney of one's choice and the rights and duties as between partners with respect to income

24  from unfinished business are distinct and do not offend one another. Once the client's fee is paid

25  to an attorney, it is of no concern to the client how that fee is allocated among the attorney and his

26  or her former partners." *Jewel*, 156 Cal.App.3d at 176-77; *Fox*, 163 Cal. App. 3d at 614. This

27  rule is necessary to prevent equity partners (like Mr. Avenatti) from competing with his or her

28  own firm for personal gain in violation of their fiduciary duties and to the detriment of the former

-6-

1    firm. *Fox*, 163 Cal. App. 3d at 617.

2          Based on these decisions, the *Brobeck* court recognized that the right to future legal fees

3    on contingency matters constitutes a "property" interest belonging to the estate and can be subject

4    to fraudulent transfer rules to protect creditors.  408 B.R. at 337-38.  As noted above, there is an

5    exception to this rule for future *hourly* work performed after a matter leaves a firm.  Specifically,

6    in *Heller IV*, the California Supreme Court distinguished contingency fee cases from hourly work

7    and found that a law firm cannot have a reasonable expectation it will receive future hourly work

8    from a client after a case leaves the firm, and thus it does not have a property interest in such

9    work after dissolution.  *Heller IV*, 4 Cal.5th at 479, 483-84.  However, in so holding, the

10    California Supreme Court specifically noted it was not changing the rules that future contingency

11    fees are considered "unfinished business" belonging to the dissolved firm.  *Id.* at 480, 483

12    (distinguishing *Jewel* because "*Jewel* dealt with contingency fee matters" and recognizing that

13    contingency fee cases raise different expectancy considerations than hourly work because in the

14    contingency context a dissolved firm has "yet to be paid for work it performed and will not be

15    paid until the matter is resolved"); *see also Diamond v. Hogan Lovells US LLP*, 883 F.3d 1140

16    (9th Cir. 2018) (recognizing difference between contingency fee work and hourly work, because

17    if there was no duty to account for contingency fee work after a law firm is dissolved, then work

18    performed by the former firm would go unpaid).  Further, with respect to hourly matters, the

19    California Supreme Court affirmed that fees for hourly work performed *prior to dissolution* are

20    property belonging to the firm.  *Id.* at 481-82.

21          This is why EA's reliance on the future hourly exception in *Heller* is misplaced.  EA is

22    not a dissolved firm – it is an ongoing business.  [Avenatti Decl., ¶ 4.]  To the extent it has any

23    hourly work, the fees for any work EA has performed or will perform in the future are the

24    property of EA up until the time of dissolution.  *Heller IV*, 4 Cal.5th at 481-82.  Further, with

25    respect to contingency matters, even if EA later dissolves in the future and/or Mr. Avenatti takes

26    these matters with him to a new firm (as he threatens in the Opposition), the fees later earned on

27    these matters are the property of EA under *Jewel* and its progeny because Mr. Avenatti is an

28    equity partner of EA and cannot compete against EA in this manner to the detriment of the firm

-7-

1   or its creditors. *Brobeck,* 408 B.R. at 337-38 (noting that such efforts are subject to the fraudulent

2   transfer doctrine which "prevents debtors from placing property beyond the reach of their

3   creditors when those assets should legitimately be made available to satisfy creditor demands").

4            In sum, EA's contingency "rights to payment[s] due or to become due, whether or not the

5   right is conditioned on future developments" are precisely the type of property rights

6   contemplated for assignment under Section 708.510. *Greenbaum*, 782 F. Supp. 2d at 896-97

7   ("The plain language of [Section 708.510] accordingly contemplates that an assignment order can

8   be based on contingent rights"); *Innovation Ventures, LLC v. N2G Distrib., Inc.*, No. SACV 12-

9   717 ABC, 2014 WL 10384606, at *5 (C.D. Cal. May 1, 2014) ("accounts receivable constitute

10  assignable property" under Section 708.510").  "An assignment order issued pursuant to Section

11  708.510 'does not make any property assignable that is not already assignable' and accordingly

12  does not preclude an obligor from later challenging whether the judgment debtor's claims were

13  assignable in the first instance." *Greenbaum*, 782 F. Supp. 2d at 896.  In other words, conjuring

14  up hypotheticals about what would happen if EA later dissolves is unnecessary, not only because

15  it has not happened, but because it does not affect the decision to issue an assignment order. *Id.*

16  An assignment order simply provides that if EA has a right to payment in these cases, then that

17  right is being assigned to JFL up to the amount of the Judgment.  If there is later a challenge as to

18  how much of the fees are owed to the judgment debtor (EA), that is reserved for a later stage in

19  the proceedings. *Id.*

20  **IV.    EA's Other Arguments Against the Assignment Order Should Be Rejected.**

21           EA throws up a scattershot of additional arguments for why the requested Assignment

22  Order should be denied.  Each of these arguments is without merit.

23           *First,* EA contends that an assignment order will interfere with its business.  However,

24  courts have consistently found that even if an assignment order "may put the [judgment debtor]

25  out of operation," this is not "in itself an adequate reason to deny" a motion for an assignment

26  order. *National Grange*, 2017 WL 953792 at *2; *see also Telecom Asset Mgmt., LLC v.

27  FiberLight, LLC*, No. 14-cv-00728-SI, 2016 WL 7188008, at *4 (N.D. Cal. Dec. 12, 2016)

28  (granting Section 708.510 motion despite potential that assignment of payments "will . . . impair

140515126.2

1    the [debtor] company's ability to manage ongoing operations"); *Innovation Ventures,* 2014 WL

2    10384606, at *5 (C.D. Cal. May 1, 2014) (granting Section 708.510 motion despite debtor's

3    representation that assignment of payments will "drive [him] out of business" and "extinguish[ ]"

4    such payments).  The rationale for these holdings is obvious.  Large judgments are undoubtedly

5    going to impact a company's business, but that does not excuse the company from paying the

6    judgment.

7         *Second*, EA claims "an assignment order would interfere with the rights of priority

8    creditors," but does not identify any priority creditors or encumbrances on the property subject to

9    the Assignment Order.  As such, this argument is properly rejected.  *See, e.g. National Grange*,

10   2017 WL 953792 at *2 (holding that granting assignment order was proper because the defendant

11   did not offer any evidence of encumbrances).  Moreover, EA is not in bankruptcy and JFL is a

12   secured creditor who would have priority over other creditors.  Specifically, on June 7, 2018, JFL

13   filed a Notice of Judgment Lien with the California Secretary of State on all EA property (which

14   included accounts receivable among other attachable property) pursuant to California Code of

15   Civil Procedure Sections 697.510 and 697.530.   [Frank Reply, ¶ 3; Exh. 2.]  Under California

16   law, a judgment lien takes effect on the date that the judgment creditor files its notice of judgment

17   lien with the California Secretary of State.  *See, e.g. Waltrip*,164 Cal. App. 4th at 529.  Further,

18   under California law, the first judgment lien to attach prevails over later-filed judgment liens.

19   Cal. Civ. Proc. Code § 697.600(a).  As such, JFL is a secured and priority creditor over unsecured

20   debts and later filed liens.

21        *Third,* EA claims, without evidentiary support, it has invested "millions" of dollars in out-

22   of-pocket expenses on its legal matters, and it should first be reimbursed for those expenses from

23   any fees subject to the Assignment Order.  This argument is absurd.  It would be akin to EA

24   claiming it should not have to pay rent on its office, until it gets reimbursed for its case

25   investments.  Not surprisingly, EA does not cite any authority supporting the position that a

26   judgment debtor should be reimbursed first before paying the debts it owes to a judgment

27

28

140515126.2

creditor.[2]

Fourth, EA threatens that if the Court imposes the Assignment Order, it will no longer have an economic incentive to provide legal services to its clients because the fees will be used to satisfy its debt to JFL.  In other words, EA contends it will retaliate by breaching its professionally obligations to its clients and its fiduciary obligations to others.  This, of course, is not a proper ground to avoid paying a Judgment.  It amounts to an argument that "*if you are going to force me to satisfy a judgment, then I am not going to work*."  Imagine a world in which that would be a valid response to collection efforts.  In any event, the Assignment Order only covers the amount of the Judgment, not all revenue of the firm.  Mr. Avenatti is attesting that EA is owed tens of millions of dollars in fees, including over $17 million on cases purportedly referred by the X-Law Group alone.  [Avenatti Decl., ¶ 6.]  So, EA will have an economic incentive to maximize its recovery in these cases – even putting aside its professional obligations to its clients. Moreover, to the extent Mr. Avenatti is threatening to take these cases to another firm to avoid the Judgment, the rules of *Jewel v. Boxer* and its progeny, as well as the fraudulent transfer doctrine and fiduciary obligations, will prevent Mr. Avenatti as an equity partner from placing these fees out of the reach of creditors.  *See, e.g.*, *Brobeck*, 408 B.R. at 337-38.

## V.    The Assignment Order Should Include EA's Right to Payments in all Lawsuits Listed on Exhibit A.

### A.    JFL has Satisfied the Evidentiary Requirements for an Assignment Order.

EA contends it "has no interest in most of the cases" listed on Exhibit A.  However, EA does not identify a single case on Exhibit A in which it has "no interest."  On the contrary, the first 23 cases on Exhibit A are from EA's own bankruptcy schedules, and the remaining cases were identified from PACER databases and other case databases as set forth in Mr. Frank's initial declaration.  [Frank Decl., ¶ 5.]  Mr. Frank also attached the results of the database search to his Declaration as Exhibit C.   EA claims, without legal support, this is not good enough, and JFL should be forced to also provide the pleadings from those cases.  Accordingly, attached to the

---

[2] EA includes a "*Cf*" reference to the decision in *Cetenko v. United Cal. Bank*, 30 Cal.3d 528, 535-36 (1982), which held that the "first in time" rule applies to attorney liens and judgment liens, and there is no other priority between the two.  The decision says nothing that would support the proposition that a judgment debtor should be reimbursed for its investments before it has to pay its debts to judgment creditors.

140515126.2

1   Frank Reply as Exhibit 3 are the caption pages and dockets from the additional cases listed on

2   Exhibit A demonstrating that EA and its attorneys are the counsel of record.  [Frank Reply, Exh.

3   3.]

4          But this is not necessary to satisfy the evidentiary requirements for an assignment order.

5   A motion for an assignment order does not require detailed evidentiary support.  *Choice Hotels*

6   *Int'l, Inc. v. Singh*, No. 2:15-mc-144-GEB-EFB, 2017 WL 3773774 at *2 (E.D. Cal. 2017).  A

7   party is simply required to "identify the intended source that is obligated to make payments to the

8   judgment debtor."  *Id.*  For example, in *UMG Records,* the court granted an assignment order

9   based on a list of the judgment debtor's "probable distributors, purchasers and/or customers," and

10  rejected the judgment debtor's objection that the list was "speculative" and "apparently developed

11  with *no evidentiary support*."  2009 WL 2213678 at *3 (emphasis added).  JFL has identified the

12  clients and lawsuits in which EA has a potential interest in payment and has gone further by

13  providing evidentiary support for that list.  It has more than satisfied its burden.

14          **B.    The Assignment Order Should Include the Lawsuits in which "Avenatti &**
                   **Associates" is Listed as Class Counsel.**
15

16         EA claims that the Assignment Order should not include the handful of cases in which

17  Avenatti & Associates is listed as counsel – as identified by an asterisk on Exhibit A.  EA's

18  contention is wrong on several grounds.

19         *First,* EA argues the Court cannot issue such an order because "Avenatti & Associates,

20  APC has not received formal notice of JFL's request or an opportunity to be heard in this matter."

21  [Opp. at 9:9-11.]  However, this motion was not only served on Michael Avenatti personally – the

22  sole owner of Avenatti & Associates – it was also served on Mark Horoupian who appeared as

23  counsel for Avenatti & Associates in this matter.  [Frank Reply, ¶¶ 5, 6; Exhs. 4, 5.]  So, Avenatti

24  & Associates did, in fact, receive notice of this motion and has had the opportunity to be heard.

25         *Second*, the motion sets forth substantial evidence demonstrating that Avenatti &

26  Associates is not a separate law firm.  But even indulging in the fiction that Avenatti &

27  Associates is a separate and distinct law firm from EA, Mr. Avenatti testifies that when Avenatti

28  & Associates "uses the time of associates employed by EA" it "compensates EA for the use of

-11-

1   this time" and the "compensation is negotiated on a case-by-case basis." [Avenatti Decl., ¶ 8.]

2   Thus, the Assignment Order properly includes cases brought by Avenatti & Associates, because

3   EA will, at a minimum, be entitled to compensation for the time spent by its attorneys on these

4   matters.  In fact, with respect to the *Clifford* matters, EA attorney Ahmed Ibrahim is listed as

5   counsel of record.  [Frank Decl., ¶ 26, Exhs. O, P; Declaration of Michael Avenatti (Doc. No.

6   464), Exhs. 6, 7.]  Mr. Avenatti testifies in his declaration that EA is entitled to compensation on

7   the matters in which Mr. Ibrahim renders services.  [Avenatti Decl., ¶ 18.]

8   　　　*Third*, EA's argument misconstrues the purpose of an assignment order.  The requested

9   Assignment Order assigns EA's rights to payment from these cases.  As noted above, a judgment

10  creditor is not required to prove up front that a third-party obligor owes anything to the judgment

11  debtor as a condition for obtaining an assignment order.  *Greenbaum*, 782 F. Supp. 2d at 894-95,

12  897.  As the *Greenbaum* court explained, the determination of whether a third-party obligor owes

13  anything to the judgment debtor is "reserved for a later stage in the proceedings" if the obligor

14  challenges the assignment.  *Id.* at 897.  It is not a ground for denying an assignment order in the

15  first instance.  *Id.*  This is because the assignment order is designed as a placeholder to protect the

16  judgment creditor in the event the third-party obligor does, in fact, owe money to the judgment

17  debtor.  *Id.* At 895.  For this reason, the court in *Greenbaum* granted an assignment order

18  requiring an assignment of any rights to payments from oil companies that may be doing business

19  with the judgment debtor "notwithstanding the concededly scant evidence presented by [the

20  judgment creditors] in support of their argument that these oil companies are, in fact, obligors."

21  *Id.*  Consequently, the Avenatti & Associates cases are properly included in the requested

22  Assignment Order, so that JFL is protected in the event that EA is entitled to compensation on

23  these matters.  *Id.*  When such payments become due, Avenatti & Associates and/or the third-

24  party clients can challenge what amount of the money is owed to EA, if they feel they have

25  grounds for such a challenge. *Id.*   But as the Motion demonstrates, if there is a such a challenge,

26  the evidence that EA is entitled to the fees on these matters is far from "scant."

27  　　　*Fourth,* the Court may find it strange that Mr. Avenatti can somehow be the managing

28  partner and majority owner of two law firms at the same time and can arbitrarily assign cases to

-12-

1  Avenatti & Associates to the detriment of EA and its creditors.  This is because it is not permitted

2  under the law.  As the California Supreme Court explained this past March in *Heller IV*, under

3  California partnership law, "partners cannot compete with their firm during the partnership, even

4  for 'the most remunerative cases.'"  4 Cal.5th at 480 (citing *Jewel*, 156 Cal. App. 3d at 179).

5  Consequently, this notion that Mr. Avenatti can just pick and choose which cases belong to him

6  and can negotiate fee splits in such a way that the money would be outside the reach of creditors

7  is just nonsense.  And while the Court does not need to reach this determination now in

8  connection with a motion for assignment order (as explained in *Greenbaum*), this is not an

9  argument that will ever find legal or factual support.

10  **VI.    The Requested Restraining Order Should Be Granted.**

11          **A.    The Restraining Order Should Be Granted Against EA and its Equity
                     Partners.**

12

13          EA complains that the requested Restraining Order is too broad because it could be read to

14  include third-parties not affiliated with EA.  When moving for a restraining order under Section

15  782.520, the standard requested language is to restrain the judgment debtor and "any servant,

16  agent, employee or attorney for the judgment debtor and any person(s) in active concert and

17  participating with [the Judgment Debtor] from encumbering, assigning, or disposing" of the

18  property covered under the Assignment Order.  *See*, *e.g.*, *Sleep Hollow Inv. Co. No. 2 v. Prototek,

19  Inc.*, No. C 0304792MMC (MEJ), 2006 WL 279349 at *1 (N.D. Cal. Feb. 3, 2006); *Smaato, Inc.*

20  *v. Mobilewalla, Inc.*, No. 16-cv-05162-JSC, 2017 WL 7243373 at *1 (N.D. Cal. April 12, 2017).

21  Such orders are routinely granted.  *Id.*

22          Notwithstanding the foregoing, EA contends that the restraining order should be limited to

23  the Judgment Debtor.  As noted above, JFL is willing to modify its request for a restraining order

24  so that it only applies against the Judgment Debtor, its managing partner, Mr. Avenatti, and its

25  equity partners, Avenatti & Associates, APC and Mr. Eagan.  These individuals and entities are

26  properly included in an order restraining the Judgment Debtor (EA) because a partnership can

27  only act through its partners.  Moreover, these individuals and entities were named parties to the

28  Court Approved Settlement Order and are thus properly before this Court.  [Doc. No. 343.]

140515126.2

1

**B.    The Restraining Order Is Justified by EA's Failure to Pay.**

2      EA contends that JFL has failed to offer sufficient proof of wrongful acts by EA to justify

3  a restraining order and offers excuses and recharacterizations of its past conduct.  But EA ignores

4  that the threshold for showing "need" for a restraining order is "low."  *Legal Additions LLC v.*

5  *Kowalksi,* 2011 WL 3156724 at *3 (N.D. Cal. July 26, 2011).  Where, as here, the judgment

6  debtor has failed to pay any portion of the judgment, the "need requirement" is satisfied and a

7  restraining order should be granted.  *Id.*; *UMG Records*, 2009 WL 2213678 at *3; *Lopez v.*

8  *Musinorte Entm't Corp.*, No. CV 11-01442 AHM (AJWx), 2011 WL 2471927 (C.D. Cal. June

9  21, 2011).  The point of the restraining order is to prevent the Judgment Debtor from

10  "encumbering, disposing or assigning" the property that is the subject of the Assignment Order,

11  so it cannot frustrate the judgment creditor's efforts to collect on the judgment.  *Id.*  JFL has

12  established the requisite need for that order based on EA's failure to honor the Settlement and pay

13  the Judgment.

14      Further, EA has shown that it is actively attempting to frustrate JFL's ability to collect on

15  the Judgment by assigning cases to Avenatti & Associates and threatening to take cases away

16  from EA to avoid the Judgment.  Contrary to EA's arguments, the requested restraining order

17  would not prevent clients from selecting a different firm, nor would it require EA's attorneys to

18  remain at the firm.  What it would do, however, is prevent the equity partners from transferring

19  cases in a manner designed to circumvent EA's interests in its existing cases.  It would also

20  prevent EA from assigning or disposing of its rights to payments to someone else.  Given EA's

21  track record, and its failure to honor the Court-approved Settlement Agreement, a restraining

22  order is clearly necessary and appropriate.

23      ///

24      ///

25      ///

26

27

28

-14-

140515126.2

**VII.    Conclusion.**

      For the foregoing reasons, JFL respectfully requests the Court enter the requested Order and grant such other and further relief as is just and proper.

Dated:  July 6, 2018

PERKINS COIE LLP

By: /s/ Sara L. Chenetz
Sara L. Chenetz
Attorneys for Judgment Creditor
Jason Frank Law, PLC

-15-

## AFFIDAVIT OF JASON M. FRANK

I, Jason M. Frank, declare as follows:

1.     I am the owner and president of the judgment creditor, Jason Frank Law, PLC ("JFL"). I am admitted to practice law before all federal and state courts in the State of California, and I am a member in good standing of the State Bar of California. I have personal knowledge of the facts set forth herein, unless stated on information and belief, and if called as a witness, I could and would competently testify thereto. I make this declaration in support of the Reply to the Amended motion filed by Judgment Creditor for Entry of Assignment and Restraining Order (the "Assignment Motion").

2.     Attached as Exhibit 1 is a draft of the [Proposed] Order for the Assignment Motion.

3.     On or about June 7, 2018, my counsel filed a Notice of Judgment Lien on behalf of JFL on EA's attachable property with the California Secretary of State pursuant to California Code of Civil Procedure Sections 697.510 and 697.530. A true and correct copy of the Notice of Judgment Lien is attached as Exhibit 2.

4.     I previously provided a list of the matters in which I believe EA has or will have a right to payment as Exhibit A to my initial declaration. The first 23 cases listed on Exhibit A were identified in EA's bankruptcy schedules. The remaining cases were identified from PACER and other databases. Attached as Exhibit 3 are the caption pages and dockets for the additional matters demonstrating the EA and its lawyers are the counsel of record in these matters.

5.     Attached as Exhibit 4 is the proof of service for the Assignment Motion establishing the Michael Avenatti and Mark Horoupian were personally served with notice of the motion. Mr. Horoupian appeared in the above-captioned matter as counsel for Avenatti & Associates, APC and Mr. Avenatti individually.

6.     Attached as Exhibit 5 is the Declaration of Mark Horoupian (Doc No. 408) establishing that he appeared as counsel for Avenatti & Associates APC and Mr. Avenatti personally, as well as the fact the amount of money paid on behalf of EA in professional fees and Trust Fund taxes and penalties as a condition to the dismissal of the bankruptcy.

-16-

140515126.2

Main Document    Page 21 of 23

1

2       I declare under penalty of perjury under the laws of the United States of America that the

3  foregoing this true and correct. Executed this 5th day of July 2018.

4

5                                  JASON M. FRANK

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# PROOF OF SERVICE OF DOCUMENT

I am over the age of 18 and not a party to this bankruptcy case or adversary proceeding.  My business address is:  1888 Century Park East, Suite 1700, Los Angeles, CA 90067

A true and correct copy of the foregoing document(s) described as

**REPLY IN SUPPORT OF AMENDED MOTION FOR ENTRY OF ASSIGNMENT AND RESTRAINING ORDER; MEMORANDUM OF POINTS AND AUTHORITIES; DECLARATION OF JASON M. FRANK IN SUPPORT THEREOF**
will be served or was served **(a)** on the judge in chambers in the form and manner required by LBR 5005-2(d); and **(b)** in the manner indicated below:

I.  **TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONIC FILING ("NEF")** – Pursuant to controlling General Order(s) and Local Bankruptcy Rule(s) ("LBR"), the foregoing document will be served by the court via NEF and hyperlink to the document. On July 6, 2018, I checked the CM/ECF docket for this bankruptcy case or adversary proceeding and determined that the following person(s) are on the Electronic Mail Notice List to receive NEF transmission at the email address(es) indicated below:

☒    Service information continued on attached page

II.  **SERVED BY U.S. MAIL AND FEDERAL EXPRESS** (indicate method for each person or entity served)**:**
On July 6, 2018**,** I served the following person(s) and/or entity(ies) at the last known address(es) in this bankruptcy case or adversary proceeding by placing a true and correct copy thereof in a sealed envelope in the United States Mail, first class, postage prepaid, and/or with an overnight mail service addressed as follows. Listing the judge here constitutes a declaration that mailing to the judge will be completed no later than 24 hours after the document is filed.

☒    Service information continued on attached page

III.  **SERVED BY PERSONAL DELIVERY, FACSIMILE TRANSMISSION OR EMAIL** (indicate method for each person or entity served): Pursuant to F.R.Civ.P. 5 and/or controlling LBR, on _____, I served the following person(s) and/or entity(ies) by personal delivery, or (for those who consented in writing to such service method), by facsimile transmission and/or email as follows.  Listing the judge here constitutes a declaration that personal delivery on the judge will be completed no later than 24 hours after the document is filed.

☐    Service information continued on attached page

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

| July 6, 2018 | Jenna DeRosier | /s/ Jenna DeRosier |
|---|---|---|
| Date | Type Name | Signature |

**ATTACHED SERVICE LIST**

**VIA ECF**

- Michael Avenatti  mavenatti@eaganavenatti.com, jregnier@eaganavenatti.com
- Mikel R Bistrow    mikel.bistrow@dinsmore.com, caron.burke@dinsmore.com
- Peter W Bowie    peter.bowie@dinsmore.com, caron.burke@dinsmore.com
- Christopher Celentino    chris.celentino@dinsmore.com, caron.burke@dinsmore.com
- Sara Chenetz    schenetz@perkinscoie.com, dlax@perkinscoie.com
- Fahim Farivar ….ffarivar@bakerlaw.com, amcdow@bakerlaw.com, mdelaney@bakerlaw.com,sgaeta@bakerlaw.com
- Amir Gamliel    agamliel@perkinscoie.com, cmallahi@perkinscoie.com; DocketLA@perkinscoie.com
- David B Golubchik    dbg@lnbyb.com, dbg@ecf.inforuptcy.com
- Michael J Hauser    michael.hauser@usdoj.gov
- Mark S Horoupian    mhoroupian@sulmeyerlaw.com, ppenn@sulmeyerlaw.com; mhoroupian@ecf.inforuptcy.com; dperez@sulmeyerlaw.co; ppenn@ecf.inforuptcy.com
- James KT Hunter    jhunter@pszjlaw.com
- Sheri Kanesaka    sheri.kanesaka@fnf.com, Christine.hipp@fnf.com
- Isaac Marcushamer
- Ashley M McDow    amcdow@foley.com, Khernandez@foley.com; Ffarivar@foley.com
- Malhar S Pagay    mpagay@pszjlaw.com
- R Gibson Pagter, Jr.    gibson@ppilawyers.com, ecf@ppilawyers.com; pagterrr51779@notify.bestcase.com
- Misty A Perry Isaacson    misty@ppilawyers.com, ecf@ppilawyers.com; perryisaacsonmr51779@notify.bestcase.com
- Thomas J Polis    tom@polis-law.com, paralegal@polis-law.com;r59042@notify.bestcase.com
- Robert M Saunders    rsaunders@pszjlaw.com, rsaunders@pszjlaw.com
- Najah J Shariff    najah.shariff@usdoj.gov, USACAC.criminal@usdoj.gov
- David H Stein    dstein@wilentz.com
- Michael K Symons    mike@symonsmarkwith.com, mike@symonsmarkwith.com
- United States Trustee (SA)    ustpregion16.sa.ecf@usdoj.gov

**Via Overnight Mail**

Michael Q. Eagan, Esq.
1 Embarcadero Center, Suite 3810
San Francisco, CA 94111-3726

Honorable Catherine E. Bauer
United States Bankruptcy Court
Central District of California
Ronald Reagan Federal Building and Courthouse
411 West Fourth Street, Suite 5165 / Courtroom 5D
Santa Ana, CA 92701-4593

140517736.1